## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) Case No. 17-47541-659 |
| | ) CHAPTER 11 |
| ARMSTRONG ENERGY, INC., *et al.*,[1] | ) |
| | ) (Joint Administration Requested) |
| | ) |
| Debtors. | ) Hearing Date:  [____], 2017 |
| | ) Hearing Time:  [____] |
| | ) Hearing Location:  Courtroom _ North |
| | ) |

## DEBTORS' MOTION FOR
## ENTRY OF AN ORDER (I) AUTHORIZING
## THE DEBTORS TO (A) RETAIN FTI CONSULTING,
## INC. TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING
## OFFICER AND CERTAIN ADDITIONAL PERSONNEL AND (B) DESIGNATE
## ALAN BOYKO AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS,
## *NUNC PRO TUNC* TO THE PETITION DATE, AND (II) GRANTING RELATED RELIEF

Armstrong Energy, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] respectfully state the following in support of this motion:

### Relief Requested

1.     The Debtors seek entry of an order (the "Proposed Order"):[3]  (a) authorizing the Debtors to (i) retain FTI Consulting, Inc. ("FTI") to provide the Debtors with a Chief

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Armstrong Energy, Inc. (4058); Armstrong Air, LLC (2017); Armstrong Coal Company, Inc. (0349); Armstrong Coal Sales, LLC (8643); Armstrong Energy Holdings, Inc. (5664); Armstrong Logistics Services, LLC (0392); Thoroughfare Mining, LLC (7890); Western Diamond LLC (9356); Western Land Company, LLC (9821).  The location of the Debtors' service address is:  7733 Forsyth Boulevard, Suite 1625, St. Louis, Missouri 63105.

[2]    A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Alan Boyko of Armstrong Energy, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.

Restructuring Officer ("CRO") and certain additional FTI personnel (collectively, the "Engagement Personnel") to assist the CRO and (ii) designate Alan Boyko as the Debtors' CRO, effective *nunc pro tunc* to the Petition Date, on the terms set forth in that certain engagement letter, dated as of August 14, 2017 (as amended, restated, or otherwise supplemented from time to time, the "Engagement Letter"),[4] a copy of which is attached hereto as **Exhibit A**, and (b) granting related relief.  In further support of the motion, the Debtors respectfully submit the declaration of Alan Boyko, a Senior Managing Director of FTI Consulting, Inc. and the Debtors' CRO (the "Boyko Declaration"), which is attached hereto as **Exhibit B** and incorporated herein by reference.

### Jurisdiction and Venue

2.     The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81.901(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3]     A copy of the Proposed Order will be provided to the Notice Parties (as defined below) and made available on the Debtors' case information website at https://www.donlinrecano.com/armstrong.

[4]     Any references to, or summaries of, the Engagement Letter in this motion are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and such summaries or references herein.  Any capitalized terms used in this motion and not otherwise defined herein have the meanings ascribed to them in the Engagement Letter.

4.      The bases for the relief requested herein are sections 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Bankruptcy Rule 2016.

## Background

5.      The Debtors produce low-chlorine, high-sulfur thermal coal from the Illinois Basin, with both surface and underground mines.  The Debtors market their coal primarily to proximate and investment grade electric utility companies as fuel for their steam-powered generators.  Based on 2016 production, the Debtors are the sixth largest producer in the Illinois Basin and the second largest in Western Kentucky.

6.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

## Retention of FTI

7.      In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced restructuring managers will substantially enhance their attempts to maximize the value of their estates.  The Engagement Personnel are well qualified to act on the Debtors' behalf given their extensive knowledge and expertise with respect to these chapter 11 cases.

8.      The Engagement Personnel specialize in interim management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational

3

restructuring. FTI's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including: (a) developing or validating forecasts and business plans and related assessments of a business's strategic position; (b) monitoring and managing cash, cash flow, and vendor relationships; (c) assessing and recommending cost reduction strategies; and (d) designing and negotiating financial restructuring plans.

9.      FTI's professionals have assisted, advised and provided strategic advice to, debtors, creditors, bondholders, investors and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases. FTI has provided restructuring or crisis management services in numerous large cases, including most recently, *In re Goodman Networks Inc.*, No. 17-31575 (MI) (Bankr. S.D. Tex. Apr. 20, 2017); *In re CS Mining LLC*, No. 16-24818 (WTT) (Bankr. D. Utah Aug. 24, 2016); *In re Peabody Energy Corp.*, No. 16-42529 (BSS) (Bankr. E.D. Mo. May 18, 2016); *In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo. Feb. 24, 2016); *In re Ryckman Creek Res., LLC*, No. 16-10292 (KJC) (Bankr. D. Del. Feb. 9, 2016); *In re Molycorp Inc.*, No. 15-11362 (CJS) (Bankr. D. Del. July 17, 2015); *In re Magnetation LLC*, No. 15-50307 (GFK) (Bankr. D. Minn. June 10, 2015); *In re Altegrity, Inc.*, No. 15-10226 (LSS) (Bankr. D. Del. March 16, 2015); *In re Energy Future Holdings Corp.*, No. 14-10979 (CJS) (Bankr. D. Del. Jan. 12, 2015); *In re Dendreon Corp.*, No. 14-12515 (LSS) (Bankr. D. Del. Dec. 9, 2014); *In re Ablest Inc.*, No. 14-10717 (KJC) (Bankr. D. Del. April 21, 2014); *In re Synagro Techs., Inc.*, No. 13-11041 (BLS) (Bankr. D. Del. June 5, 2013); *In re The Scooter Store Holdings, Inc.*, No. 13-10904 (PJW) (Bankr. D. Del. June 7, 2013); *In re CHL, Ltd.*, No. 12-12437 (KJC) (Bankr. D. Del. Sept. 24, 2012); *In re Pemco World Air Servs., Inc.*, No. 12-10799 (MFW) (Bankr. D. Del. April 3, 2012); *In re Neb. Book*

4

*Co.*, No. 11-12005 (PJW) (Bankr. D. Del. July 21, 2011); *In re AbitibiBowater Inc.*, No. 09-11296 (KJC) (Bankr. D. Del. July 7, 2010); *In re Trico Marine Servs., Inc.*, No. 10-12653 (BLS) (Bankr. D. Del. Oct. 6, 2010); *In re U.S. Concrete, Inc.*, No. 10-11407 (PJW) (Bankr. D. Del. May 21, 2010); *In re Plumbing Holdings Corp.*, No. 09-14413 (CSS) (Bankr. D. Del. Jan. 26, 2010).

10.      The Debtors propose to designate Alan Boyko as their CRO, *nunc pro tunc* to the Petition Date.  Mr. Boyko, the CRO, is a Senior Managing Director with FTI based in Denver, Colorado.  He has worked as a turnaround consultant and financial advisor for over seventeen years, and has  extensive experience in the energy, mining, manufacturing, telecom, technology, and retail industries.    Mr. Boyko has substantial knowledge and experience in senior management positions with, or as restructuring advisor to, distressed companies and in assisting distressed companies with stabilizing their financial condition, analyzing their operations, and developing an appropriate business plan to accomplish the necessary restructuring of their operations and finances.  FTI has provided financial or restructuring advice to a number of companies or their creditors in the energy and mining sectors, including Peabody Energy Corporation and Arch Coal, Inc.—the two largest U.S. coal companies—American Gilsonite Company, CS Mining, LLC (FTI provided CRO),  Patriot Coal Corporation, Midway Gold Corporation (FTI provided CRO), Magnetation, Inc. (FTI provided CRO), Mineral Park, Inc. (FTI provided CRO), and Thompson Creek Metals  Company, Inc.  In addition, Mr. Boyko specifically has served as lead financial advisor or financial advisor to, among others, Arch Coal, Inc. and American Gilsonite Company..

11.      On August 14, 2017, FTI and the Company entered into the Engagement Letter attached hereto as **Exhibit A**.  The Engagement Letter sets forth the services that the CRO and

FTI personnel will provide for the Debtors. In addition, the Engagement Letter provides for compensation of FTI on an hourly basis for the CRO and support personnel, all as more fully set forth in the Engagement Letter.

12.     As a result of their history with the Debtors, FTI is intimately familiar with the Debtors' businesses, financial affairs, and capital structure. Throughout the course of FTI's engagement, Mr. Boyko and the FTI personnel working with him have devoted substantial amounts of time and effort working with members of the Debtors' senior management and legal advisors to, among other things, assist in the development of near-term projections and short-term cash management activities, review strategic alternatives, and coordinate the Debtors' efforts to prepare for and operate in chapter 11. For these reasons, FTI is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these chapter 11 cases. Accordingly, the Debtors submit that the retention of FTI and the designation of Mr. Boyko as CRO on the terms and conditions set forth herein are necessary and appropriate, are in the best interest of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## Services to be Provided

13.     Subject to approval by the Court, the Debtors propose to retain FTI to provide the Debtors with an CRO and the additional FTI personnel as necessary on the terms and conditions set forth in the Engagement Letter, except as otherwise explicitly set forth herein or in any order granting the relief requested herein. The Engagement Personnel will provide assistance to the Debtors in completing their restructuring through these chapter 11 cases, including cash forecasting, liquidity management, assistance in addressing business issues that arise during the pendency of these chapter 11 cases, the development of information for the Debtors and parties in interest, bankruptcy administration, preparation of monthly operating reports and motions, and

testimony as may be required and other assistance intended to support the Debtors and their other retained professionals. The Debtors will monitor the work of the Engagement Personnel and ensure that they do not provide duplicating services relative to other retained professionals.

14. Subject to further order of the Court, the Engagement Personnel may provide the services described in the Engagement Letter as FTI and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of these chapter 11 cases (collectively the "Restructuring Advisory Services"), including but not limited to:

(a)     assisting with the preparation of the statement of affairs, schedules and other regular reports required by the Court as well as providing assistance in such areas as testimony before the Court on matters that are within FTI's areas of expertise;

(b)     assisting with Monthly Operating Reports and other court and U.S. Trustee requested or required information;

(c)     assisting with the additional cataloging of executory contracts and unexpired leases and advising the Debtors regarding decisions on assumptions and rejections and cure amounts;

(d)     advising senior management in the negotiation and implementation of restructuring initiatives and evaluation of strategic alternatives;

(e)     assisting in communication and/or negotiation with outside constituents including stakeholders, vendors and suppliers and other lenders and their advisors;

(f)     managing the claims and claims reconciliation processes;

(g)     providing required cash budgeting and reporting under the agreements and the terms of the Cash Collateral motion;

(h)     providing assistance to management in connection with the Debtors' development of its rolling 13-week cash receipts and disbursements forecasting tool designed to provide on-time information related to the Debtors' liquidity;

(i)     assisting in obtaining and presenting information required by parties-in-interest in the Debtors' bankruptcy process including official committees appointed by the Court and the Court itself;

(j)     assisting the Debtors and outside counsel on the development of an approach to meet the requirements of Bankruptcy Rule 2015.3 for reporting on the value, operations and profitability of those entities in which the Debtors' estate holds a substantial or controlling interest;

(k)     assisting the Debtors in other business and financial aspects of a Chapter 11 proceeding, including, but not limited to, development of a disclosure statement and chapter 11 plan;

(l)     assisting as requested in managing any litigation that may be brought against the Debtors in the Court;

(m)     providing assistance in such areas as testimony before the Court on matters that are within the scope of this engagement and within FTI's area of testimonial competencies; and

(n)     assisting with such other matters as may be requested that fall within FTI's expertise and that are mutually agreeable.

15.     Such Restructuring Advisory Services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code.  The Restructuring Advisory Services provided by FTI will complement, and not duplicate, the services to be rendered by any other professional retained in these chapter 11 cases.  The Engagement Personnel have and will continue to work closely with the other professionals retained by the Debtors to minimize and avoid duplication of services. In addition, on August 3, 2017, the Board of Directors (the "Board") of Armstrong Energy, Inc. approved the retention of Mr. Boyko as CRO.

## FTI's Disinterestedness

16.     To the best of the Debtors' knowledge, information and belief, and except to the extent disclosed herein and in the Boyko Declaration, attached hereto as **Exhibit B**, FTI (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, (b) has no connection with the Debtors, their creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or the Office of the United States Trustee for the Eastern District of

Missouri (the "U.S. Trustee") or any person employed in the Office of the U.S. Trustee, and (c) does not hold any interest adverse to the Debtors' estates.

17.     Although the Debtors respectfully submit that the retention of FTI is not governed by section 327 of the Bankruptcy Code, the Boyko Declaration discloses, among other things, any relationship that FTI or Mr. Boyko has with the Debtors, their significant creditors, or other significant parties in interest known to FTI.  Based upon the disclosures set forth in the Boyko Declaration, the Debtors submit that FTI is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

18.     As set forth in the Boyko Declaration, to the extent that any new relevant facts or relationships bearing on the matters described herein during the period of FTI's retention are discovered or arise, FTI will provide the Court with a supplemental declaration disclosing, among other things, new material facts and relationships between the Debtors, the Engagement Personnel, or other significant parties in interest.

## Terms of Retention

19.     As set forth in the Engagement Letter, the Debtors have agreed to, among other things:  (a) compensate and reimburse FTI for expenses incurred and services provided by the Engagement Personnel; and (b) indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the Debtors' corporate bylaws and provide such persons insurance coverage under the Debtors' direct and officer liability insurance policy.

### *Professional Compensation and Expense Reimbursement*

20.     In summary, the Engagement Letter provides for the following compensation:

- **Standard Hourly Rates**:  Fees for services rendered by the Engagement Personnel based on the following hourly rates, which are subject to periodic revision as FTI adjusts its rates generally:

| | |
|---|---|
| Senior Managing Directors | $840 - $1,050 |
| Directors/Senior Directors/Managing Directors | $630 - $835 |
| Consultants/Senior Consultants | $335 - $605 |
| Administrative/Paraprofessionals | $135 - $265 |

- **Reimbursement of Expenses**:    In addition to compensation for professional services rendered by Engagement Personnel, FTI will seek reimbursement for reasonable and customary expenses incurred in connection with these chapter 11 cases, including, but not limited to travel, lodging, computer research, and messenger and telephone charges. In addition, FTI shall be reimbursed for the reasonable fees and expenses incurred in connection with the preparation and approval of this motion. All fees and expenses due to FTI will be billed on a monthly basis, or more frequently as agreed to between FTI and the Debtors, as further set forth in the Engagement Letter, but in all events subject to the order approving this motion.

*Indemnification Provisions*

21.    As a material part of the consideration for which FTI has agreed to provide the services described herein, and pursuant to the Engagement Letter, including the indemnification provisions attached thereto and incorporated by reference therein (the "Indemnification Provisions"), the Debtors have agreed to:  (a) indemnify the Engagement Personnel acting as officers to the same extent as the most favorable indemnification the Debtors extend to their officers or directors and to cover such Engagement Personnel under the Debtors' director and officer liability insurance policy; and (b) indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees (collectively, the "Indemnified Parties") under certain circumstances.[5]

---

[5]    The Indemnification Provisions generally provide that the Debtors will indemnify and hold harmless the Indemnified Parties from and against any claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation), arising out of or relating to the Debtors' retention of FTI under the Engagement Letter, the execution and delivery of the Engagement Letter, and the provision of services or other matters relating to or arising from the Engagement Letter.  Notwithstanding the terms of the Indemnification Provisions, the Debtors and FTI have agreed, subject to the Court's approval of this motion, that in no event shall an Indemnified Party be indemnified or receive contribution or other payment under the Indemnification Provisions if the Debtors, their estates, or the statutory committee of unsecured creditors appointed in these chapter 11 cases assert a claim against an Indemnified Party and the Court determines by final order that such claim arose out of the gross negligence or willful misconduct on the part of that or any other Indemnified Party.

The rights to indemnification shall survive the termination of these chapter 11 cases or any cases into which they may be converted.

22.     Accepting the Indemnification Provisions was a condition to FTI's engagement, the terms and provisions of which were, along with all other terms of the Engagement Letter, negotiated by the Debtors and FTI at arm's-length and in good faith.  FTI and the Debtors believe that the Indemnification Provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to FTI and for comparable engagements, both in- and out-of-court.    The Debtors respectfully submit that the Indemnification Provisions, viewed in conjunction with the other terms of FTI's proposed retention, are reasonable and in the best interests of the Debtors' estates and creditors, in light of the fact that the Debtors require FTI's services to successfully manage the Debtors' businesses during the pendency of the chapter 11 cases.

## Fees and Reporting

23.     If the Court approves the relief requested herein, FTI will be retained to provide the Debtors with the Engagement Personnel and Mr. Boyko will be designated as the CRO pursuant to section 363 of the Bankruptcy Code.  Because FTI is not being employed as a professional under section 327 of the Bankruptcy Code, FTI will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, FTI will file with the Court, and provide notice to the U.S. Trustee, the ad hoc group of Secured Noteholders and all official committees (together with the U.S. Trustee, the "Notice Parties"), reports of compensation earned and expenses incurred on at least a quarterly basis.  Such compensation and expenses shall be subject to Court review in the event that an objection is filed.  In addition, FTI will file with the Court and provide the Notice Parties a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report would include the names and

11

tasks filled by all Engagement Personnel involved in this matter. The Staffing Report (and FTI's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

24.     As set forth in the Engagement Letter, FTI received $100,000 as a retainer from the Debtors (the "Prior Retainer"). Thereafter, the retainer has been replenished on a monthly basis. In the 90 days prior to the Petition Date, FTI received additional retainers and payments totaling approximately $923,961 in the aggregate for services performed for the Debtors (together with the Prior Retainer, the "Retainers"). FTI has applied the Retainers to amounts due for services rendered and expenses incurred prior to the Petition Date; however, the Retainers have not been fully exhausted.

25.     The unapplied Retainers, which are estimated to total approximately $131,294, will not be segregated by FTI in a separate account, and will be held until the end of these chapter 11 cases and applied to FTI's finally approved fees in these proceedings, unless the Debtors agree to an alternative arrangement. Certain expenses and fees may have been incurred by FTI prior to the Petition Date, but not yet applied to the Retainers. Such amounts, if any, are estimated to be less than the aggregate balance of the Retainers as of the Petition Date. Moreover, the Debtors are not aware of any asserted or threatened disputes against FTI or the Engagement Personnel on account of their services provided before the Petition Date.

26.     Given the numerous issues which the Engagement Personnel may be required to address in the performance of their services, FTI's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services in an in-court and out-of-court context, the Debtors submit that the fee arrangements set forth in this motion and in the Engagement Letter are reasonable.

12

**Basis For Relief**

27.     The Debtors seek approval of the employment of FTI as described herein pursuant to section 363 of the Bankruptcy Code, *nunc pro tunc* to the Petition Date.  Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

28.     Under applicable case law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  *See, e.g.*, *In re Patriot Coal Corp.*, 492 B.R. 518, 530–31 (Bankr. E.D. Mo. 2013) ("Any transfer made outside the ordinary course of business [. . . ] must be justified by the facts and circumstances of the case, which ordinarily means that the business judgment standard of Section 363(b) applies."); *In re N. Port Assocs., Inc.*, 182 B.R. 810, 813 (Bankr. E.D. Mo. 1995) ("Section 363(b)(1) simply requires notice and a hearing before the trustee may use, sell or lease property of the estate other than in the ordinary course of business."); *In re Channel One Commc'ns, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) (finding a debtor may sell substantially all its assets under section 363(b)(1) of the Bankruptcy Code so long as the court can expressly find a good business reason to grant the motion) (quoting *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *see also Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a

decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct").

29.     The retention of FTI and its professionals is a sound exercise of the Debtors' business judgment.  Mr. Boyko has extensive experience as a senior officer and as an advisor for many troubled companies, and the Debtors believe that the Engagement Personnel will provide services that benefit the Debtors' estates and creditors.  In addition, FTI has extensive experience in providing restructuring consulting services in reorganization proceedings and has an excellent reputation for the services it has rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.  Furthermore, Mr. Boyko and the Engagement Personnel, working in conjunction with the Debtors' senior management, have already proven to be of invaluable assistance in the Debtors' efforts in developing near-term projections, assisting in short-term cash management activities, evaluating strategic alternatives, and coordinating the Debtors' efforts to prepare for and operate in chapter 11.

30.     In view of the foregoing, the Debtors believe that the retention of FTI and the employment of Mr. Boyko and the Engagement Personnel is a sound exercise of the Debtors' business judgment and is in the best interests of all parties in interest in these chapter 11 cases. The Debtors additionally believe that the Engagement Personnel are well qualified and able to represent the Debtors in a cost effective, efficient, and timely manner.  FTI has indicated a willingness to cause the Engagement Personnel to act on behalf of the Debtors and to subject itself to the jurisdiction and supervision of the Court.  For the reasons set forth above, the Debtors respectfully request that the Court authorize the Debtors to retain FTI to provide the Debtors with an CRO and the Engagement Personnel, and to designate Mr. Boyko as the CRO *nunc pro tunc* to the Petition Date, all pursuant to section 363 of the Bankruptcy Code.

31.     The retention of corporate officers and other temporary employees is proper under section 363 of the Bankruptcy Code.  Numerous courts have approved relief similar to the relief requested in this motion.  *See, e.g.*, *In re The Gymboree Corp.*, No. 17-32986) (KLP) (Bankr. E.D. Va. July 26, 2017) (authorizing debtors to retain advisory firm and designating a chief restructuring officer *nunc pro tunc* to petition date); *In re 21st Century Oncology Holdings, Inc.*, No. 17-22770 (RDD) (Bankr. S.D.N.Y. July 19, 2017) (authorizing debtors to retain advisory firm and designate a chief executive officer and chief financial officer *nunc pro tunc* to petition date); *In re Payless Holdings LLC*, No. 17-42267 (KAS) (Bankr. E.D. Mo. May 16, 2017) (authorizing debtors to retain advisory firm and designating a chief restructuring officer *nunc pro tunc* to petition date); *In re Goodman Networks Inc.*, No. 17-31575 (MI) (Bankr. S.D. Tex. Apr. 20, 2017) (authorizing debtors to retain FTI and designate a chief restructuring officer *nunc pro tunc* to petition date); *In re BCBG Max Azria Glob. Holdings*, LLC, No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) (authorizing debtors to retain advisory firm and designate a chief restructuring officer and chief financial officer *nunc pro tunc* to petition date).[6]

32.     Based upon the foregoing, the Debtors submit that the retention of FTI, and the designation of Mr. Boyko as CRO on the terms set forth herein and in the Engagement Letter, is essential, appropriate, and in the best interest of the Debtors' estates, creditors, and other parties in interest and should be granted in these chapter 11 cases.

## Notice

33.     The Debtors will provide notice of this motion to:  (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the indenture trustee under

---

[6]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

the Debtors' 11.75% senior secured notes due 2019; (d) counsel to the ad hoc group of holders of the Debtors' 11.75% senior secured notes due 2019; (e) counsel to Knight Hawk Holdings, LLC; (f) the United States Attorney's Office for the Eastern District of Missouri; (g) the Internal Revenue Service; (h) the Environmental Protection Agency; (i) the office of the attorneys general for the states in which the Debtors operate; (j) the Securities and Exchange Commission; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

34.     No prior request for the relief sought in this motion has been made to this or any other court.


*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

St. Louis, Missouri
Dated:  November 1, 2017

*/s/ Richard W. Engel, Jr.*
Richard W. Engel, Jr. (MO 34641)
Erin M. Edelman (MO 67374)
John G. Willard (MO 67049)
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri 63105
Telephone:      (314) 621-5070
Facsimile:      (314) 621-2239
Email:          rengel@armstrongteasdale.com
                eedelman@armstrongteasdale.com
                jwillard@armstrongteasdale.com

- and -

James H.M. Sprayregen, P.C.
Ross M. Kwasteniet, P.C. (*pro hac vice* admission pending)
William A. Guerrieri (*pro hac vice* admission pending)
Travis M. Bayer (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                ross.kwasteniet@kirkland.com
                will.guerrieri@kirkland.com
                travis.bayer@kirkland.com

-and-

Jonathan S. Henes, P.C. (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          jonathan.henes@kirkland.com

*Proposed Counsel to the Debtors*

## **EXHIBIT A**

**Engagement Letter**

Armstrong Energy, Inc.
August 14, 2017


<u>CONFIDENTIAL</u>


August 14, 2017


Martin D. Wilson
President and Chief Executive Officer
Armstrong Energy Inc.
7733 Forsyth Boulevard
Suite 1625
St. Louis, MO 63105

**Re:  Armstrong Energy Inc.**

Dear Mr. Wilson:

The purpose of this letter is to confirm the understanding and agreement (the "Agreement") between
Armstrong Energy Inc. (the "Client" or "Armstrong") and FTI Consulting, Inc. ("FTI") concerning the
Client's engagement of FTI to provide certain temporary employees to the Client to act as both Chief
Restructuring Officer and as Hourly Temporary Staff in providing services consistent with those roles
(the "Engagement"). This Agreement is effective on August 14, 2017 (the "Effective Date"). The FTI
Standard Terms and Conditions attached hereto as Exhibit "A" are also incorporated herein and forms
part of this Agreement.

## 1.      <u>Temporary Officers, Hourly Temporary Employees and Services</u>

FTI will provide Alan Boyko to serve as the Client's Chief Restructuring Officer (the "CRO" or the
"Temporary Officer") reporting to the Chief Executive Officer of the client ("Client Designee"), in
connection with the Engagement. The duties of the Temporary Officer, as well as any additional Hourly
Temporary Staff (as defined below), shall be consistent with the Services (defined below). Without
limiting the foregoing, the Temporary Officer, as well as any Hourly Temporary Staff, shall work with
other senior management of the Client, and other professionals, to provide the Services.

In addition to providing the Temporary Officer, FTI may also provide the Client with additional staff (the
"Hourly Temporary Staff" and, together with the Temporary Officer, the "FTI Professionals"), subject to
the terms and conditions of this Agreement. The Hourly Temporary Staff may be assisted by or replaced
by other FTI professionals reasonably satisfactory to the Board and/or Committee, as required, who shall
also become Hourly Temporary Staff for purposes hereof.  The initial schedule of Hourly Temporary
Staff is set out on Exhibit "B".   FTI will keep the Client Designee reasonably informed as to FTI's
staffing and will not add Hourly Temporary Staff to the assignment without first consulting with the
Client.

The services we will provide in connection with the Engagement will encompass only those services that
are requested by the Client and that are specified below and which are normally and reasonably associated
with this type of engagement and that we are able to provide and that are consistent with our ethical
obligations (the "Services").  With respect to all matters of our Engagement, we will coordinate closely
with the Client as to the nature of the Services that we will render and the scope of our engagement. The
Services shall include assisting the Client and its management with some or all of the following:

1

Armstrong Energy, Inc.
August 14, 2017

CRO Related:
- Reviewing the Company's operating plan and budgets, providing feedback as appropriate;
- Working with management and the Company's other professionals on key stakeholder restructuring and related negotiations, including litigation (if any);
- Advising the Company on operating plan, liquidity management, and restructuring alternatives;
- Working closely with management and Company counsel to prepare for and execute on a voluntary Chapter 11 process, if necessary; and
- Assisting the Company with the preparation and confirmation of a value optimizing chapter 11 plan, and/or a sale of certain or substantially all of Armstrong's assets pursuant to section 363 of the Bankruptcy Code.

Chapter 11 & Post-Petition Analytical and Reporting Support:
- Providing the Company with additional financial modeling resources to provide restructuring related financial analyses and support financial modeling efforts, and modifying existing forecast tools for court reporting purposes;
- Developing communications plans for all key stakeholders;
- Preparing schedules, reports, etc., as required by any chapter 11 filing;
- Analyzing executory contracts;
- Assisting Armstrong with any litigation;
- Analyzing and administering any Chapter 11 claims process;
- Preparing Monthly Operating Reports, Statement(s) of Financial Affairs, Schedules of Assets and Liabilities, and other similar documents and reports; and,
- Providing the analytical support (including any valuation analyses or testimony) required for any restructuring, whether implemented through a chapter 11 plan or a section 363 sale.

The Services, as outlined, are subject to finalization and/or change as mutually agreed by us.

As usual, our Engagement is to represent the Company and not its individual directors, officers, employees or shareholders.  However, we anticipate that in the course of that Engagement, we may provide information or advice to directors, officers or employees in their corporate capacities.

If cases under the Bankruptcy Code are commenced and our retention is approved, our role will include serving as principal bankruptcy crisis and turnaround manager and CRO to the debtors and debtors in possession in those cases under a general retainer (not to exceed $100,000), subject to court approval. Our role also will encompass all out-of-court planning and negotiations attendant to these tasks.

The engagement of FTI to perform the Services post any bankruptcy filing(s) shall be subject to the approval of the Bankruptcy Court and shall be substantially as provided in this Agreement as modified by the retention order approved by the Bankruptcy Court. Client agrees, at Client's expense, to file an application (the "Application") to employ FTI as crisis and turnaround manager *nunc pro tunc* to the Effective Date pursuant to § 363 of the Bankruptcy Code. The Client agrees to file all required applications, including the Application, for the employment or retention of FTI at the earliest practical time.

The Services do not include (i) audit, legal, tax, environmental, accounting, actuarial, employee benefits, insurance advice or similar specialist and other professional services which are typically outsourced and which shall be obtained directly where required by the Client at Client's expense; or (ii) investment banking, including securities analysis, advising any party or representation of the Client on the purchase, sale or exchange of securities or representation of the Client in securities transactions. FTI is not a registered broker-dealer in any jurisdiction and will not offer advice or its opinion or any testimony on

2

Armstrong Energy, Inc.
August 14, 2017

valuation or exchanges of securities or on any matter for which FTI is not appropriately licensed or accredited. An affiliate of FTI is a broker-dealer but is not being engaged by the Client to provide any investment banking or broker-dealer services.

The Client agrees to supply office space, and office and support services to FTI as reasonably requested by FTI in connection with the performance of its duties hereunder.

For the avoidance of doubt, no term in this Agreement or any other agreement, contract, or arrangement between the Client and FTI, including but not limited to any terms regarding confidentiality, restricts the CRO and any Hourly Temporary Staff or other personnel at FTI who have been, are, may become, or will be, involved in this matter, from meeting with or speaking to the Supporting Holders and their Advisors (as such terms are defined in that certain Forbearance Agreement, dated as of July 16, 2017) .

## 2.    Compensation to FTI

For services rendered in connection with this engagement, including the CRO services of Alan Boyko, all professionals will be billed at their current hourly rate (to the nearest tenth of an hour) as defined below. All fees are considered earned upon payment, and due upon presentment. FTI will submit monthly invoices documenting its reasonable fees and expenses to the Client; *provided* that FTI's fees and expenses for services rendered through September 15, 2017 shall not exceed $250,000.

| United States | Per Hour (USD) |
|---|---|
| Senior Managing Directors | $840-1,050 |
| Directors / Senior Directors / Managing Directors | 630-  835 |
| Consultants/Senior Consultants | 335-  605 |
| Administrative / Paraprofessionals | 135-  265 |

In addition to the fees outlined above, FTI will bill for reasonable allocated and direct expenses which are likely to be incurred on your behalf during this Engagement.  Direct expenses include reasonable and customary out-of-pocket expenses which are billed directly to the engagement such as certain telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to the engagement.  Further, if FTI and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to this matter, FTI will be compensated by you at its regular hourly rates and reimbursed for reasonable allocated and direct expenses (including counsel fees) with respect thereto.

We will send the Company monthly invoices for services rendered and charges and disbursements incurred on the basis discussed above, and in certain circumstances, an invoice may be for estimated fees, charges and disbursements through a date certain.  Each invoice constitutes a request for an interim payment against the fee to be determined at the conclusion of our Services.  Upon transmittal of the invoice, we may immediately draw upon the Initial Cash on Account (as replenished from time to time) up to the lesser of  (a) the amount of the invoice and (b) the Initial Cash on Account.  The Company agrees upon submission of each such invoice to promptly wire the invoice amount to us as replenishment of the Initial Cash on Account (together with any supplemental amount to which we and the Company mutually agree), without prejudice to the Company's right to advise us of any differences it may have with respect to such invoice.  We have the right to apply to any outstanding invoice (including amounts billed prior to the date hereof), up to the remaining balance, if any, of the Initial Cash on Account (as may be supplemented from time to time) at any time subject to (and without prejudice to) the Company's opportunity to review our statements.

Armstrong Energy, Inc.
August 14, 2017

The Company agrees to promptly notify FTI if the Company or any of its subsidiaries or affiliates extends (or solicits the possible interest in receiving) an offer of employment to a principal or employee of FTI involved in this Engagement and agrees that FTI has earned and is entitled to a cash fee, upon hiring, equal to 150% of the aggregate first year's annualized compensation, including any guaranteed or target bonus and equity award, to be paid to FTI's former principal or employee that the Company or any of its subsidiaries or affiliates hires at any time up to one year subsequent to the date of the final invoice rendered by FTI with respect to this Engagement.

**Cash on Account:**

Initially, the Company will forward to us the amount of $100,000 which funds will be held "on account" to be applied to our professional fees, charges and disbursements for the Engagement (the "Initial Cash on Account"). To the extent that this amount exceeds our fees, charges and disbursements upon the completion of the Engagement, we will refund any unused portion. The Company agrees to increase or supplement the Initial Cash on Account from time to time during the course of the Engagement in such amounts as the Company and we mutually shall agree are reasonably necessary to increase the Initial Cash on Account to a level that will be sufficient to fund Engagement fees, charges, and disbursements to be incurred.

 In a case under the Bankruptcy Code, fees and expenses may not be paid without the express prior approval of the bankruptcy court. In most cases of this size and complexity, on request of a party in interest, the bankruptcy court permits the payment of interim fees during the case. The Company agrees that, if asked to do so by us, the Company will request the bankruptcy court to establish a procedure for the payment of interim fees during the case that would permit payment of interim fees. If the bankruptcy court approves such a procedure, we will submit invoices on account against our final fee. These interim invoices will be based on such percentage as the bankruptcy court allows of our internal time charges and costs and expenses for the work performed during the relevant period and will constitute a request for an interim payment against the reasonable fee to be determined at the conclusion of our representation.

In preparation for the filing of any cases under the Bankruptcy Code, we also may require an additional on account payment to supplement the Initial Cash on Account to cover fees, charges and disbursements to be incurred during the initial phase of the chapter 11 cases (the "Additional Cash on Account"). We will hold the Additional Cash on Account, as we have the Initial Cash on Account. Of course, the reasonableness of the Additional Cash on Account remains subject to review by the court in any ensuing case.

If any of the Company's entities become a debtor in one or more cases under the Bankruptcy Code, some fees, charges, and disbursements (whether or not billed) incurred before the filing of bankruptcy petitions (voluntary or involuntary) might remain unpaid as of the date of the filing. The unused portion, if any, of the Initial Cash on Account and the Additional Cash on Account will be applied to any such unpaid pre-petition fees, charges and disbursements. Any requisite court permission will be obtained in advance. We will then hold any portion of the Initial Cash on Account and the Additional Cash on Account not otherwise properly applied for the payment of any such unpaid pre-filing fees, charges and disbursements (whether or not billed) as on account cash to be applied to our final invoice in any case under the Bankruptcy Code.

Post-petition fees, charges and disbursements will be due and payable immediately upon entry of an order containing such court approval or at such time thereafter as instructed by the court. The Company understands that while the arrangement in this paragraph may be altered in whole or in part by the bankruptcy court, the Company shall nevertheless remain liable for payment of court approved post-petition fees and expenses. Such items are afforded administrative priority under 11 U.S.C. § 503(b)(l).

4

Armstrong Energy, Inc.
August 14, 2017

The Bankruptcy Code provides in pertinent part, at 11 U.S.C. § 1l29(a)(9)(A), that a plan cannot be confirmed unless these priority claims are paid in full in cash on the effective date of any plan (unless the holders of such claims agree to different treatment).  It is agreed and understood that the unused portion, if any, of the Initial Cash on Account (as may be supplemented from time to time) and the Additional Cash on Account shall be held by us and applied against the final fee application filed and approved by the court.

Additional Provisions Regarding Fees:

    a)  FTI may stop work or terminate the Agreement immediately upon the giving of written notice to the Client (i) if payments are not made in accordance with this Agreement, (ii) if the Application is not approved by the Bankruptcy Court, (iii) if the Chapter 11 case is dismissed or converted to a Chapter 7 proceeding, or (iv) if a Chapter 11 Trustee or other responsible person is appointed.

    b)  If, and only if, local Bankruptcy rules or the order approving the Application so require, FTI shall file with and serve on creditors entitled to notice thereof, a statement of staffing, professional services, compensation or expenses, on a quarterly basis, or as the Bankruptcy Court or rules may direct, and creditors and other parties in interest shall have an opportunity to object thereto and request a hearing thereon. In the event that FTI is employed post-petition as a "professional person" pursuant to § 327 of the Bankruptcy Code, Bankruptcy Court approval will generally be required to pay FTI's fees and expenses for Post-petition Services.

    c)  Client agrees that FTI is not an employee of the Client and the FTI employees and independent FTI contractors who perform the Services are not employees of the Client, and they shall not receive a W-2 from the Client for any fees earned under this engagement, and such fees are not subject to any form of withholding by the Client. The Client shall provide FTI a standard form 1099 on request for fees earned under this Engagement.

    d)  Copies of Invoices shall be sent by facsimile or email as follows:

        To the Client at:
        Armstrong Energy Inc.
        7733 Forsyth Boulevard
        Suite 1625
        St. Louis, MO 63105

        Attention: Martin D. Wilson

## 3.    Availability of Information

In connection with FTI's activities on the Client's behalf, the Client agrees (i) to furnish FTI with all information and data concerning the business and operations of the Client which FTI reasonably requests, and (ii) to provide FTI with reasonable access to the Client's officers, directors, partners, employees, retained consultants, independent accountants, and legal counsel. FTI shall not be responsible for the truth or accuracy of materials and information received by FTI under this agreement.

## 4.    Notices

Notices under this Agreement to the Client shall be provided as set forth in paragraph 2(d).

Notices to FTI shall be to:

Armstrong Energy, Inc.
August 14, 2017

FTI Consulting Inc.
Attn: Alan Boyko
Phone: 303-689-8892
Fax: 303-689-8802
Email: alan.boyko@fticonsulting.com

Notices shall be provided by (a) fax and email, (b) hand delivery, or (c) overnight delivery. If provided by fax and email or hand delivery, they shall be deemed effective the date given. If provided by overnight delivery, they shall be deemed effective on the date of actual receipt.

5.    **Miscellaneous**

This Agreement: represents the entire understanding of the parties hereto and supersedes any and all other prior agreements among the parties regarding the subject matter hereof; shall be binding upon and inure to the benefit of the parties and their respective heirs, representatives, successors and assigns; may be executed by facsimile (followed by originals sent via regular mail), and in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument; and may not be waived, modified or amended unless in writing and signed by a representative of the Client and FTI. The provisions of this Agreement shall be severable. No failure to delay in exercising any right, power or privilege related hereto, or any single or partial exercise thereof, shall operate as a waiver thereof.

Based on our understanding of the parties involved in this matter, we have compiled a list of interested parties (the "Potentially Interested Parties") and have undertaken a limited review of our records to determine FTI's professional relationships with the Company and such Potentially Interested Parties. From the results of such review, we are not aware of any conflicts of interest or relationships that we believe would preclude us from performing the Services.

As you know, however, we are a large consulting firm with numerous offices throughout the world.  We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. The FTI professionals providing services hereunder will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

Armstrong Energy, Inc.
August 14, 2017

If this letter correctly sets forth our understanding, please so acknowledge by signing below and returning a signed copy of this letter to us.

Very truly yours,

FTI CONSULTING, INC.

By: _____
Name: Alan Boyko
Title: Senior Managing Director

ACCEPTED AND AGREED this 14th day of August, 2017.

On behalf of Armstrong Energy Inc.

By: _____
    Name: Martin D. Wilson
    Title: President and Chief Executive Officer

Date: _____8/14/17_____

# EXHIBIT A

## FTI CONSULTING, INC.

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement with Armstrong Energy Inc. dated as of August 14, 2017 (the "Engagement Letter"). The Engagement Letter and these Standard Terms and Conditions annexed thereto (collectively, the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

**1.    Reports and Advice**

1.1    **Use and purpose of advice and reports—** Any advice given or report issued by us is provided solely for your use and benefit and only in connection with the purpose in respect of which the Services are provided. Unless required by law, you shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent, which shall be conditioned on the execution of a third party release letter in the form provided by FTI; provided that you may share any advice or reports issued by us to a party bound by an obligation of confidentiality to you. In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

**2.    Information and Assistance**

2.1    **Provision of information and assistance** – Our performance of the Services is dependent upon you and the Company providing us with such information and assistance as we may reasonably require from time to time.

2.2    **Punctual and accurate information** – You and Company personnel shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. You and the Company shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3    **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

2.4    **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

**3.**     **Additional Services**

3.1     **Responsibility for other parties**— You and the Company shall be solely responsible for the work and fees of any other party engaged by you or the Company to provide services in connection with the Engagement regardless of whether such party was introduced to you by us.  Except as provided in this Engagement Contract (including section 2 of the Engagement Letter with respect to the retention of certain agents and independent contractors), we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters.  Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to you or the Company, other than our agents or independent contractors engaged to provide Services, without your or the Company's written authorization.

**4.**     **Confidentiality**

4.1     **Restrictions on confidential information**— All parties to this Engagement Contract agree that any confidential information received from the other parties shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, no party will disclose the other contracting party's confidential information to any third party without such party's consent. Confidential information shall not include information that:

4.1.1     is or becomes generally available to the public other than as a result of a breach of an obligation under this Clause 4.1;

4.1.2     is acquired from a third party who, to the recipient party's knowledge, owes no obligation of confidence in respect of the information;

4.1.3     is or has been independently developed by the recipient (without the use of confidential information); or

4.1.4     has been delivered any third parties who are bound by a confidentiality agreement executed between those third parties and the Company.

4.2     **Disclosing confidential information** – Notwithstanding Clause 1.1 or 4.1 above, all parties will be entitled to disclose confidential information to a third party to the extent that this is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other parties.

4.3     **Citation of engagement** – Without prejudice to Clause 4.1 and Clause 4.2 above, to the extent our engagement is or becomes known to the public, we may cite the performance of the Services to our clients and prospective clients as an indication of our experience, unless we and you specifically agree otherwise in writing.

4.4     **Internal quality reviews** – Notwithstanding the above, we may disclose any information referred to in this Clause 4 to any other FTI entity or use it for internal quality reviews; *provided*, that we shall cause such persons to keep such information confidential in accordance with the terms of this Engagement Contract.

4.5     **Maintenance of workpapers** – Notwithstanding the above, we may keep one archival set of our working papers from the Engagement, including working papers containing or reflecting confidential information, in accordance with our internal policies; *provided*, that we shall keep such materials confidential in accordance with the terms of this Engagement Contract.

**5.**     **Termination**

5.1     **Termination of Engagement with notice**— Termination of Engagement with notice –This Agreement is terminable by the Client or by FTI at any time upon the giving of thirty (30) days written notice. Upon such

termination by the Client (the "Termination Date"), FTI shall cease work and the Client shall have no further obligation for fees and expenses of FTI arising or incurred after the Termination Date, provided, however, that, notwithstanding any termination by the Client or by FTI in the circumstances described in paragraph (a) under "Additional Provisions Regarding Fees" in the Engagement Letter.

The Client shall reimburse FTI for its out-of-pocket expenses (the "Termination Expenses") incurred in connection with commitments made by FTI prior to the Termination Date with respect to advance travel arrangements reasonably incurred, to the extent FTI is unable to obtain refunds of such expenses. FTI shall provide the Client with reasonable documentation to substantiate all Termination Expenses for which payment is requested; and

5.2     **Continuation of terms**— The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clause 4 of the Engagement letter, and Clauses 1.1, 4, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

**6.      Indemnification, Insurance and Liability Limitation**

6.1     **Indemnification –** The Company agrees to indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees (collectively "Indemnified Persons") from and against any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation) arising out of or relating to your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, except to the extent that any such claim, liability, obligation, damage, cost or expense shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the Indemnified Person or Persons in respect of whom such liability is asserted (an "Adverse Determination").  In the event of an Adverse Determination, the Indemnified Parties shall indemnify and hold harmless Company for any and all claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys's fees and expenses and costs of investigation) incurred by or against Company arising from such Adverse Determination or the facts and circumstances arising therefrom.  The Company shall pay damages and expenses, including reasonable legal fees and disbursements of counsel as incurred in advance.  FTI agrees that it will reimburse any amounts paid in advance to the extent they relate directly to an Adverse Determination.

Subject to any limitation post-petition required by the Bankruptcy Court, the Client agrees to indemnify and hold harmless FTI and its shareholders, directors, officers, managers, employees, contractors, agents and controlling persons (each, an "Indemnified Party") from and against any losses, claims, damages or expenses, or if same was or is or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, any threatened, pending or completed action, suit, proceeding or alternative dispute resolution mechanism, or any hearing, inquiry or investigation, in each case by reason of (or arising in part out of) any event or occurrence related to this agreement or any predecessor agreement for services or the fact that any Indemnified Party is or was an agent, officer director, employee or fiduciary of the Client, or by reason of any action or inaction on the part of any Indemnified Party while serving in such capacity (an "Indemnifiable Event") against expenses (including reasonable attorneys' fees and disbursements), judgments, fines, settlements and other amounts actually and reasonably incurred in connection with any Indemnifiable Event. The Application shall include the assumption by the Client of FTI's right to indemnification in respect of its actions under this Agreement prior to the Petition Date. The Indemnified Party shall promptly forward to the Client all written notifications and other matter communications regarding any claim that could trigger the Client's indemnification obligations under this Section 6. If the Client so elects or is requested by an Indemnified Party, the Client will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the reasonable fees and disbursements of such counsel. In the event, however, such Indemnified Party is advised by counsel that

having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an Indemnified Party and the Client, and such Indemnified Party is advised by counsel that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Client, or if the Client fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Party, in either case in a timely manner, then such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Client will pay the reasonable fees and disbursements of such counsel; provided, however, that the Client will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for an Indemnified Party in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Client assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense. The Client further agrees that the Client will not, without the prior written consent of the Indemnified Party (which consent shall not be unreasonably withheld or delayed), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not the Indemnified Party or any other Indemnified Party is an actual or potential party to such claim, action, suit or proceeding) unless (i) to the extent that such settlement, compromise or consent purports directly or indirectly to cover the Indemnified Party or any other Indemnified Party, such settlement, compromise or consent includes an unconditional release of the Indemnified Party and each other Indemnified Party from all liability arising out of such claim, action, suit or proceeding, or (ii) to the extent that such settlement, compromise or consent does not purport directly or indirectly to cover the Indemnified Party or any other Indemnified Party, the Client has given the Indemnified Party reasonable prior written notice thereof and used all reasonable efforts, after consultation with the Indemnified Party, to obtain an unconditional release of the other Indemnified Parties hereunder from all liability arising from all liability arising out of such claim, action, suit or proceeding. The Indemnified Party shall not enter into any closing agreement or final settlement that could trigger the Client's indemnification obligations under this Section 6 without the written consent of the Client, which shall not unreasonably be withheld or delayed or conditioned. The Client will not be liable for any settlement of any action, claim, suit or proceeding affected without the Client's prior written consent, which consent shall not be unreasonably withheld or delayed or conditioned, but if settled with the consent of the Client or if there be a final judgment for the plaintiff, the Client agrees to indemnify and hold harmless the Indemnified Party from and against any loss or liability by reason of such settlement or judgment, as the case may be.

6.2    **Insurance** –In addition to the above indemnification and provision regarding advancement of fees/expenses, FTI employees serving as directors or officers of the Company or its affiliates will receive the benefit of the most favorable indemnification and advancement provisions provided by the Company to its directors, officers and any equivalently placed employees, whether under the Company's charter or by-laws, by contract or otherwise. The Company shall specifically include and cover employees and agents serving as directors and officers of the Company or affiliates from time to time with direct coverage under the Company's policy for liability insurance covering its directors, officers and any equivalently placed employees. Prior to FTI accepting any director or officer position, the Company shall, at the request of FTI, provide FTI a copy of its current D&O policy, a certificate of insurance evidencing the policy is in full force and effect, and a copy of the signed board resolutions and any other document that FTI may reasonably request evidencing the appointment and coverage of the indemnitees. The Company shall maintain such D&O insurance for the period through which claims can be made against such persons. In the event the Company is unable to include FTI employees and agents under the Company's policy or does not have first dollar coverage acceptable to FTI in effect for at least $10 million, FTI may, subject to the prior written consent of the Company, attempt to purchase a separate D&O insurance policy that will cover the FTI employees and agents only. The cost of the policy shall be invoiced to the Company as an out-of-pocket expense. Notwithstanding anything to the contrary, the Company's indemnification obligations in this Section 6 shall be primary to (and without allocation against) any similar indemnification and advancement obligations of FTI, its affiliates and insurers to the indemnitees (which shall be secondary), and the Company's D&O insurance coverage for the indemnitees shall be specifically primary to (and without allocation against) any other valid and collectible insurance coverage that may apply to the indemnitees (whether provided by FTI or otherwise).

This indemnity shall not apply to any portion of any such losses, claims, damages, liabilities and expenses to the extent it is found in a final judgment by a court of competent jurisdiction to have resulted primarily from the bad faith, gross negligence, willful misconduct or violation of law of any such Indemnified Party. The Client agrees to use commercially reasonable best efforts to (i) include Alan Boyko and any other FTI personnel who assume officer or director positions with the Client or who perform Services hereunder, FTI and its agents, employees, officers, subcontractors, directors, joint venture partners and members, as insureds under the Client's directors and officers insurance; and (ii) unless it is unable to do so at a commercially reasonable cost, purchase a three-year directors and officers insurance "tail" or runoff policy (or such a policy for such shorter period as Client has the right to or is otherwise able to purchase) covering the period of FTI's service.  In connection with this engagement Client represents to FTI that Client hereby represents that (i) it has timely remitted and will continue to timely remit to the appropriate beneficiaries all employee source deductions, payroll and other taxes, benefits deductions, and contribution to employee benefit programs, and has timely collected and remitted sales and use and other similar taxes to appropriate collecting authorities and will continue timely to do so; (ii) there is no litigation or other proceeding pending, or to knowledge of Client, threatened (nor is Client aware of facts that could give rise to such), in each case that seeks or could give rise to personal liability of officers and directors of Client; and (iii) Client has been in continuing compliance with all applicable laws and regulations concerning the discharge, treatment, storage, transportation or use of hazardous materials and is aware of no facts or circumstances that could give rise to Client responsibility or liability under such laws and regulations.

6.3     **Limitation of liability –**

You and the Company agree that no Indemnified Person shall have any liability as a result of your retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of an Indemnified Person or Persons.  Without limiting the generality of the foregoing, in no event shall any Indemnified Person be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

7.      **Governing Law, Jurisdiction and WAIVER OF JURY TRIAL —** The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The Bankruptcy Court having jurisdiction over the Client's Bankruptcy case shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction.  TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, YOU, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER.

**<u>Confirmation of Standard Terms and Conditions</u>**

Subject to the terms and conditions of the Engagement Letter, we agree that FTI Consulting, Inc. is engaged upon the terms set forth in these Standard Terms and Conditions as outlined above.

**On behalf of Armstrong Energy Inc.**

By: _Mat D. Wlon_
    Name: Martin D. Wilson
    Title: President and Chief Executive Officer

Date: _8/14/17_

**EXHIBIT B**

**INITIAL SCHEDULE OF HOURLY TEMPORARY STAFF**

| Staff | Level | Hourly Rate |
|---|---|---|
| Brian Martin | Director | $665 |
| Christopher Marshall | Senior Consultant | $455 |

## **<u>EXHIBIT B</u>**

**Declaration of Alan Boyko**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 17-47541-659 |
|  | ) | CHAPTER 11 |
| ARMSTRONG ENERGY, INC., *et al.*,[1] | ) |  |
|  | ) | (Joint Administration Requested) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

## DECLARATION OF ALAN BOYKO IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO (A) RETAIN FTI CONSULTING, INC. TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL AND (B) DESIGNATE ALAN BOYKO AS CHIEF RESTRUCTURING OFFICER FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE, AND (II) GRANTING RELATED RELIEF

I, Alan Boyko, make this Declaration pursuant to 28 U.S.C. § 1746, and state:

1.      I am a Senior Managing Director of FTI Consulting, Inc. ("FTI"), an internationally recognized consulting firm that has a wealth of experience in providing financial advisory services both in and out-of-court, and enjoys an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

2.      I submit this declaration on behalf of FTI (the "Declaration") in support of the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to (A) Retain FTI Consulting, Inc. to Provide the Debtors A Chief Restructuring Officer and Certain Additional Personnel and*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Armstrong Energy, Inc. (5664); Armstrong Air, LLC (2017); Armstrong Coal Company, Inc. (0349); Armstrong Coal Sales, LLC (4058); Armstrong Energy Holdings, Inc. (5664); Armstrong Logistics Services, LLC (0392); Thoroughfare Mining, LLC (7890); Western Diamond LLC (9356); Western Land Company, LLC (9821).  The location of the Debtors' service address is:  7733 Forsyth Boulevard, Suite 1625, St. Louis, Missouri 63105.

*(B) Designate Alan Boyko as Chief Restructuring Officer for the Debtors,* Nunc Pro Tunc *to the Petition Date, and (II) Granting Related Relief* (the "Motion"),[2] by which the Debtors are seeking authority to retain FTI on the terms and conditions set forth in the Motion and the engagement letter between the Debtors and FTI (the "Engagement Letter") annexed as **Exhibit A** to the Motion.  Except as otherwise noted,[3] I have personal knowledge of the matters set forth herein.  If called and sworn as a witness, I could, and would, testify competently to the matters set forth herein.

## Retention of FTI

3.    In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced restructuring managers will substantially enhance their attempts to maximize the value of their estates.  The Engagement Personnel are well qualified to act on the Debtors' behalf given their extensive knowledge and expertise with respect to these chapter 11 cases.

4.    The Engagement Personnel specialize in interim management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring.  FTI's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including:    (a) developing or validating forecasts and business plans and related assessments of a business's strategic position; (b) monitoring and managing cash, cash flow, and vendor relationships; (c) assessing and recommending cost reduction strategies; and (d) designing and negotiating financial restructuring plans.

---

2    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

3    Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at FTI and are based on information provided by them.

5.      FTI's professionals have assisted, advised and provided strategic advice to, debtors, creditors, bondholders, investors and other entities in numerous chapter 11 cases of similar size and complexity to the Debtors' chapter 11 cases.  FTI has provided restructuring or crisis management services in numerous large cases, including most recently *In re Goodman Networks Inc.*, No. 17-31575 (MI) (Bankr. S.D. Tex. Apr. 20, 2017); *In re CS Mining LLC*, No. 16-24818 (WTT) (Bankr. D. Utah Aug. 24, 2016); *In re Peabody Energy Corp.*, No. 16-42529 (BSS) (Bankr. E.D. Mo. May 18, 2016); *In re Arch Coal, Inc.*, No. 16-40120 (CER) (Bankr. E.D. Mo. Feb. 24, 2016); *In re In re Ryckman Creek Res., LLC*, No. 16-10292 (KJC) (Bankr. D. Del. Feb. 9, 2016); *In re Molycorp Inc.*, No. 15-11362 (CJS) (Bankr. D. Del. July 17, 2015); *In re Magnetation LLC*, No. 15-50307 (GFK) (Bankr. D. Minn. June 10, 2015); *In re Altegrity, Inc.*, No. 15-10226 (LSS) (Bankr. D. Del. March 16, 2015); *In re Energy Future Holdings Corp.*, No. 14-10979 (CJS) (Bankr. D. Del. Jan. 12, 2015); *In re Dendreon Corp.*, No. 14-12515 (LSS) (Bankr. D. Del. Dec. 9, 2014); *In re Ablest Inc.*, No. 14-10717 (KJC) (Bankr. D. Del. April 21, 2014); *In re Synagro Techs., Inc.*, No. 13-11041 (BLS) (Bankr. D. Del. June 5, 2013); *In re The Scooter Store Holdings, Inc.*, No. 13-10904 (PJW) (Bankr. D. Del. June 7, 2013); *In re CHL, Ltd.*, No. 12-12437 (KJC) (Bankr. D. Del. Sept. 24, 2012); *In re Pemco World Air Servs., Inc.*, No. 12-10799 (MFW) (Bankr. D. Del. April 3, 2012); *In re Neb. Book Co.*, No. 11-12005 (PJW) (Bankr. D. Del. July 21, 2011); *In re AbitibiBowater Inc.*, No. 09-11296 (KJC) (Bankr. D. Del. July 7, 2010); *In re Trico Marine Servs., Inc.*, No. 10-12653 (BLS) (Bankr. D. Del. Oct. 6, 2010); *In re U.S. Concrete, Inc.*, No. 10-11407 (PJW) (Bankr. D. Del. May 21, 2010); *In re Plumbing Holdings Corp.*, No. 09-14413 (CSS) (Bankr. D. Del. Jan. 26, 2010).

6.      The Debtors propose to designate me as their CRO, *nunc pro tunc* to the Petition Date.  I am a Senior Managing Director with FTI based in Denver, Colorado.  I have worked as a

3

turnaround consultant and financial advisor for over twelve years, including extensive experience in the energy, mining, manufacturing, telecom, technology, and retail industries. I have substantial knowledge and experience in senior management positions with, or as restructuring advisor to, distressed companies and in assisting distressed companies with stabilizing their financial condition, analyzing their operations, and developing an appropriate business plan to accomplish the necessary restructuring of their operations and finances. My employer has provided financial or restructuring advice to a number of companies or their creditors in the energy and mining sectors, including Peabody Energy Corporation and Arch Coal, Inc.—the two largest U.S. coal companies—American Gilsonite Company, CS Mining, LLC (FTI provided CRO), Consol Energy, Inc., Patriot Coal Corporation, Midway Gold Corporation (FTI provided CRO), Magnetation, Inc. (FTI provided CRO), Mineral Park, Inc. (FTI provided CRO), and Thompson Creek Metals Company, Inc. I have personally served as lead financial advisor or financial advisor to, among others, Arch Coal, Inc., American Gilsonite Company, and Consol Energy, Inc.

7.      On August 14, 2017, FTI and the Company entered into the Engagement Letter attached as **Exhibit A** to the Motion. The Engagement Letter sets forth the services that the CRO and FTI personnel will provide for the Debtors. In addition, the Engagement Letter provides for compensation of FTI on an hourly basis all as more fully set forth in the Engagement Letter.

8.      As a result of their history with the Debtors, FTI is intimately familiar with the Debtors' businesses, financial affairs, and capital structure. Throughout the course of FTI's engagement, I and the Engagement Personnel working with me have devoted substantial amounts of time and effort working with members of the Debtors' senior management and legal

advisors to, among other things, assist in the development of near-term projections and short-term cash management activities, review strategic alternatives, and coordinate the Debtors' efforts to prepare for and operate in chapter 11.  For these reasons, FTI is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these chapter 11 cases.

## Services to be Provided

9.      Subject to approval by the Court, the Debtors propose to retain FTI to provide the Debtors with a CRO and the additional FTI personnel as necessary on the terms and conditions set forth in the Engagement Letter, except as otherwise explicitly set forth herein or in any order granting the relief requested herein.  The Engagement Personnel will provide assistance to the Debtors in completing their restructuring through these chapter 11 cases, including cash forecasting, liquidity management, assistance in addressing business issues that arise during the pendency of these chapter 11 cases, the development of information for the Debtors and parties in interest, bankruptcy administration, preparation of monthly operating reports and motions, and testimony as may be required and other assistance intended to support the Debtors and their other retained professionals.  The Debtors will monitor the work of the Engagement Personnel and ensure that they do not provide duplicating services relative to other retained professionals.

10.      Subject to further order of the Court, the Engagement Personnel may provide the services described in the Engagement Letter as FTI and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of these chapter 11 cases, including but not limited to, the following (collectively the "Restructuring  Advisory Services"):

> (a)      assisting with the preparation of the statement of affairs, schedules and other regular reports required by the United States Bankruptcy Court for the Eastern District of Missouri (the "Court")  as well as providing assistance in such areas as testimony before the Court on matters that are within FTI's areas of expertise;

(b)     assisting with Monthly Operating Reports and other court and U.S. Trustee requested or required information;

(c)     assisting with the additional cataloging of executory contracts and unexpired leases and advising the Debtors regarding decisions on assumptions and rejections and cure amounts;

(d)     advising senior management in the negotiation and implementation of restructuring initiatives and evaluation of strategic alternatives;

(e)     assisting in communication and/or negotiation with outside constituents including stakeholders, vendors and suppliers and other lenders and their advisors;

(f)     managing the claims and claims reconciliation processes;

(g)     providing required cash budgeting and reporting under the agreements and the terms of the Cash Collateral motion;

(h)     providing assistance to management in connection with the Debtors' development of its rolling 13-week cash receipts and disbursements forecasting tool designed to provide on-time information related to the Debtors' liquidity;

(i)     assisting in obtaining and presenting information required by parties-in-interest in the Debtors' bankruptcy process including official committees appointed by the Court and the Court itself;

(j)     assisting the Debtors and outside counsel on the development of an approach to meet the Bankruptcy Rule 2015.3 requirements for reporting on the value, operations and profitability of those entities in which the Debtors' estate holds a substantial or controlling interest;

(k)     assisting the Debtors in other business and financial aspects of a Chapter 11 proceeding, including, but not limited to, development of a disclosure statement and chapter 11 plan;

(l)     assisting as requested in managing any litigation that may be brought against the Debtors in the Court;

(m)     providing assistance in such areas as testimony before the Court on matters that are within the scope of this engagement and within FTI's area of testimonial competencies; and

(n)     assisting with such other matters as may be requested that fall within FTI's expertise and that are mutually agreeable.

11.     Such Restructuring Advisory Services are necessary to the Debtors' restructuring efforts and in the ongoing operation and management of the Debtors' businesses while subject to chapter 11 of the Bankruptcy Code.  The Restructuring Advisory Services provided by FTI will complement, and not duplicate, the services to be rendered by any other professional retained in these chapter 11 cases.  The Engagement Personnel have and will continue to work closely with the other professionals retained by the Debtors to minimize and avoid duplication of services. In addition, on August 3, 2017, the Board of Directors (the "Board") of Armstrong Energy, Inc. authorized the Debtors to retain me as CRO.

## FTI's Disinterestedness

12.     In connection with its proposed retention by the Debtors in these chapter 11 cases, FTI undertook a lengthy review to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors.  Specifically, FTI obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases ("Potential Parties in Interest").  Such parties are listed on **Schedule 1** annexed hereto.  A search was performed for connections to the Potential Parties in Interest within the past five years, and results were disclosed as to FTI Holdings, LLP ("FTI Holdings"), FTI's parent company, and each of FTI Holdings' U.S. and non-U.S. subsidiary affiliates.

13.     FTI and its affiliates are advisors and crisis managers providing services and advice in many areas, including restructuring and distressed debt.  As part of its diverse practice, FTI appears in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and parties in interest in these chapter 11 cases.  Further, FTI has in the past, and may in the future, be represented by various attorneys and law firms, some of whom may be

7

involved in these chapter 11 cases. In addition, FTI has been in the past, and likely will be in the future, engaged in matters unrelated to the Debtors or these chapter 11 cases in which it works with or in opposition to other professionals involved in these chapter 11 cases. Moreover, FTI might have referred work to other professionals who are retained in these chapter 11 cases. Likewise, certain such professionals who are retained in these chapter 11 cases might have referred work to FTI.

14.     From time to time, FTI has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters wholly unrelated to these chapter 11 cases. As described herein, however, FTI has undertaken a detailed search to determine, and to disclose, whether it is providing or has provided services to any significant creditor, equity security holder, insider or other party-in-interest in such unrelated matters.

15.     Based on that review, FTI represents that, to the best of its knowledge, FTI knows of no fact or situation that would represent a conflict of interest for FTI with regard to the Debtors. Unless otherwise noted, references to FTI in the disclosures below collectively refer to FTI Consulting, Inc. and each of its subsidiary affiliates.

16.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these business relationships constitute interests adverse to the Debtor.

17.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of the FTI personnel (a) have any connection with the U.S. Trustee, or any employee in the Office of the U.S. Trustee; or (b) are related or connected to

8

any United States Bankruptcy Judge for the Eastern District of Missouri, except as otherwise set forth herein.

18.     To the best of my knowledge, none of the members of the engagement team, or FTI is a direct holder of any of the Debtors' securities.  It is possible that members of the engagement team or certain of FTI employees, senior managing directors, board members, equity holders, or an affiliate of any of the foregoing, may own interests in mutual funds or other investment vehicles (including various types of private funds) that own the Debtors' or other parties in interest's debt or equity securities or other financial instruments, including bank loans and other obligations.  Typically, the holders of such interests have no control over investment decisions related to such investment funds or financial instruments.  FTI's policy prohibits its employees from personally trading in the Debtors' securities.

19.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, FTI has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these chapter 11 cases. FTI will continue to provide professional services to entities that may be creditors or equity security holders of the Debtors or other parties in interest in these chapter 11 cases, provided that such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

20.     Certain of FTI's employees, senior managing directors, board members, equity holders, or an affiliate of any of the foregoing may have financial accounts or insurance relationships with a potential party in interest.

21.     Despite the efforts described above to identify and disclose the connections that FTI and its affiliates have with parties in interest in these chapter 11 cases, because the Debtors

form a large enterprise with numerous creditors and other relationships, FTI is unable to state with certainty that every client relationship or other connection has been identified and disclosed.

22.    In accordance with section 504 of the Bankruptcy Code and Bankruptcy Rule 2016, neither I nor FTI has entered into any agreements, express or implied, with any other party in interest, including the Debtors, any creditor, or any attorney for such party in interest in these chapter 11 cases, (a) for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) for payment of such compensation from the assets of the estates in excess of the compensation allowed by this Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) for payment of compensation in connection with these chapter 11 cases other than in accordance with the applicable provisions of the Bankruptcy Code.

23.    Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, none of FTI, I, nor any FTI personnel holds or represents any interest adverse to the Debtors or their estates, and FTI is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that FTI and its professionals and employees who will work on the engagement:

(a)    are not creditors, equity security holders, or insiders of the Debtors;

(b)    were not (except for in connection with this retention) a director, officer or employee of the Debtors within two years before the Petition Date; and

(c)    do not have an interest materially adverse to the interest of the Debtors' estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

24.    If FTI discovers additional information that requires disclosure, FTI will promptly file a supplemental disclosure with this Court disclosing, among other things, new material facts

and relationships between the Debtors, the Engagement Personnel, or other significant parties in interest. FTI reserves the right to supplement this Declaration in the event that FTI discovers any facts bearing on matters described in this Declaration regarding FTI's employment by the Debtors

## Terms of Retention

25.     As set forth in the Engagement Letter, the Debtors have agreed to, among other things: (a) compensate and reimburse FTI for expenses incurred and services provided by the Engagement Personnel; and (b) indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the Debtors' corporate bylaws and provide such persons insurance coverage under the Debtors' direct and officer liability insurance policy.

### *Professional Compensation and Expense Reimbursement*

26.     In summary, the Engagement Letter provides for the following compensation:

- **Standard Hourly Rates**: Fees for services rendered by the Engagement Personnel based on the following hourly rates, which are subject to periodic revision as FTI adjusts its rates generally:

  | | |
  |---|---|
  | Senior Managing Directors | $840 - $1,050 |
  | Directors/Senior Directors/Managing Directors | $630 - $835 |
  | Consultants/Senior Consultants | $335 - $605 |
  | Administrative/Paraprofessionals | $135 - $265 |

- **Reimbursement of Expenses**: In addition to compensation for professional services rendered by Engagement Personnel, FTI will seek reimbursement for reasonable and customary expenses incurred in connection with these chapter 11 cases, including, but not limited to travel, lodging, computer research, and messenger and telephone charges. In addition, FTI shall be reimbursed for the reasonable fees and expenses incurred in connection with the preparation and approval of this Motion. All fees and expenses due to FTI will be billed on a monthly basis, or more frequently as agreed to between FTI and the Debtors, as further set forth in the Engagement Letter, but in all events subject to the order approving this Motion.

*Indemnification Provisions*

27.     As a material part of the consideration for which FTI has agreed to provide the services described herein, and pursuant to the Engagement Letter, including the indemnification provisions attached thereto and incorporated by reference therein (the "Indemnification Provisions"), the Debtors have agreed to:  (a) indemnify the Engagement Personnel acting as officers to the same extent as the most favorable indemnification the Debtors extend to their officers or directors and to cover such Engagement Personnel under the Debtors' director and officer liability insurance policy; and (b) indemnify and hold harmless FTI and any of its subsidiaries and affiliates, officers, directors, principals, shareholders, agents, independent contractors and employees (collectively, the "Indemnified Parties") under certain circumstances.[4] The rights to indemnification shall survive the termination of these chapter 11 cases or any cases into which they may be converted.

28.     Accepting the Indemnification Provisions was a condition to FTI's engagement, the terms and provisions of which were, along with all other terms of the Engagement Letter, negotiated by the Debtors and FTI at arm's-length and in good faith.  FTI and the Debtors believe that the Indemnification Provisions are comparable to those indemnification provisions generally obtained by crisis management firms of similar stature to FTI and for comparable engagements, both in- and out-of-court.

---

[4]     The Indemnification Provisions generally provide that the Debtors will indemnify and hold harmless the Indemnified Parties from and against any claims, liabilities, damages, obligations, costs and expenses (including reasonable attorneys' fees and expenses and costs of investigation), arising out of or relating to the Debtors' retention of FTI under the Engagement Letter, the execution and delivery of the Engagement Letter, and the provision of services or other matters relating to or arising from the Engagement Letter.  Notwithstanding the terms of the Indemnification Provisions, the Debtors and FTI have agreed, subject to the Court's approval of this motion, that in no event shall an Indemnified Party be indemnified or receive contribution or other payment under the Indemnification Provisions if the Debtors, their estates, or the statutory committee of unsecured creditors appointed in these chapter 11 cases assert a claim against an Indemnified Party and the Court determines by final order that such claim arose out of the gross negligence or willful misconduct on the part of that or any other Indemnified Party.

**Fees and Reporting**

29.    If the Court approves the relief requested herein, FTI will be retained to provide the Debtors with the Engagement Personnel and I will be designated as the CRO pursuant to section 363 of the Bankruptcy Code.  Because FTI is not being employed as a professional under section 327 of the Code, FTI will not be required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  Instead, FTI will file with the Court, and provide notice to the U.S. Trustee, the ad hoc group of Secured Noteholders and all official committees (together with the U.S. Trustee, the "Notice Parties"), reports of compensation earned and expenses incurred on at least a quarterly basis.  Such compensation and expenses shall be subject to Court review in the event that an objection is filed.  In addition FTI will file with the Court and provide the Notice Parties a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report would include the names and tasks filled by all Engagement Personnel involved in this matter.  The Staffing Report (and FTI's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

30.    As set forth in the Engagement Letter, FTI received $100,000 as a retainer from the Debtors (the "Prior Retainer").  Thereafter, the retainer has been replenished on a monthly basis.  In the 90 days prior to the Petition Date, FTI received additional retainers and payments totaling approximately $923,961 in the aggregate for services performed for the Debtors (together with the Prior Retainer, the "Retainers").  FTI has applied the Retainers to amounts due for services rendered and expenses incurred prior to the Petition Date; however, the Retainers have not been fully exhausted.

31.    The unapplied Retainers, which are estimated to total approximately $131,294, will not be segregated by FTI in a separate account, and will be held until the end of these chapter 11 cases and applied to FTI's finally approved fees in these proceedings, unless the

13

Debtors agree to an alternative arrangement.  Certain expenses and fees may have been incurred by FTI prior to the Petition Date, but not yet applied to the Retainers.  Such amounts, if any, are estimated to be less than the aggregate balance of the Retainers as of the Petition Date. Moreover, FTI is not aware of any asserted or threatened disputes against FTI or the Engagement Personnel on account of their services provided to the Debtors before the Petition Date.

32.    Given the numerous issues which the Engagement Personnel may be required to address in the performance of their services, FTI's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services in an in-court and out-of-court context, the fee arrangements set forth in the Motion and in the Engagement Letter are reasonable.

*[Remainder of page intentionally left blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 1, 2017
St. Louis, Missouri

/s/ Alan Boyko
Alan Boyko
Senior Managing Director
FTI Consulting, Inc.

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

*Debtor*
Armstrong Energy, Inc.

*Filing Subsidiaries*
Armstrong Energy Holdings, Inc.
Armstrong Coal Sales, LLC
Thoroughfare Mining, LLC
Western Diamond LLC
Western Land Company, LLC
Armstrong Coal Company, Inc.
Armstrong Air, LLC
Armstrong Logistics Services, LLC

*Other Subsidiaries and Affiliates (non-Debtors)*
Elk Creek GP, LLC
Thoroughbred Resources, LP
Armstrong Fabricators, Inc.
Elk Creek Operating GP, LLC
Terminal Holdings, LLC
Ram Terminals, LLC
MG Midstreaming, LLC
Elk Creek Operating, LP
Ceralvo Holdings, LLC
Armstrong Technology Services, LLC
Western Mineral Development, LLC

*Current D&Os*
J. Hord Armstrong, III
Martin D Wilson
Jeffrey F Winnick
Richard L Craig
Eric R Waller
James C Crain
Greg A Walker
David L Harris
W. Howard Keenan
Bryan R Lawrence
Joseph M Stopper

*Former D&Os*
Louis B Susman
Adam D Anderson
Kenneth E Allen
J. Richard Gist
Jacquelyn A Jones
Anson M Beard, Jr
Richard F Ford
Bryan H Lawrence
Scott A Boylen
David R Cobb
Brian G Landry

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

*Debtor Counsel*
Kirkland & Ellis LLP

*Claims Agent*
Donlin Recano & Company Inc.

*Financial Advisor*
MAEVA Group, LLC

*Investment Banker / Financial Advisors*
Houlihan Lokey Capital, Inc.

*Noteholders' Counsel*
Paul, Weiss, Rifkind, Wharton & Garrison LLP

*General Corporate/SEC*
Armstrong Teasdale LLP

*MSHA - Individual Representation*
Bingham Greenbaum Doll LLP
Cox & Mazzoli PLLC
Dathorn & Butler, LLC
Furman & Nilsen, PLLC
Nash Marshall, PLLC
Stites & Harbison, PLLC

*PNC Representation - Revolver*
Buchanan Ingersoll & Rooney PC

*Litigation (Delta Coals v. Armstrong)*
Butler Snow LLP

*White Collar Criminal Defense*
Dressman Benzinger LaVelle PSC

*Wells Fargo Representation - Senior Notes*
Drinker Biddle & Reath LLP

*Real Property / Lewis v. Ceralvo et. al.*
Gordon Law Offices, P.S.C.

*Insurance Counsel*
Hunton & Williams LLP

*MSHA Counsel*
Jackson Kelly PLLC

*General Corporate/Real Property Counsel*
Kaplan & Partners LLP

*Labor & Employment Counsel*
Lowenbaum Law

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

*Historical Armstrong Governance/Workers Comp*
Miller & Wells, PLLC

*MSHA Counsel*
Rajkovich,  Williams, Kilpatrick & True, PLLC

*MSHA/Employment/Environmental Counsel*
Steptoe & Johnson PLLC

*Real Property (limited) - Counsel*
Stoll Keenon Ogden PLLC

*Accounting Firm*
Ernst & Young LLP
BDO
Protiviti

*401k Audit*
Grant Thornton

*401k Plan Administrator*
Edward Jones

*401k Record Keeper*
Massachusetts Mutual Life Insurance Company

*Payroll Processing*
ADP, LLC

*Medical Provider*
Anthem BlueCross, BlueShield

*Investigator - Parkway Dust*
Advanced Investigative Solutions, Inc.
Clay Mason & Associates

*Insurance Brokers*
Assured Partners of Missouri, LLC
McGriff, Seibels & Williams, Inc.
Lockton Companies

*Hosting and Disaster Recovey (SAP)*
OnX Managed Services

*MPLS Circuits (Network)*
AT&T  Business  Services

*Network Firewalls (Network Security)*
AT&T Global Network Services

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

*Network Monitoring and Support*
Netelligent Corporation

*SAP Software/Hardware Support*
Illumiti Corporation

*Engineering Services*
Associated Engineers

*Significant Vendors*
Bank Direct Capital Finance
Moody's Investor Service
Protiviti
Houlihan Lokey Capital, Inc.
Madisonville Tire & Retreading
LanceCo., Inc.
Conn-Weld Industries Inc.
FLSmidth Krebs Inc.
SGS North America Inc.
Associated Engineers, Inc.
Brandeis Machinery & Supply Company
Carroll Engineering Company
Coleman Brothers Inc.
Joy Global Underground Mining, LLC
Kenergy
Kentucky Utilities
Rudd Equipment Company
United Central Industrial Supply Co.
Whayne Supply Company
Jennmar Corporation
Mine Equipment & Mill Supply
Nalco Company
Hibbs Electromechanical Inc.
Smith-Manus
Ruby Concrete Company
Woodruff Supply Company Inc.
Heritaage Petroleum, LLC
Quality Magnetite, LLC
Brian's Battery, LLC
Star Mine Services, Inc.
Blair Tire Sales
Jennchem, LLC
H&G Limestone Products
Veyance Industrial Services, Inc.
Ray Jones Trucking, Inc.
Overland Conveying Systems
Wabash Marine, Inc.
Whitco Enterprises, Inc.
GMS Mine Repair - Midwest
Joy Global Mining, LLC - Consignment
Pioneer Conveyor, LLC
S&L Industries, LLC

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

*Top 50 Creditors*

Joy Global Underground Mining, LLC
Thoroughbred Resources, LP
Kenergy
Whayne Supply Company
UGM ADDCAR SYSTEMS, LLC
U.S. Dept of Labor/MSHA
Mine Equipment & Mill Supply
Jennmar Corporation
Kentucky Dept of Revenue
Ohio County Sheriff
United Central Industrial Supply Co
KY Worker's Comp Funding Commission
Thompson & Knight LLP
Ray Jones Trucking, Inc
S & L Industries, LLC
Kentucky Utilities
Overland Conveying Systems
Muhlenberg County Sheriff
WC Hydraulics, LLC
Internal Revenue Service
Rogers Group, Inc.
American Land Holdings of Kentucky, LLC
Heritage Petroleum. LLC
Blair Tire Sales
Conn-Weld Industries  Inc
Wabash Marine, Inc.
Ruby Concrete Company
The Brennan Group
Kentucky State Treasurer
Brian's Battery, LLC
Associated Engineers, Inc.
Office of Surface Mining
Royal Brass & Hose
Western Kentucky Royalty Trust
Madisonville Tire & Retreading
Brandeis Machinery & Supply Company
Smith-Manus
Star Mine Services, Inc
Woodruff Supply Company  Inc
Solenis LLC
Whitco Enterprises, Inc.
Douglas Sumner
First-Line Fire Extinguisher Co
Rogers Family
SGS North America  Inc
Wallace Electrical Systems, LLC
UniFirst Corporation
West Kentucky Pipe & Valve, Inc.
Brake Supply Co., Inc.
Special Mine Services

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

*Shareholders*
Yorktown Energy Partners VII, L.P.
Yorktown Energy Partners VIII, L.P.
Yorktown Energy Partners IX, L.P.

*Insurers*
Travelers Property & Casualty Co. of America
Travelers Property & Casualty Co. of America
American Guarantee & Liability Insurance Co.
American Guarantee & Liability Insurance Co.
American Zurich Insurance Company
American Guarantee & Liability Insurance Co.
National Union Fire Insurance Company of Pittsburgh, PA
QBE Insurance Corporation
QBE Insurance Corporation
Old Republic Insurance Company
Starr Indemnity & Liability Company

*Surety Bonds*
Lexcon Insurance Company

*Parties to Significant Litigation*
Terri Qualls
Barry Baxter
Pamela Wilson
Andrea Kirk
Delta Coals
George W. Lewis
Shannon Lewis
Lamont Drake
Ruth Jean Lewis
Barbara Robison
Robert Robison
Roy Daniel Bratcher
Aaron D.  Bratcher
Jenny Bratcher
Charles Edward Carter
Carol B. Carter
Jenscinna A. Carter
Sharon K. Carter Smith
Mark Smith
William D.  Carter
Debra H. Carter
Leslie R. Coomer
Stephen L. Coomer
Mine Safety & Health Administration
Tate Rich
Earl Ray Ipox
Thomas Gibson
Troy Peveler
Richard Brothers

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Ronnie Dinsmore
Donnie Morgan
Terry Bivins
Barry Ball
William Ray Martin
David A. Smiley
Mark Mason
Charles Duff
Rickey Baize
William Matheny
Bobby Sexton
Richard Vncent
James Franklin
Marvin Mitchell
Brandon Brown
Barry Ball
Donald King
Eric Virgin
Danny Pressley
Brandon Shemwell
Dwight Arnold
Brian Piper
Tommy Anderson
Tony Hoskins
Joseph Grubb
John Robinson
Charles Bush
Michael Wilson
Erik Demond
Lonnie Couch
Jeremy Bearden
David M. Fooks
Neely E. Loney
Reuben Wayne Shemwell
Daniel Riley

*Landlords*
Pierre Laclede Office Investors, LLC

*Power & Electric*
Kentucky Utilities Company
Kenergy Corporation

*Water*
Union County Water District
Muhlenberg County Water District
City of Centertown

*Communications*
Employee Expense Reports
AT&T IP Flexible Reach
AT&T

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

AT&T Mobility
Charter Communications

*Waste Water*
Coleman Brothers, Inc.

*Elec., Water, Sewage, Trash*
Madisonville Municipal Utilities

*Natural Gas*
Atmos Energy

*Taxing Authorities*
Department of Revenue - Kentucky
Department of Revenue - Missouri
Department of Revenue - Delaware
United States Office of Surface Mining
Kentucky Office of the Reclamation Guaranty Fund
United States Internal Revenue Service
Kentucky Workers' Compensation Funding Commission

*Indenture Trustee*
Wells Fargo Bank, National Association

*Bondholders*
Blue Mountain
Caspian
Guardian Capital Group
Marathon
Goldentree
Teachers
Panning
New Generation
Wamco
Telemetry
Phoenix
Cedarview
First Western
Nuveen
Anson (previous BOD)
TIAA

*Customer List*
Armstrong Resources Management Corp.
Duke Energy Carolinas, LLC
Duke Energy Kentucky, Inc.
Kentucky Utilities Company
Louisville Gas & Electric Company
Ownesboro Municipal Utilities
Tampa Electric Company
Tennessee Valley Authority

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

*Counterparties to Significant Leases*
Mueller Prost, LC (Sublessor)
KBSII Pierre Laclede Center, LLC
Norton Lilly International, Inc. (Sublessor)

*Counterparties to Significant Executory Contracts*
Bank of America Leasing & Capital, LLC
Aero Charter, Inc.
Brandeis Machinery & Supply Company
General Electric Capital Corporation
Komatsu Financial Limited Partnership
Caterpillar Financial Services Corporation
Deutsche Leasing USA, Inc.
Atlas Copco Customer Finance USA, LLC
UGM ADDCAR Systems, LLC
Macquarie Corporate and Asset Funding Inc.
Joy Global Underground Mining, LLC
Caterpillar Financial Services Corporation

*Regulatory Agencies*
Commonwealth of Kentucky Energy and Environment Cabinet
United States Office of Surface Mining
Kentucky Office of the Reclamation Guaranty Fund

*Royalty Payments - Payee*
Duncan Family Mineral LLC
Cyprus Creek Land Company
J.L. Rogers Family, LLC
James L. Rogers
Mary M. Rogers
Sue Rogers Johnson
Talmar of FL, LLC
Talmar, LLC
Anne F. Rogers Family, LLC
Central States Coal Reserves of Kentucky
Heritage Coal Company, LLC
Cyprus Creek Land Resources, LLC
Joe Michael Barnard
Richard L. Hocker
John W. Hocker
Janet Hocker
Ruth Ann Hocker Szymanski
Conrad Syzmanski
Lyman P. Barnes
Joyce M. Barnes
Jerry Carson Barnes Bishop
Zexia Barnes Bishop
Bruce Moore
Gladys Moore
Hazel Birchwell
John T. Casebier

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

David L. Pearce
Ann Pearce
Elaine Armstrong
Glenn Armstrong
John B. Casebier
Nazanin Casebier
Judith McCrocklin
Marjorie Pearce Wilhite
James Louis Wilhite
Nola Casebier
Thomas McCrocklin Jr.
Virginia L. Staude
Walter U. Pearce
Laurie Pearce
William W. Casebier Jr.
Charlotte Ann Casebier
Noel Douglas Cavendar
Rhonda Cavendar
Ann Cheryl Lacefield
Gary Dale Lacefield
Betty Craig
David C. Craig
Kateria C. Barnes
Glenn W. Danks
Ronald A. Danks
Clyde Richard Danks
Kelly Richard Danks
Phillip Andrew Danks
Michael Edgar Danks
Melissa Ann Danks Sanfberg
Allen Gray Limited Partnership II
Allen Gray Limited Partnership III
Bertha S. Grider
Dennie Lee Grider
Joe Brent Grider Jr.
Jessica Gwenlyn
Amanda Westerfield
Joe Brent Girder
Kaitlin M. Grinder
John M. Grider
Dennie Grider
Shelia Grider
William A. Holladay
Angela Danielle Jones
David C. Jones
Felicia Leigh-Ann Hughes
Pamela Grabrielle Fowler
James Jones
Lola Jones
Mark Little
Janis Little
Bradford Luppino

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Miranda Luppino
Geneva Fulkerson
Lonnie Fulkerson
Jim V. Maddox
Carolyn Maddox
Sherry Ann Taylor
Feb I. Taylor
William Todd Paul
Micheline L. Queen
Joseph L. Ralph
Rose A Ralph
Daisy Curtis Scroggins
Gene Rochefort
Janette Snodgrass
Sue Miller
Bill Miller
Ella Louis Addington
Carl Addington
Patricia Simpson
Eddie Simpson
Mary Snodgrass
Tommy Snodgrass
Betty Snodgrass
Larry Snodgrass
Charles Snodgrass
Rita Fledbusch
Ruby Daugherty
Stephen N. Daugherty
Timothy Stenberg
Mary Stenberg
George W. Lewis
Shannon Lewis
Ryan W. Hartke
Rustin D. Hartke
Rhett A. Hartkee
Ronica D. Hageman
Allyson S. Abel
Dennis Woods
Brenda Woods
Damien Brown
Deborah Brown
Young Manufacturing Co. Inc.
Warren C. Roe
Josephine Roe
Joseph Michael Roe
Sara Kelly Roe
Alcoa Fuels, Inc.
Dorothy Russell
Emogene S.  Martin
James Vernon Cole
Heike Cole
Morris D. Kelley Jr

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Mandy B. Kelley
Diamond Mineral Group, Inc.
Midwest Coal Reserves of Kentucky, LLC
Mary Nell White
Richard White
Janet White
Robert White
Marie White
Walter White
Andrea White
John White
Brook White
Katherine Felice Photopulos
Todd Photopulos
William W. Lista
Lynn M. Lista
Darron Kelley
Martha J. Kelley
Patty Peacock
Gary Dale Peacock
Kathy Proctor
Charles W. Proctor
Cora L. Goodman
Richard I. Carrier
Margret Joyce Beard
Donald L. Yarber
Shirley J. Yarber
Jennie L. Ellis
Glendle G. Ellis
Dorothy F. Willett
Norman Ray Potts
Lillian Potts
Peggy Neeley
Juimmy Neeley
Stan W. Johnson
Barbara A. Johnson
James M. Brown
Nell Gregory Farthing
Bordley Church of Christ
Thomas Allen Willett
Karren Sue King
Connie Elder
Kevin Elder
Billy McVay
Brenda Lee McVay
James McVay
Brenda Gail McVay
Anna Speaks
Albert Speaks
Dianna Terrell
Lonnie Terrell
William Leon Cole IV

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Carol Ann Cole
Lance W. Brantley
Heather Brantley
Ronald C. Brown
Dennis Ray Farris
Pamela Gabrielle Richardson
Western Kentucky Royalty Trust
David Cobb
Kenneth E. Allen
Melinda T. Carter
Jenna Carter
Megan Guard Carter
Carol B. Carter
James Gregory
Peggy Graham
Harold Gregory
Marjorie Thompson
Carolyn Gentry Gish
David Gregory
Brenda Collins
Terry Gregory

***Landowners***
Aaron D.  Bratcher
Aaron  Francis
Allen Gray Ltd. Ptr. II
Allen Gray Ltd. Ptr. III
Allyson S. Abel
Amanda Westerfield
American Land Holdings of KY, LLC
Angela D. Jones
David C. Jones
Ann C. Lacefield
Gary D. Lacefield
Anna L. Speaks
Albert Speaks
Anna L. Dortch
Anna Laura Dortch/Farm Credit Service
ANNE F. ROGERS FAMILY, LLC
Barbara Robison
Bertha S. Grider
Betty R. Craig Trust
Bevil Bros. Funeral Home
Bill McVay
Brenda Lee McVay
BORDLEY CHURCH OF CHRIST
Brad Lacefield
Bradford Luppino
Miranda Luppino
Brian Keith Casebier
Brian Lacefield
C.E. Martin Heirs  LLC

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Carol B. Carter
Charles Edward Carter
Charles W.  Proctor
Christopher A. Coomer
Clyde Richard Danks
COAL AGE, INC.
Connie Elder
Kevin Elder
Cora Lee Goodman
Daisy Scroggins
Damien Lee Brown
Daniel L. Lacefield
Darron H. Kelly
Miranda J. Kelly
DAVID CASEBIER
David Cobb
David Pearce
Ann Pearce
Delta Coals, LLC
Dennie L. Grider
Dennis Howard Woods
Dennis Ray  Farris
Dennis Woods
Dianna Terrell
Lonnie Terrell
Don Goad
Don King
Donald Yarber
Shirley J. Yarber
Dorothy F. Willett
DOROTHY RUSSELL
Douglas Sumner
Duncan Family Mineral, LLC
Edward Zackery
Elaine Armstrong
Glenn Armstrong
Emogene S. Martin
Felicia Leigh-Ann Hughes
Geneva G. Fulkerson
Lonnie R. Fulkerson
Geneva G. Fulkerson
George W. Lewis Jr
Gerald Powers
Linda Powers
Gerald Wayne Powers Wayne
Glendale James
Wanda James
Glenn W. Danks
Hazel Birchwell
J.L. ROGERS FAMILY, LLC
JAMES M. Brown
James McVay

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Gail McVay
James L.  Rogers III
Mary M. Rogers
Janis Little
Jenna Carter Vardell
Jennie L. Ellis
Jenny Bratcher Trust
Jenscinna A. Carter
Jerry Bishop
Zexia Bishop
Jerry C. Bishop
Zexia Barnes Bishop
Jessica Gwenlyn
Jim V. Maddox
Carolyn R. Maddox
Jim V. Maddox
Joe Brent Grider Sr
Joe Michael Barnard
Kristina Barnard
Joel Igleheart
John Brown Jr.
Patricia Brown
John A. Brown
John B. Casebier
John Ryan White
Brooke White
John W. Hocker
Janet Hocker
Joseph Roe
Sara Roe
Joseph L. Ralph
Rose A. Ralph
Josephine Roe
Judith McCrocklin
Karren Sue King
Katherine Photopulos
Todd Photopulos
Kathy Proctor
Kelly Richard Danks
Kenneth E. Allen
Lance W. Brantley
Heather Brantley
Larry Edmonson
Lillian Potts
Lola Jones
James Vernon Cole
Heike Cole
Lyman P.  Barnes
Joyce M.  Barnes
Margaret Joyce Beard
Mark Little
Mark Livers

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Martha Rogers Haas
Mary Nell White
Megan Guard Carter
Melinda T. Carter
Melissa Ann Danks Sanfberg
Michael Edgar Danks
Micheline L. Queen
Minda G, Pearson
Morris Kelley
Nancy Prenzno
Nell Gregory Farthing
Noel D. Cavender
Rhonda D. Cavender
Nola Casebier
Nora Stewart
Norman Ray Potts
Roma H. Potts
Patty Peacock
Gary Peacock
Peggy Potts
Jimmy C. Neele
Phillip Andrew Danks
Rhett A. Hartke
Richard I. Carrier
Richard W. White
Janet White
Robert S. White
Marie White
Ronald A. Danks
Ronica D. Hageman
Roy Daniel Bratcher
Rustin D. Hartke
Ruth Szymanski
Conrad Szymanski
Ruth Jean Lewis
Ryan W. Hartke
Samuel A. Francis
Shannon L. Lewis
Sharon Grider
Sharon K. Carter
Sharon K. Carter-Smith
Feb I. Taylor
Sherry Ann Maddox Taylor
Stephen L. Coomer
Sue H. Bartlett
Sue R. Johnson
Sue Rogers Johnson
TG Jr Rogers
Jean Rogers
Talmage G. Rogers Jr
Jean M. Rogers
Talmar, LLC

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

The Estate of Ruth Lewis
THOMAS Allen Willett
Thomas McCrocklin, Jr
Timothy L. Stenberg
Mary E. Stenberg
Timothy L. Stenberg
Virginia Staude
Walter White
Andrea White
Walter U. Pearce
Laurie Pearce
Western Kentucky Royalty Trust
William D.  Carter
William Holladay
William W. Lista
Lynn M. Lista
William W. Casebier Jr.
Charlotte Ann Casebier

***Additional Vendors***
Denise Stringer
Charles Bush
Malcolm Steven  Russell
Keith Whitehouse
Chesley Wilson
Atlas Copco Customer Finance USA
Jeff Hearld
Eddie Barber
Danny F. Clayton
Jeffrey Lovan
Gary Compton
Jim Wiles
Gary PHILLIPS
Freddie K. Wells
Jan Douglas Bundy
Larry G. Wilson
Joe Brent Grider, Jr.
Jessica Gwenlyn
Felicia Leigh-Ann Hughes
Joe Brent Grider, Sr
Lola Jones
Dennis Ray Farris
Joseph L. Ralph
Rosa A. Ralph
Joe Michael Barnard
Kristina Barnard
John W. Hocker
Janet Hocker
Richard L. Hocker
Ruth Szymanski
Conrad Szymanski
Pamela Gabrielle Richardson

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Angela D. Jones
David C. Jones
Allen Gray Ltd. Ptr. III
Timothy L. Stenberg
Terri G.  Bundy
Dennie L. Grider
St. Louis Parking Company
Hampton Inn & Suites - Madisonville
Martin D. Wilson
J. Hord Armstrong, III
Kentucky Dept of Revenue
First Choice Courier
Skyline CreditRide, Inc.
AT&T
FedEx
AssuredPartners of Missouri, LLC
CT Corp.
Weir International, Inc.
Stoll Keenon Ogden PLLC
Miller & Wells, PLLC
Armstrong Teasdale, LLP
City of Clayton
AERO Charter, Inc.
Wells Fargo Vendor Financial
American Express
Charter Communications
Iron Mountain
Julie Hezel
CCH
KBSII Pierre Laclede Center, LLC
Captiva Marketing
Stan Beltramea
James Bennett
Kentucky State Treasurer
Bank Direct Capital Finance
SAP America, Inc.
Sue Rogers Johnson Living Trust
James L.  Rogers III
Mary M. Rogers
Western Kentucky Royalty Trust
David Cobb
Kenneth E. Allen
Barbara Robinson
Roy Daniel Bratcher
Jenny Bratcher Trust
Sharon K. Carter-Smith
William D. Carter
Aaron D. Bratcher
Christopher A. Coomer
Stephen L. Coomer
American Land Holdings of KY, LLC
Melinda T. Carter

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Jenna Carter Vardell
Megan Guard Carter
STM Associates
The Lowenbaum Partnership, LLC
Ernst & Young
BMC Group VDR LLC
Bess Councill
Greg A. Walker
American Coal Council
Larry Edmonson
Douglas Sumner
Adam Anderson
Meyer Printing
Staples Advantage
PR Newswire Association, LLC
Talmar, LLC
Jeffery Winnick
Banc of America Leasing
Shannon L. Lewis
George W. Lewis JR.
Wells Fargo Equipment Finance
Anson Beard
James C. Crain
Richard F. Ford
Saint Louis Coal Club
Richard L. Craig
Ricoh USA, INC
Caterpillar Financial Services
Josephine Roe
Joseph M. Roe
Sara K. Roe
DELAWARE SECRETARY OF STATE
Deutsche Leasing USA, Inc.
Lexington Coal Exchange
Mercer
Moody's Investors Service
Standard & Poor's
Wells Fargo Bank
Drinker Biddle & Reath LLP
Amanda Westerfield
Pitney Bowes Global Financial Servi
Brown's Ramsey Creek Farm
PROTIVITI
PR NEWSWIRE/MULTIVU
Clayton Plaza Hotel
ADP, INC.
Cintas Corporation
PURCHASE POWER
Komatsu Financial Limited
Mass Mutual Financial Group
Diamond Mineral Group, LLC
Ryan W. Hartke

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Rustin D. Hartke
Rhett A. Hartke
Ronica D. Hageman
Allyson S. Abel
J.L. ROGERS FAMILY, LLC
ANNE F. ROGERS FAMILY, LLC
Carol B. Carter
Doyle Trading Consultants, LLC
Rajkovich, Williams, Kilpatrick &
Delta Dental of Kentucky, Inc.
Anthem
DUFF & PHELPS, LLC
Tony Oppegard
Appalachian Citizens Law Center
Illumiti Corp
Darrel E. Briles
OnX Managed Services, Inc.
Patty Ream
OB Moore
New York Coal Trade Association
Kenneth Hall
Nash Marshall, PLLC
Gordon Law Offices, P.S.C.
Joanna Haselman
Netelligent Corporation
Donald G. King
David J. Purdy
Justin Neal Greenwell
Edward Zackery
Richard Vincent
William D. Matheny
Stephen Kane
Kaplan & Partners LLP
BDO
Eric Waller
Billy Jernigan
Buddy Johnston
Terry Bivins
William Peyton
Charles E. Daugherty
Donald L. Carroll
Terry Rogers
Jaycee Durham
Steptoe & Johnson, PLLC
James R. Tichenor
Daugherty, Fowler, Peregrin, Haught
Bobby J. Phelps
Jawrence E. Embry
Ron Sharp
Curtis Richey
Stites & Harbison PLLC
Richard Patterson

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Marilyn Rickard
Kirkland & Ellis LLP
MAEVA Group, LLC
Dean Dorton Allen Ford, PLLC
Davis McKinney
Louis B. Susman
Paul, Weiss, Rifkind, Wharton
Wandeta F. Durall
Frank H. Neely, Jr.
James Mercer
Donald R. White
Jerry Southard
Dressman Benzinger Lavelle PSC
Bingham Greenebaum Doll LLP
William W. Ann Jr
Charlotte Ann
Walter U. Pearce
Laurie Pearce
Thomas McCrocklin, Jr.
Marjorie Pearce Wilhite
Nola Casebier
Judith McCrocklin
John B. Casebier
Elaine Armstrong
Glenn Armstrong
David L. Pearce
Ann Pearce
Virginia Staude
Dathorne & Butler LLC
Furman & Nilsen PLLC
Houlihan Lokey Capital, Inc.
Gordon L. Thompson
Cox & Mazzoli, PLLC
Jackson Kelly PLLC
Foundation Fighting Blindness
Sansone Group
David Green River Safety Council
Butler Snow LLP
Tim Bay
Hunton & Williams LLP
Thoroughbred Resources, LP
Armstrong Resource Management Corp.
David L. Harris, Jr.
Steven Campbell
GE-Fairchild LLC
Associated Pallet, Inc.
Karen's Cleaning Services
Ray Jones Trucking, Inc
Muhlenberg Co. Water District
M & B Auto Parts
Bluegrass Mine Tool, Inc
Fluid Power Services  Inc

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Furniture Discount Warehouse
GM Telcom  Inc
Madisonville Supply, Inc.
Madisonville Tire & Retreading
Cuda Tools, Inc
LanceCo., Inc.
Modern Welding
Midwest Battery and Supply Inc.
Coles Office Outfitters Inc.
Haulers Supply Inc.
Downey Professional Construction
Overland Conveying Systems
JEM Sales & Service, Inc.
R.F. Roberts Construction Co., Inc.
Blue Ribbon, Inc.
Blue Ribbon Courier, Inc
Universal Protection Service, LP
Conn-Weld Industries  Inc
Logan Corporation
FLSmidth Krebs Inc.
First-Line Fire Extinguisher Co
SGS North America  Inc
Preiser Scientific, Inc
McMaster-Carr
Drives & Controls Services, Inc
EVAPAR
Shane Clark
Richard Lowther
D. David Lee
John Bruce
ABL Services, Inc
Pollard & Sons Excavating, LLC
AT&T GLOBAL NETWORK SERVICES, LLC
Pioneer Supply
Ronnie Pyle
Tony Melendez
Mickey Fitzhugh
KCTCS Foundation, Inc
Premier Scales & Systems
Kleinschmidt, Inc
AgriGro Farm Center, Inc.
Airgas USA, LLC
Airgas Mid America
American Printing Company
Anchor Hydraulics
Associated Engineers, Inc.
Associated Railroad Contactors, Inc
Auxier Welding Inc.
Beaver Dam Volunteer Fire Departmen
Irwin Mine and Tunneling Supply
Beaver Dam Building Supply
Bishops Grocery

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Brandeis Machinery & Supply Company
Carlson Software, Inc
Carroll Engineering Co.
Chase Pump & Equipment
Propane 1 One, Inc. of KY
City of Centertown
Coleman Brothers  Inc
Country Cupboard
DeShazo Crane Company
EIC Technologies  Inc
Elpers Truck Equipment
Eriez Manufacturing Co.
First United Bank
Flanders Electric Motor Services
FLSmidth Salt Lake City, Inc.
General Mine Contracting  Inc
Hartford Building & Supply
Hayes Instrument Co  Inc
Home Oil & Gas Co
Hopkins Co Heating Air & Electrical
Hopkins County Clerk
JMS Russell Metal Corporation
Joy Global Underground Mining, LLC
Kanawha Manufacturing Company
Kanawha Scales & Systems  Inc
Kenergy
Kentucky Utilities
Leader-News
Freddie Locke
Madisonville Municipal Utilities
Madisonville Garage Door, Inc.
Magnum Drilling Services  Inc
McLanahan Corporation
The Messenger
Motion Industries
U.S. Dept of Labor/MSHA
Ohio County Clerk
Ohio County Farm & Garden Center
Ohio County Times News
Onyett Fabricators  Inc
Paducah Blueprint & Supply Co
Rexel, Inc
Royal Brass & Hose
Rudd Equipment Company
Sabia, Inc
Schalco Construction & Garage Doors
Special Mine Services
T.H.E. Engineers  Inc.
Tri-State Bearing Co., Inc.
Twin Supply, Inc.
Ultron, Inc.
United Central Industrial Supply Co

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

UPS
Viewpoint Construction Software
Wal-Mart Business
Whayne Supply Company
Wheatley Scale Service  Inc
Mitchell White
Butler's True Value
The Vernon Corporation
Cintas
Cincinnati Mine Machinery Co.
Consolidated Electrical Distributor
CSE Corporation
D-A Lubricant Company
EBN
Fairmont Supply Co.
Fuchs Lubricants Co.
Hopcroft Electric, Inc
US Treasury720
Fenner Dunlop
GMS Mine Repair - Midwest
Jennmar Corporation
West Kentucky Steel
Martin Engineering
O'Neal Steel, Inc.
Varel International, Inc.
Trivaco
A.L. LEE CORPORATION
Muhlenberg Co Court Clerk
Joe Barnes
Line Power Mfg. Corp.
Wescott Steel Inc.
Belt Tech Industrial, Inc
Strata Safety Products, LLC
Paducah and Louisville Railway
Coy Tallman
Western Kentucky Mining Institute
Office of Surface Mining
Polydeck Screen Corporation
Applied Industrial Technologies
Green River Safety Council
Intermountain Electronics, Inc.
Brenntag Midsouth, Inc.
Janice Hill
Dell Marketing, LLP
Barry Fox
Hilti, Inc.
Advance Feeding Systems Inc.
Madisonville Hopkins Co Chamber of
Miller Building Supply, Inc
VC's Pick-up and Delivery
Advanced Solutions
Paul's Repair Shop, Inc.

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Shred-It USA
B.F. Evans Ford
CDW Direct LLC
Justin Crowley
Madisonville Community College
Muhlenberg Co Sheriff
Time Warner Cable
Mine Equipment & Mill Supply
Nalco Company
Pillar Innovations, LLC.
Wabash Marine, Inc.
Thermo Environmental Inst., LLC
Richard Hicks
Construction Machinery Co. LLC
Grainger Industrial Supply Co, Inc
All Source Industrial Supply, Inc
Wynn-Jones Mining Tools, LLC
Ohio County Sheriff
Kennametal Inc Mining & Constructio
Joe Leasure & Sons, Inc.
Richwood Industries Inc.
Ohio County Motors, LLC
Hillyard, Inc.
Star Rebuilders, LLC
Hibbs Electromechanical Inc.
Gauley-Robertson
Gould Electric Motor
Trey K Mining and Electric, Inc
Farm Plan
Fluid Systems, Inc.
Hoard Custom Signs, LLC
Big Red Supply Co., Inc.
Doug Harris
The Greater Muhlenberg Chamber of Commerce
Walter Rhew
Brake Supply Co., Inc.
Peterson Truck Center
Cummins Crosspoint, LLC
Dynamic Fabrication Inc.
Sonnie Biard
Industrial Machine Services Inc.
Big River Rubber and Gasket Co. Inc
Thompson International Inc.
Tommy Williams
Fiber Instrument Sales, Inc.
Carter Plumbing and Heating Inc.
Service Radiator, Inc.
Oscar Ramsey
Mississippi Lime Company
Torc Up, Inc.
Getman Corporation
Jim Whitaker Trucking Inc.

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

David Witherspoon
American Safety & Health Institute
Verizon Wireless
Central Maine Diesel IS, Inc.
G.A. Helfrich
Auto Electric Repair
Coal Miners' Respiratory Clinic
AT&T Business Services
Quest Diagnostics Inc.
Boyd and Sons Machinery, LLC
New Pig Corporation
Forestry Suppliers, Inc.
UniMeasure, Inc.
Anthem Life Insurance Company
H. Brent Phelps
Jonathan Miller
Tyler Allen
Faco, LLC
Standard Laboratories, Inc.
Bradford Supply Company
Darrin Parrent
Roger Smith
Matthew Dunlap
Michael Putman
Bluegrass Materials Company, LLC
Sunrise Coal LLC
Barton Machine, Inc.
AT&T TeleConference Services
Charles F Henderson
Forrest A Younker
Weston Thad Cartwright
Power Technologies, LLC
Sherry R. Stratton
Centrifugal Services Inc LLC
William M McGehee
Mine Site Technologies USA, Inc.
C.E. Martin Heirs  LLC
Nadean Young
Byler Lumber, LLC
Noel Properties, LLC
Marlin Daugherty Steam Cleaning
Witt's Heating & Cooling
The Times-Argus
Power Plan
Truck N Spring Repair
Slongs Industries, LLC
Amercable Incorporated
DAPCO, Inc.
Louisville District Corps of Engine
Wallace Electrical Systems, LLC
Grant Thornton LLP
Armstrong Coal Company Inc.

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Joy Global Mining, LLC--Consignment
Rite-Crete Concrete Products
Smith-Manus
Bobby Oldham
Kings Great Buys Plus
Home City Ice
Abney Auto Glass
Vigo Machine
Christy Pike
Greenville Quarries & Qual Blacktop
Mine Power Systems, Inc.
Minesafe Electronics  Inc
Republic Services DBA B&J Sanitatio
Ruby Concrete Company
S & S Urethane, Inc
Wallace Auto Parts & Service Inc.
Woodruff Supply Company  Inc
Jerry Fields
Prudential Life Insurance Company
Kerco, INC.
Madisonville Auto Parts
Pioneer Conveyor,LLC
AT&T Mobility
Atmos Energy
Clean Green Porta Potties, LLC
Custom Engineering  Inc
Wm. E. Groves Construction  Inc.
Hart Equipment Co  Inc
Booth Fire & Safety, Inc
Oakley Steel Products Co
Sprint Print  Inc
Industrial Service & Electronics, I
IMPCO, Inc
FL Smidth Salt Lake City, Inc.
Ohio Co Hospital
Total Compliance, LLC
OAS, Inc
Black Equipment Co
Likens & Sons Plumbing Supply
Clay Machine Works, Inc.
Heritage Petroleum. LLC
KM Specialty Pumps & Systems, Inc.
Webster County Water District
McCoy & McCoy Laboratories, Inc.
International Driller's Supply Co.
Xylem Dewatering Solutions, Inc.
Simmons Equipment Company
Central City Country Club, Inc.
Russell Burton
Debby Myers
Nick Woolen
Grady Lee Winton, Jr

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Andy Fulkerson
ERB Equipment Company
Yager Materials, LLC
Timothy Ashby
Buchanan Pump Service & Supply, Inc
Henry's Plumbing, Inc.
Anixter, Inc.
Jason Reddy
K&S Automotive Repair, LLC
Armstrong Coal Company - Kronos
CARY PENTECOST
COAL AGE, INC.
US BANK
LIL STEVIE'S PIZZA
SCHAUENBURG FLEXADUX CORPORATION
Union County Sheriff
BIG BROTHERS-BIG SISTERS
GRACE EQUIPMENT, LLC
DATE MINING SERVICES, LLC
Department of Labor - MSHA
Crop Production Services, Inc. - #3
Central Screen Printing, Inc
Jarrod Everly
Travis K. Sneed
Star Industrial Supply, Inc.
Bruse L. Ball
Union County Water District
Terminix International
Nancy Pierce
Ryan R Jarvis
Metcalfe Landscaping & Garden
K&E Technical Inc
Midwestern Machine & Hydraulics
EnerSys Delaware, Inc.
Lovelace Farms, Inc
Brittany Branson
Rogers Group, Inc.
United Way of the Ohio Valley
United Way of the Coalfield
Hannan Supply Company
Centrifugal & Mechanical Industries
West Kentucky Pipe & Valve, Inc.
Fields Custom Embroidery
John Plunkett
Aaron Simpson
Greg East
Quality Magnetite, LLC
Cayce Mill Supply Company, Inc.
WC Hydraulics, LLC
Smith Fertilizer & Grain Co., Inc.
Armstrong Coal PAC
Randy Griffin

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Justin Lamb
Retarus, Inc.
Whayne Supply Co. - Consignment
Mary Lee Knight
Charles W Rushing, Jr.
Ohio County Chamber of Commerce
Dennis Massoth
Mark Anthony Phelps
McLean County Sheriff
Baptist Health Occupational Med
West River Conveyors & Machiner
Bearing Headquarters
AT&T IP Flexible Reach
aFORDable Signs
Trustmark Voluntary Benefit Sol
American Heritage Life Insurance Co
Tyco Fire & Security (US) Mgmt,
Western Crane Service, Inc.
Ron Hope
KY Worker's Comp Funding Commission
Catering & Creations
Superior Metal Works Machine
Amazon.com, LLC
Baumgart Bit Supply
JABO Supply
Seth C. Brewer
US Bank Equipment Finance
Johnathan Oldham
Danny Fulkerson
Anthony Estevez
Bomgar Corporation
Chris Brooks
Nichols Electric Supply
Jones Septic Service
One Health @ Work Madisonville
Brian's Battery, LLC
Star Mine Services, Inc
S & L Industries, LLC
Shaw Heavy Equipment Repair, Inc.
Indoff Inc.
Stafford Services
D. B. Contracting LLC
Joshua Judge
Blair Tire Sales
Anthony Yates
Kentucky Athletics
Jarrod Farris
Tazz Conveyor Corporation
Dave Dingess
Jeff Shanks
American Hydraulics & Rebuild
GCR Tire Centers

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

Jennchem, LLC
Tara Adams
Enterprise Waste Oil Co., Inc
H & G Limestone Products
Elissa Sue Hollis
Tungco, Inc. DBA Cuda Grit
Veyance Industrial Services, Inc.
Scott Equipment Company LLC
Mayo Manufacturing Company, Inc.
Charles Taylor
Kathryn Kerlick
Division of Enforcement
Scott Dortch
Strata Equipment, LLC
UniFirst Corporation
Jones Septic Service LLC
Spectrum Business
National Armature & Machine
K & R Rebuild, LLC
Mike Coakley
Arian Greer
N & H Steaming, LLC
Frank Roberts
Cameron B. Mason
Joseph Logsdon
Cory Williams
SHI International Corp
Quest Software Inc
Bobby Penrod
Justin Howe
Brian Miller
UGM ADDCAR SYSTEMS, LLC
Leonard Weikel
GE Transportation Parts, LLC
Terry Peveler
Whitco Enterprises, Inc.
Universal Protection Service, LP
Sherwin-Williams
US Treasury
Heintzmann Corporation
XPO Logistics Freight, Inc
American Electric Equipment, Inc.
Terry E. Lindsey
Strata Products USA, LLC
Jim David Meats
Macquarie Corporate & Asset Funding
Indoff Inc.
Anthony Miller
Thoroughfare Mining - Survant
Cecil Bowman
Cory Edwards
Shawn Kitchen

**Schedule 1**
**SCHEDULE OF INTERESTED PARTIES**

***Rival Bidder***
Rhino Resources

***Potential Litigants***
Bobby Crook
Bruce Ball
Danny Goff
Dennis Roop
Everett W. Mitchell Jr.
Gilbert Henderson Jr
Gordon Wayne Doss
Gregory Messamore
Jackie Glenn Sailing
Jamie Lear
Jeffrey Wallace
Lawrence Lee
Michael Simpson
Mitchell Ray Jarvis
Phillip Oller
Randy Brown
Richard Robinson
Western Leasing, Inc.

**Schedule 2**
**SCHEDULE OF INTERESTED PARTIES THAT CURRENTLY EMPLOY**
**OR HAVE FORMERLY EMPLOYED FTI**

| INTERESTED PARTY OR AFFILIATE | RELATIONSHIP TO DEBTOR | CLIENTS AND THEIR AFFILIATES |
|---|---|---|
| Armstrong Energy, Inc. | Debtor | Armstrong Energy, Inc. |
| Armstrong Energy Holdings, Inc. | Filing Subsidiaries | Armstrong Energy Holdings, Inc. is a current client of the firm. |
| Armstrong Coal Sales, LLC | Filing Subsidiaries | Armstrong Coal Sales, LLC is a current client of the firm. |
| Thoroughfare Mining, LLC | Filing Subsidiaries | Thoroughfare Mining, LLC is a current client of the firm. |
| Western Diamond LLC | Filing Subsidiaries | Western Diamond LLC is a current client of the firm. |
| Western Land Company, LLC | Filing Subsidiaries | Western Land Company, LLC is a current client of the firm. |
| Armstrong Coal Company, Inc. | Filing Subsidiaries | Armstrong Coal Company, Inc. is a current client of the firm. |
| Armstrong Air, LLC | Filing Subsidiaries | Armstrong Air, LLC is a current client of the firm. |
| Armstrong Logistics Services, LLC | Filing Subsidiaries | Armstrong Logistics Services, LLC is a current client of the firm. |
| Kirkland & Ellis LLP | Debtor Counsel / Additional Vendors | Kirkland & Ellis LLP is a current client of the firm. |
| Houlihan Lokey Capital, Inc. | Investment Banker / Financial Advisors / Significant Vendors / Additional Vendors | Houlihan Lokey Capital, Inc. is a current client of the firm. |
| Ernst & Young LLP | Accounting Firm / Additional Vendors | Ernst & Young LLP is a current client of the firm. |
| BDO | Accounting Firm / Additional Vendors | BDO is a current client of the firm. |
| Protiviti | Accounting Firm / Significant Vendor / Additional Vendors | Protiviti is a former client of the firm and the last matter was closed on 2/9/2015. |
| Edward Jones | 401k Plan Administrator | Edward Jones is a former client of the firm and the last matter was closed on 8/18/2017. |
| ADP, LLC | Payroll Processing | ADP, LLC is a current client of the firm. |
| Anthem BlueCross, BlueShield | Medical Provider | Anthem BlueCross, BlueShield is a current client of the firm. |
| McGriff, Seibels & Williams, Inc. | Insurance Broker | McGriff, Seibels & Williams, Inc. is a former client of the firm and the last matter was closed on 10/6/2006. |
| Lockton Companies | Insurance Broker | Lockton Companies is a former client of the firm and the last matter was closed on 6/26/2012. |
| AT&T Business Services | MPLS Circuits (Network) / Additional Vendors | AT&T Business Services is a current client of the firm. |
| AT&T Global Network Services | Network Firewalls (Network Security) / Additional Vendors | AT&T Global Network Services is a current client of the firm. |
| Moody's Investor Service | Significant Vendors | Moody's Investor Service is a current client of the firm. |
| Carroll Engineering Company | Significant Vendors / Top 30 Creditors / Additional Vendors | Carroll Engineering Company is a former client of the firm and the last matter was closed on 5/2/2016. |
| Joy Global Underground Mining, LLC | Significant Vendors / Counterparties to Significant Executory Contracts / Additional Vendors | Joy Global Underground Mining, LLC is a former client of the firm and the last matter was closed on 5/2/2016. |
| Kentucky Utilities | Significant Vendors / Top 30 Creditors / Customer List / Additional Vendors | Kentucky Utilities is a former client of the firm and the last matter was closed on 1/4/2009. |
| Jennmar Corporation | Significant Vendors / Top 30 Creditors / Additional Vendors | Jennmar Corporation is a former client of the firm and the last matter was closed on 5/2/2016. |
| Nalco Company | Significant Vendors | Nalco Company is a former client of the firm and the last matter was closed on 10/22/2015. |

**Schedule 2**
**SCHEDULE OF INTERESTED PARTIES THAT CURRENTLY EMPLOY**
**OR HAVE FORMERLY EMPLOYED FTI**

| INTERESTED PARTY OR AFFILIATE | RELATIONSHIP TO DEBTOR | CLIENTS AND THEIR AFFILIATES |
|---|---|---|
| Joy Global Mining, LLC - Consignment | Significant Vendors / Top 30 Creditors | Joy Global Mining, LLC - Consignment is a former client of the firm and the last matter was closed on 5/2/2016. |
| Pioneer Conveyor, LLC | Significant Vendors / Additional Vendors | Pioneer Conveyor, LLC is a former client of the firm and the last matter was closed on 5/2/2016. |
| American Guarantee & Liability Insurance Co. | Insurers - Commercial Automobile / Insurers Commercial General Liability / Insurers - Commercial Umbrella | American Guarantee & Liability Insurance Co. is a former client of the firm and the last matter was closed on 6/14/2012. |
| American Zurich Insurance Company | Insurers - Workers Comp | American Zurich Insurance Company is a former client of the firm and the last matter was closed on 6/14/2012. |
| QBE Insurance Corporation | Insurers - D&O Liability / Insurers - Employment Practices Liability/Fiduciary Liability | QBE Insurance Corporation is a former client of the firm and the last matter was closed on 3/17/2016. |
| Mark Smith | Parties to Significant Litigation | Mark Smith is a former client of the firm and the last matter was closed on 7/27/2015. |
| AT&T | Communications / Additional Vendors | AT&T is a current client of the firm. |
| AT&T Mobility | Communications / Additional Vendors | AT&T Mobility is a current client of the firm. |
| Atmos Energy | Natural Gas / Additional Vendors | Atmos Energy is a former client of the firm and the last matter was closed on 10/28/2015. |
| Charter Communications | Communications / Additional Vendors | Charter Communications is a current client of the firm. |
| Department of Revenue - Missouri | Taxing Authorities | Department of Revenue - Missouri is a current client of the firm. |
| Wells Fargo Bank, National Association | Indenture Trustee | Wells Fargo Bank, National Association is a current client of the firm. |
| Blue Mountain | Bondholders | Blue Mountain is a current client of the firm. |
| Caspian | Bondholders | Caspian is a former client of the firm and the last matter was closed on 6/2/2012. |
| Marathon | Bondholders | Marathon is a current client of the firm. |
| Goldentree | Bondholders | Goldentree is a current client of the firm. |
| Teachers | Bondholders | Teachers is a current client of the firm. |
| New Generation | Bondholders | New Generation is a former client of the firm and the last matter was closed on 3/12/2014. |
| Nuveen | Bondholders | Nuveen is a current client of the firm. |
| TIAA | Bondholders | TIAA is a current client of the firm. |
| Duke Energy Carolinas, LLC | Customer List | Duke Energy Carolinas, LLC is a current client of the firm. |
| Tampa Electric Company | Customer List | Tampa Electric Company is a current client of the firm. |
| Tennessee Valley Authority | Customer List | Tennessee Valley Authority is a former client of the firm and the last matter was closed on 2/1/2009. |
| General Electric Capital Corporation | Counterparties to Significant Executory Contracts | General Electric Capital Corporation is a current client of the firm. |
| Komatsu Financial Limited Partnership | Counterparties to Significant Executory Contracts | Komatsu Financial Limited Partnership is a former client of the firm and the last matter was closed on 10/30/2010. |
| Robert White | Royalty Payments - Payee | Robert White is a former client of the firm and the last matter was closed on 2/10/2016. |
| David Cobb | Royalty Payments - Payee / Landowners / Additional Vendors | David Cobb is a former client of the firm and the last matter was closed on 12/3/2009. |
| James Gregory | Royalty Payments - Payee | James Gregory is a former client of the firm and the last matter was closed on 5/12/2009. |
| Don King | Landowners | Don King is a former client of the firm and the last matter was closed on 9/25/2014. |
| FedEx | Additional Vendors | FedEx is a current client of the firm. |

**Schedule 2**
**SCHEDULE OF INTERESTED PARTIES THAT CURRENTLY EMPLOY**
**OR HAVE FORMERLY EMPLOYED FTI**

| INTERESTED PARTY OR AFFILIATE | RELATIONSHIP TO DEBTOR | CLIENTS AND THEIR AFFILIATES |
|---|---|---|
| Armstrong Teasdale, LLP | Additional Vendors | Armstrong Teasdale, LLP is a current client of the firm. |
| American Express | Additional Vendors | American Express is a current client of the firm. |
| Iron Mountain | Additional Vendors | Iron Mountain is a current client of the firm. |
| CCH | Additional Vendors | CCH is a former client of the firm and the last matter was closed on 7/24/2006. |
| Kentucky State Treasurer | Additional Vendors | Kentucky State Treasurer is a former client of the firm and the last matter was closed on 3/20/2014. |
| SAP America, Inc. | Additional Vendors | SAP America, Inc. is a former client of the firm and the last matter was closed on 12/29/2015. |
| Staples Advantage | Additional Vendors | Staples Advantage is a former client of the firm and the last matter was closed on 6/20/2012. |
| PR Newswire Association, LLC | Additional Vendors | PR Newswire Association, LLC is a former client of the firm and the last matter was closed on 1/6/2012. |
| Banc of America Leasing | Additional Vendors | Banc of America Leasing is a current client of the firm. |
| Caterpillar Financial Services | Additional Vendors | Caterpillar Financial Services is a former client of the firm and the last matter was closed on 5/25/2016. |
| Delaware Secretary of State | Additional Vendors | Delaware Secretary of State is a former client of the firm and the last matter was closed on 4/16/2012. |
| Mercer | Additional Vendors | Mercer is a former client of the firm and the last matter was closed on 3/28/2014. |
| Standard & Poor's | Additional Vendors | Standard & Poor's is a former client of the firm and the last matter was closed on 12/23/2013. |
| Wells Fargo Bank | Additional Vendors | Wells Fargo Bank is a current client of the firm. |
| Drinker Biddle & Reath LLP | Additional Vendors | Drinker Biddle & Reath LLP is a current client of the firm. |
| Cintas Corporation | Additional Vendors | Cintas Corporation is a former client of the firm and the last matter was closed on 6/3/2017. |
| Purchase Power | Additional Vendors | Purchase Power is a current client of the firm. |
| Komatsu Financial Limited | Additional Vendors | Komatsu Financial Limited is a former client of the firm and the last matter was closed on 10/30/2010. |
| Anthem | Additional Vendors | Anthem is a current client of the firm. |
| DUFF & PHELPS, LLC | Additional Vendors | DUFF & PHELPS, LLC is a current client of the firm. |
| Steptoe & Johnson, PLLC | Additional Vendors | Steptoe & Johnson, PLLC is a current client of the firm. |
| Stites & Harbison PLLC | Additional Vendors | Stites & Harbison PLLC is a former client of the firm and the last matter was closed on 7/27/2017. |
| Paul, Weiss, Rifkind, Wharton | Additional Vendors | Paul, Weiss, Rifkind, Wharton is a current client of the firm. |
| Bingham Greenebaum Doll LLP | Additional Vendors | Bingham Greenebaum Doll LLP is a current client of the firm. |
| Jackson Kelly PLLC | Additional Vendors | Jackson Kelly PLLC is a former client of the firm and the last matter was closed on 9/11/2017. |
| Butler Snow LLP | Additional Vendors | Butler Snow LLP is a current client of the firm. |
| Hunton & Williams LLP | Additional Vendors | Hunton & Williams LLP is a current client of the firm. |
| Steven Campbell | Additional Vendors | Steven Campbell is a former client of the firm and the last matter was closed on 3/24/2014. |

**Schedule 2**
**SCHEDULE OF INTERESTED PARTIES THAT CURRENTLY EMPLOY**
**OR HAVE FORMERLY EMPLOYED FTI**

| INTERESTED PARTY OR AFFILIATE | RELATIONSHIP TO DEBTOR | CLIENTS AND THEIR AFFILIATES |
|---|---|---|
| Universal Protection Service, LP | Additional Vendors | Universal Protection Service, LP is a former client of the firm and the last matter was closed on 9/12/2014. |
| McMaster-Carr | Additional Vendors | McMaster-Carr is a former client of the firm and the last matter was closed on 12/13/2012. |
| AT&T Global Network Services, LLC | Additional Vendors | AT&T Global Network Services, LLC is a current client of the firm. |
| Pioneer Supply | Additional Vendors | Pioneer Supply is a former client of the firm and the last matter was closed on 7/3/16. |
| Airgas USA, LLC | Additional Vendors | Airgas USA, LLC is a former client of the firm and the last matter was closed on 1/10/2016. |
| Motion Industries | Additional Vendors | Motion Industries is a current client of the firm. |
| U.S. Dept of Labor/MSHA | Additional Vendors | U.S. Dept of Labor/MSHA is a former client of the firm and the last matter was closed on 9/11/2015. |
| Rexel, Inc | Additional Vendors | Rexel, Inc is a former client of the firm and the last matter was closed on 7/10/2017. |
| UPS | Additional Vendors | UPS is a current client of the firm. |
| Viewpoint Construction Software | Additional Vendors | Viewpoint Construction Software is a former client of the firm and the last matter was closed on 5/9/2016. |
| Cintas | Additional Vendors | Cintas  is a former client of the firm and the last matter was closed on 6/3/2017. |
| Fenner Dunlop | Additional Vendors | Fenner Dunlop  is a former client of the firm and the last matter was closed on 1/31/2007. |
| Dell Marketing, LLP | Additional Vendors | Dell Marketing, LLP  is a former client of the firm and the last matter was closed on 12/7/2016. |
| Hilti, Inc. | Additional Vendors | Hilti, Inc. is a former client of the firm and the last matter was closed on 5/31/2012. |
| CDW Direct LLC | Additional Vendors | CDW Direct LLC is a former client of the firm and the last matter was closed on 9/12/2014. |
| Time Warner Cable | Additional Vendors | Time Warner Cable is a current client of the firm. |
| Nalco Company | Additional Vendors | Nalco Company is a former client of the firm and the last matter was closed on 10/22/2015. |
| Grainger Industrial Supply Co, Inc | Additional Vendors | Grainger Industrial Supply Co, Inc is a former client of the firm and the last matter was closed on 10/16/2003. |
| Verizon Wireless | Additional Vendors | Verizon Wireless is a current client of the firm. |
| Quest Diagnostics Inc. | Additional Vendors | Quest Diagnostics Inc. is a current client of the firm. |
| Anthem Life Insurance Company | Additional Vendors | Anthem Life Insurance Company is a current client of the firm. |
| Roger Smith | Additional Vendors | Roger Smith is a former client of the firm and the last matter was closed on 3/24/2010. |
| Grant Thornton LLP | Additional Vendors | Grant Thornton LLP is a current client of the firm. |
| Home City Ice | Additional Vendors | Home City Ice  is a former client of the firm and the last matter was closed on 1/29/2010. |
| OAS, Inc | Additional Vendors | OAS, Inc is a current client of the firm. |
| Anixter, Inc. | Additional Vendors | Anixter, Inc. is a former client of the firm and the last matter was closed on 3/30/2014. |
| US Bank | Additional Vendors | US Bank is a current client of the firm. |
| BIG BROTHERS-BIG SISTERS | Additional Vendors | BIG BROTHERS-BIG SISTERS is a current client of the firm. |

**Schedule 2**
**SCHEDULE OF INTERESTED PARTIES THAT CURRENTLY EMPLOY**
**OR HAVE FORMERLY EMPLOYED FTI**

| INTERESTED PARTY OR AFFILIATE | RELATIONSHIP TO DEBTOR | CLIENTS AND THEIR AFFILIATES |
|---|---|---|
| Department of Labor - MSHA | Additional Vendors | Department of Labor - MSHA is a former client of the firm and the last matter was closed on 9/11/2015. |
| Crop Production Services, Inc. - #3 | Additional Vendors | Crop Production Services, Inc. is a current client of the firm. |
| Terminix International | Additional Vendors | Terminix International is a former client of the firm and the last matter was closed on 12/29/2015. |
| EnerSys Delaware, Inc. | Additional Vendors | EnerSys Delaware, Inc. is a former client of the firm and the last matter was closed on 9/3/2014. |
| ADP, Inc | Additional Vendors | ADP, Inc is a current client of the firm. |
| Bearing Headquarters | Additional Vendors | Bearing Headquarters is a current client of the firm. |
| Tyco Fire & Security (US) Mgmt, | Additional Vendors | Tyco Fire & Security (US) Mgmt is a current client of the firm. |
| Amazon.com, LLC | Additional Vendors | Amazon.com, LLC is a current client of the firm. |
| UniFirst Corporation | Additional Vendors | UniFirst Corporation is a former client of the firm and the last matter was closed on 12/13/2012. |
| SHI International Corp | Additional Vendors | SHI International Corp is a former client of the firm and the last matter was closed on 12/19/2011. |
| Quest Software Inc | Additional Vendors | Quest Software Inc is a former client of the firm and the last matter was closed on 5/4/2010. |
| Brian Miller | Additional Vendors | Brian Miller is a former client of the firm and the last matter was closed on 5/7/2008. |
| American Printing Company | Additional Vendors | American Printing Company is a former client of the firm and the last matter was closed on 5/17/2004. |
| Sherwin-Williams | Additional Vendors | Sherwin-Williams is a current client of the firm. |
| US Treasury | Additional Vendors | US Treasury is a current client of the firm. |
| Heintzmann Corporation | Additional Vendors | Heintzmann Corporation is a former client of the firm and the last matter was closed on 5/2/2016. |
| Richard Robinson | Potential Litigant | Richard Robinson is a former client of the firm and the last matter was closed on 9/13/16. |