# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 17-47541-659 |
|  | ) | CHAPTER 11 |
| ARMSTRONG ENERGY, INC., *et al.*,[1] | ) |  |
|  | ) | (Joint Administration Requested) |
|  | ) |  |
| Debtors. | ) | Hearing Date: |
|  | ) | Hearing Time: |
|  | ) | Hearing Location:  Courtroom 7 North |
|  | ) |  |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF MAEVA GROUP, LLC AS FINANCIAL ADVISOR FOR THE DEBTORS AND DEBTORS IN POSSESSION, *NUNC PRO TUNC* TO THE PETITION DATE, (II) WAIVING CERTAIN INFORMATION DISCLOSURE REQUIREMENTS, AND (III) GRANTING RELATED RELIEF

Armstrong Energy, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] respectfully state the following in support of this application:

### Relief Requested

1.      The Debtors seek entry of an order (the "Proposed Order"):[3] (a) authorizing them to employ and retain MAEVA Group, LLC ("MAEVA") as their financial advisor *nunc pro tunc*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Armstrong Energy, Inc. (4058); Armstrong Air, LLC (2017); Armstrong Coal Company, Inc. (0349); Armstrong Coal Sales, LLC (8643); Armstrong Energy Holdings, Inc. (5664); Armstrong Logistics Services, LLC (0392); Thoroughfare Mining, LLC (7890); Western Diamond LLC (9356); Western Land Company, LLC (9821).  The location of the Debtors' service address is:  7733 Forsyth Boulevard, Suite 1625, St. Louis, Missouri 63105.

[2]    A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this application and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Alan Boyko of Armstrong Energy, Inc., in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.

to the Petition Date, in accordance with the terms and conditions set forth in that certain engagement letter dated as of May 3, 2016 (as amended, modified, or supplemented from time to time, the "Engagement Letter"), a current version of which is attached hereto as **Exhibit A**, (b) approving the terms of MAEVA's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth in the Engagement Letter, (c) waiving certain time-keeping requirements as set forth in the Appendix to the Procedures Manual accompanying the Local Bankruptcy Rules (as defined below) (the "Procedures Manual") and (d) granting related relief.  In further support of this application, the Debtors submit the Declaration of Harry J. Wilson, Chief Executive Officer of MAEVA (the "Wilson Declaration"), which is attached hereto as **Exhibit B**.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Eastern District of Missouri (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 81.901(B)(1) of the Local Rules of the United States District Court for the Eastern District of Missouri.  The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014(a) and

---

[3]     A copy of the Proposed Order will be provided to the Notice Parties (as defined below) and made available on the Debtors' case information website at https://www.donlinrecano.com/armstrong.

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014 and 2016 of the Local Rules of Bankruptcy Procedure for the Eastern District of Missouri (the "Local Bankruptcy Rules").

**Background**

5.     The Debtors produce low-chlorine, high-sulfur thermal coal from the Illinois Basin, with both surface and underground mines.  The Debtors market their coal primarily to proximate and investment grade electric utility companies as fuel for their steam-powered generators.  Based on 2016 production, the Debtors are the sixth largest producer in the Illinois Basin and the second largest in Western Kentucky.

6.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this application, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

**MAEVA's Qualifications**

7.     The Debtors seek to retain MAEVA as their financial advisor because, among other things, MAEVA has extensive experience and an excellent reputation in providing high-quality advisory services to companies and key stakeholders in companies undergoing restructurings.  In addition, as described more fully in this Application and in the Wilson Declaration, MAEVA has a substantial understanding of the Debtors' business from having advised the Debtors since May 2016 on strategic alternatives.

8.     MAEVA specializes in turnaround consulting and debtor advisory services and they regularly assist in the development of operational and strategic plans for distressed companies.  MAEVA's debtor advisory services have included a wide range of activities targeted at improving the financial positions of companies, including developing strategic, tactical and operational initiatives to maximize enterprise value.  Harry J. Wilson, the chief executive officer of MAEVA, has spent most of the past twenty-four years investing in or advising financially and/or operationally distressed companies and, among other notable roles, served as one of the leaders of the Auto Task Force, which was responsible for the United States Department of the Treasury's role in the restructuring of General Motors and Chrysler.  MAEVA has extensive experience in advising management teams and key stakeholders in several recent bankruptcies and out of court restructurings, including YRC Worldwide, Inc., True Religion Apparel, Inc., Hostess Brands, Inc., RadioShack Corporation and Global Aviation Holdings Inc.

9.     In light of the size and complexity of these chapter 11 cases, the capabilities and experience of MAEVA in advising the Debtors are crucial to the success of the Debtors' chapter 11 strategies.  An experienced financial advisor, such as MAEVA, fulfills a critical need that complements the services offered by the Debtors' other professionals.

10.     During the term of MAEVA's prepetition engagement, their work focused primarily on:   (a) exploring a broad range of capital structure alternatives; (b) assisting management with the preparation of a substantially revised operating and business plan, including extensive due diligence and support for both management and Knight Hawk Holdings, LLC ("Knight Hawk"); (c) assisting the Debtors in preparing their chapter 11 plan; (d) working with senior management to prepare hundreds of financial, legal and operational documents to be placed in the Debtors' data room; (e) analyzing the Debtors' liquidity and cash flow projections

and identifying opportunities for improvement; (f) initiating and leading a wide range of potential strategic alternatives, including negotiations with several potential strategic partners; (g) working with the Debtors' secured noteholders, the Debtors' primary equity holder, Knight Hawk, and Thoroughbred Resources, L.P. (of behalf of itself and its affiliates, "<u>Thoroughbred</u>") in negotiating the terms of the transaction that serves as the foundation for the Debtors' restructuring, including negotiating all material terms related to the amended mineral right agreement with Thoroughbred; and (h) working with the Debtors, Debtors' counsel, and the noteholders and their advisors in the extensive preparations for the chapter 11 cases.

11.     In providing these and other prepetition professional services to the Debtors, MAEVA has acquired significant knowledge of the Debtors and their businesses and is intimately familiar with the Debtors' financial affairs, debt structure, business operations, key stakeholders, financing documents and other related material information.  In providing prepetition services to the Debtors, MAEVA has worked closely with the Debtors' senior management and their other advisors and has familiarity with the other major stakeholders that will be involved in these chapter 11 cases, including extensive negotiations with each of those stakeholders in crafting the basis for the proposed restructuring.  Accordingly, MAEVA is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

<u>**Services to Be Provided by MAEVA**</u>

12.     The parties have entered into the Engagement Letter, which governs the relationship between the Debtors and MAEVA.  The terms and conditions of the Engagement Letter were negotiated between the Debtors and MAEVA and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  In collaboration with the chief executive officer, the chief financial officer and other senior personnel of the

Debtors, Harry Wilson and other affiliates of MAEVA (the "MAEVA Personnel") will assist the Debtors in evaluating and implementing various strategic, tactical and operational initiatives to maximize the enterprise value of the Debtors (the "Services").

13.     Under the Engagement Letter, in consideration for the compensation contemplated thereby, MAEVA has provided and has agreed to provide the following services to the extent the Debtors deem necessary, appropriate and feasible:[4]

a.      Advise and assist the Debtors in their analysis and monitoring of the Debtors' historical, current and projected financial affairs, including as appropriate without limitation, periodic operating reports, analyses of cash receipts and disbursements, analyses of cash flow forecasts, analyses of various asset and liability accounts, and, to the extent applicable, schedules of assets and liabilities and statements of financial affairs, and analyses of potential transactions;

b.      Analyze the Debtors' business plan and help develop and provide advice with respect to potential restructuring transactions available to the Debtors;

c.      Analyze monthly monitoring reports provided by the Debtors to effectively evaluate the Debtors' performance on an ongoing basis;

d.      Assist and advise the Debtors in evaluating and analyzing restructuring proposals of the Debtors;

e.      Assist the Debtors and their counsel in the negotiation of any and all aspects of any potential restructuring transaction;

f.      Attend the Debtors' meetings as may be required in the role of advisors to the Debtors;

g.      Review and provide analysis of plans of reorganization and disclosure statements relating to the Debtors, if applicable;

---

[4]     The summaries of the Engagement Letter contained in this Application are provided for purposes of convenience only. In the event of any inconsistency between the summaries contained herein and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used but not otherwise defined in the summaries of the Engagement Letter contained herein shall have the meanings ascribed to such terms in the Engagement Letter.

h.      Assist and advise the Debtors in reviewing and evaluating any court motions filed or to be filed by the Debtors or any other parties-in-interest, if applicable;

i.      Provide other services that are consistent with the Debtors' needs, in keeping with the objectives of the Project and services rendered to date; and

j.      Participate in meetings and discussions between the Debtors, on the one hand, and various stakeholder constituencies and their respective professionals, on the other.

14.      The services that MAEVA will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates. The Debtors believe that the services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. Specifically, MAEVA will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

**Terms of Retention**

15.      In consideration of the services to be provided by MAEVA, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to pay MAEVA the proposed compensation set forth in the Engagement Letter (the "Fee and Expense Structure"):[5]

a.      *Retainer Fee:* The Debtors shall pay MAEVA a monthly retainer of $175,000 (the "Retainer Fee") payable by cash, check, electronic transfer, or other instrument in immediately available U.S. funds. The Retainer Fee is payable on the second business day following the Effective Date, on the first business day of each calendar month thereafter during the term of MAEVA's engagement. In no event shall the aggregate Retainer Fees payable to MAEVA pursuant to the Engagement Letter be less than $500,000 (the "Minimum Retainer Fee"), notwithstanding ay expiration or

---

[5]      This summary is presented for convenience purposes only. The terms set forth in the Engagement Letter are controlling in all respects. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Engagement Letter.

termination of the Engagement Letter, unless the Engagement Letter is terminated by the Debtors as a result of MAEVA's fraud, gross negligence, willful misconduct, or material breach of the confidentiality agreement entered into by MAEVA and the Debtors.

b. *Completion Fee*: The Debtors shall pay MAEVA a separate fee (the "Completion Fee") upon completion of any transaction or series of transactions resulting from the Project consummated during the Term (collectively, a "Restructuring"), in an amount in cash equal to $3,250,000. MAEVA will provide credits against its completion fee, beginning after the first six months of its engagement, at the rate of 50 percent of its Retainer Fee. These credits will be capped at $1,250,000.

c. *Discretionary Fee*: MAEVA is eligible for an additional fee above and beyond the Completion Fee, based on extraordinary performance (the "Discretionary Fee"). Whether a Discretionary Fee is paid at all, and, if so, the amount, is solely subject to the discretion of the board of directors of the Debtors. MAEVA is not guaranteed a Discretionary Fee.

d. *Expenses*: The Debtors shall reimburse MAEVA for all reasonable and actual documented out-of-pocket expenses associated with the engagement. The Debtors shall maintain a $25,000 deposit (the "Expense Deposit") with MAEVA to cover any unpaid expenses.

16. In accordance with Local Rule 2016-2(B), the Debtors propose that (a) MAEVA be allowed to submit regular monthly invoices and (b) pursuant to Local Rule 2016-2(B), the Debtors be authorized to pay up to 80 percent of fees and 100 percent of expenses on a monthly basis, subject to later court approval.

**The Fee and Expense Structure is Appropriate and Reasonable
and Should be Approved under Section 328(a) of the Bankruptcy Code**

17. MAEVA and the Debtors believe that the Fee and Expense Structure is both reasonable and market-based. To induce MAEVA to do business with the Debtors, the Fee and Expense Structure was established to reflect the difficulty of the extensive assignments MAEVA has undertaken and expects to undertake and to account for the potential for an unfavorable outcome resulting from factors outside of MAEVA's control.

18. MAEVA's strategic and financial expertise as well as its transaction and industry expertise and restructuring capabilities, some or all of which may be required by the Debtors during the term of MAEVA's engagement hereunder, were important factors in determining the Fee and Expense Structure, and the ultimate benefit to the Debtors of MAEVA's services hereunder cannot be measured by reference to the number of hours to be expended by MAEVA's professionals in the performance of such services.

19. The Debtors submit that MAEVA has obtained valuable institutional knowledge of the Debtors' businesses and financial affairs as a result of providing services to the Debtors prior to the Petition Date, and that MAEVA is both well-qualified and uniquely able to perform these services and assist the Debtors in these chapter 11 cases. Moreover, the Debtors believe that MAEVA's services will assist the Debtors in achieving a successful outcome with respect to these chapter 11 cases. The Debtors believe that the Fee and Expense Structure is comparable to compensation generally charged by financial advisors of similar stature to MAEVA for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed, monthly fee and a contingency amount, which are tied to the consummation and closing of the transactions and services contemplated by the Debtors and MAEVA in the Engagement Letter.

20. The Fee and Expense Structure is consistent with MAEVA's normal and customary billing practices for comparably sized and complex cases and transactions, both in- and out-of-court, involving the services to be provided in connection with these chapter 11 cases. Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by MAEVA and other financial advisors and investment banks in connection with the rendering of comparable services to clients such as the Debtors.

21.     In addition, the Fee and Expense Structure was agreed upon by the parties on an arm's-length basis in anticipation that a substantial commitment of professional time and effort would be required of MAEVA and its professionals hereunder, that such commitment may foreclose other opportunities for MAEVA, and that the actual time and commitment required of MAEVA and its professionals to perform its services hereunder may vary substantially from week to week and month to month.

22.     In light of the foregoing, and given the numerous issues that MAEVA may be required to address in the performance of its services hereunder, MAEVA's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for MAEVA's services for engagements of this nature both out-of-court and in a chapter 11 context, the Debtors believe that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

23.     Accordingly, as more fully described below, the Debtors believe that the Court should approve MAEVA's retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that MAEVA's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code, *provided* that notwithstanding any provision to the contrary in this Application, the U.S. Trustee shall have the right to object to MAEVA's request(s) for final compensation based on the reasonableness standard provided in section 330 of the Bankruptcy Code, not section 328(a) of the Bankruptcy Code.  As set forth in the Wilson Declaration, MAEVA has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

### Record Keeping and Applications for Compensation

24.     The Debtors understand that MAEVA intends to apply to the Court for allowance of compensation and reimbursement of expenses for their Services.  Except as provided in this application and the attached order, MAEVA intends to file monthly, interim and final fee applications in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, the Local Bankruptcy Rules, guidelines established by the Office of the United States Trustee for the Eastern District of Missouri and any other such procedures as may be fixed by order of this Court.

25.     Consistent with its ordinary practice and the practice of financial advisors in other chapter 11 cases whose fee arrangements are not hours-based, MAEVA does not maintain contemporaneous time records similar to those kept by attorneys or provide or conform to a schedule of hourly rates for its professionals.  Accordingly, MAEVA's compensation will be calculated and paid based on the Fee and Expense Structure detailed above, and is not based solely upon the amount of time spent providing the Services to the Debtors.  Given the foregoing and given that MAEVA's compensation is based on fixed fees, the Debtors request that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, Procedures Manual, any order of this Court, or any other guideline regarding the submission and approval of fee applications, MAEVA's Personnel be excused from maintaining time records in connection with the services to be rendered pursuant to the Engagement Letter.  Accordingly, if the Court grants the Application, MAEVA will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable orders of this Court.

26. MAEVA will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. MAEVA shall comply with the requirements set forth in any interim compensation order and Local Bankruptcy Rule 2016 with respect to any expenses they incur during the course of their engagement in these chapter 11 cases.

27. MAEVA's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter and any procedures established by the Court.

## Payments to MAEVA Prior to the Petition Date

28. As noted above, MAEVA has provided prepetition advisory services to the Debtors. During the one-year period prior to the commencement of these chapter 11 cases, MAEVA has received $2,100,000.00 from the Debtors for professional fees and an additional $12,495.33 in expense reimbursements incurred prior to the Petition Date. During the 90 days immediately preceding the Petition Date (dating back to August 1, 2017), MAEVA received fee payments totaling $525,000.00 and an additional $4,515.88 in expense reimbursements, and continues to hold a $350,000.00 retainer for the payment of its fee for the months of November and December 2017. Other than as set forth herein, MAEVA did not receive any payments from the Debtors during the 90 days immediately preceding the Petition Date.

29. The unapplied Expense Deposit, which is estimated to total approximately $25,000.00, will not be segregated by MAEVA in a separate account, and will be held until the end of these chapter 11 cases and applied to any unpaid expenses at the conclusion of these proceedings.

30.     As of the Petition Date, the Debtors did not owe MAEVA for any fees or expenses incurred prior to the Petition Date.

**Indemnification Provisions**

31.     As a material part of the consideration for which MAEVA has agreed to provide the Services described herein, the Debtors have agreed to the indemnification provisions in Schedule A of the Engagement Letter (the "Indemnification Provisions").  The Indemnification Provisions provide that the Debtors will indemnify and hold harmless MAEVA and its affiliates, related persons, and subcontractors under certain circumstances.  All requests of MAEVA for the payment of indemnity pursuant to the Indemnification Provisions will be made by means of an application to, and shall be subject to review by, the Court to ensure that payment of such indemnity (a) conforms to the terms of the Engagement Letter and (b) is reasonable based upon the circumstances.  The Debtors will not indemnify MAEVA for acts involving gross negligence or willful misconduct and will not hold MAEVA harmless against liabilities arising out of or in connection with its retention by the Debtors for losses, claims, damages or liabilities incurred by the Debtors that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from gross negligence or willful misconduct of MAEVA.

32.     The Debtors and MAEVA believe that the indemnification provisions contained in Schedule A to the Engagement Letter are customary and reasonable for financial advisory engagements, both in and out of court, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.  *See, e.g.*, *In re Peabody Energy Corp.*, No. 16-42529-399 (Bankr. E.D. Mo. May 18, 2016) (approving indemnification of investment banker by the debtors); *In re Arch Coal, Inc.*, No. 16-40120 (Bankr. E.D. Mo. Mar. 23, 2016) (same); *In re Noranda Aluminum, Inc.*, No. 16-10083 (Bankr. E.D. Mo. Mar. 18, 2016 (same); *In re Patriot Coal Corp.*, No. 15-32450 (Bankr. E.D. Va. Sept.

17, 2015); *In re James River Coal Co.*, No. 14-31848 (Bankr. E.D. Va. May 9, 2014); *In re Geokinetics Inc.,* No. 13-10472 (KJC) (Bankr. D. Del. Apr. 2, 2013.

## MAEVA's Disinterestedness

33.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Wilson Declaration, attached hereto as **Exhibit A**, MAEVA:  (i) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (ii) does not hold any interest adverse  to the Debtors' estates; and (iii) believes it is a "disinterested person"  as defined  by section  101 (14) of the Bankruptcy Code. Accordingly, the Debtors believe that MAEVA is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

34.     MAEVA will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise in such review, MAEVA will use reasonable efforts to identify such further developments and will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014(a).

## Basis for Relief

35.     The Debtors seek authority to employ and retain MAEVA as their financial advisor under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title."  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy

Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

36.     In addition, the Debtors seek approval of the Engagement Letter (including, without limitation, the Fee and Expense Structure and the indemnification provisions in Schedule A) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . . ." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrett Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted), *cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008). Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code. *See,*

*e.g.*, *In re Essar Steel Minnesota LLC and ESML Holdings Inc.*, No. 16-11626 (Bankr. D. Del. Aug. 4, 2016) (approving the employment of Guggenheim Securities as financial advisors to the debtors pursuant to section 328); *In re MSD Performance. Inc.*, No. 13-12286 (PJW) (Bankr. D. Del. Oct. 31, 2013) (approving the employment of Carl Marks Advisory Group as financial advisor to the official committee of unsecured creditors pursuant to section 328); *In re Patriot Coal Corp.*, No. 12-51502 (Bankr. E.D. Mo. Dec. 18, 2012) (approving the employment of Houlihan Lokey Capital, Inc. as financial advisor to the official committee of unsecured creditors pursuant to section 328); *In re Neenah Enterprises, Inc.*, No. 10-10360 (MFW) (Bankr. D. Del. Mar. 9, 2010); *In re Spansion Inc.*, No. 09-10690 (KJC) (Bankr. D. Del. Apr. 7, 2009) (approving the employment of Gordian Group LLC as financial advisor, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); *In re Flying J Inc.*, No. 08-13384 (MFW) (Bankr. D. Del. Apr. 3, 2009) (approving the employment of Blackstone as investment banker and financial advisor, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); *In re Semcrude, L.P.*, No. 08-11525 (BLS) (Bankr. D. Del. Sept. 12, 2008) (same); *In re Boscov's, Inc.*, No. 08-11637 (KG) (Bankr. D. Del. Sept. 5, 2008) (approving employment of Lehman Brothers, Inc. as investment banker, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); *In re Dana Com.*, No. 06-10354 (BRL) (Bank. S.D.N.Y. Mar. 29, 2006) (approving employment of Miller Buckfire & Co., LLC as financial advisor and investment banker, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code).

37.     Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and

> conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee basis, or on a contingent fee basis*.

11 U.S.C. § 328(a) (emphasis added). This change makes clear that the Debtors are able to retain a professional on a fixed or percentage fee basis, such as the Fee and Expense Structure, with bankruptcy court approval.

38. The Engagement Letter appropriately reflects (i) the nature and scope of services to be provided by MAEVA, (ii) MAEVA's substantial experience with respect to financial advisory services and working with companies in financial distress, and (iii) the fee structures typically utilized by MAEVA and other leading financial advisors that do not bill their clients on an hourly basis.

39. Notwithstanding approval of the Engagement Letter under section 328(a) of the Bankruptcy Code, MAEVA will apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, as those procedures may be modified or supplemented by order of this Court.

**Request for Approval of Retention of**
**MAEVA *Nunc Pro Tunc* as of the Petition Date**

40. The Debtors request that MAEVA's retention be made effective as of the Petition Date, in order to allow MAEVA to be compensated for the work performed for the Debtors prior to the Court's consideration and approval of this Application. The Debtors submit that under the circumstances, and to avoid irreparable harm to the Debtors' estates that may occur if MAEVA is not immediately retained, retroactive approval to the Petition Date is warranted. *See, e.g.*, *FIS Airlease II, Inc.* v. *Simon (In re FIS Airlease II, Inc.)*, 844 F.2d 99, 103 (3d Cir. 1988), *cert. denied*, 488 U.S. 852 (1988); *In re Garden Ridge Corp.*, 326 B.R. 278, 281 (Bankr. D. Del.

2005); *Indian River Homes, Inc.* v. *Sussex Trust Co.*, 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's employment of attorney and real estate agent as of a prior date was not an abuse of discretion).

## Notice

41.     The Debtors will provide notice of this motion to:  (a) the Office of the United States Trustee for the Eastern District of Missouri; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the indenture trustee under the Debtors' 11.75% senior secured notes due 2019; (d) counsel to the ad hoc group of holders of the Debtors' 11.75% senior secured notes due 2019; (e) counsel to Knight Hawk Holdings, LLC; (f) the United States Attorney's Office for the Eastern District of Missouri; (g) the Internal Revenue Service; (h) the Environmental Protection Agency; (i) the office of the attorneys general for the states in which the Debtors operate; (j) the Securities and Exchange Commission; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

42.     No prior request for the relief sought in this application has been made to this or any other court.


[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  November 1, 2017

Armstrong Energy, Inc., *et al*.

*/s/ Alan Boyko*
Alan Boyko
Chief Restructuring Officer

## EXHIBIT A

**Engagement Letter**

Armstrong Energy, Inc.
7733 Forsyth Boulevard
Suite 1625
St. Louis, MO 63105
Attention: Martin Wilson

This letter (this *Agreement*, and the engagement pursuant to this Agreement, *this Engagement*), entered into as of May ___ ᴿᵈ 2016 (the *Effective Date*), confirms the engagement of MAEVA Group, LLC (*MAEVA, we* or *us*) to provide advisory services to Armstrong Energy, Inc. and its subsidiaries (collectively, the *Company* or *you*).

1. MAEVA and the Company agree that MAEVA will provide financial advisory, analytical, consulting and/or other services on one or more specific transactions, refinancings, investments, restructurings, value enhancing events and/or strategic initiatives involving the Company, its assets and/or obligations (collectively, the *Project*). The terms and conditions of this Agreement shall apply to the Project unless otherwise mutually agreed.

2. In addition to the general services relating to the Project, MAEVA will provide to the Company the following services in connection with the Project, as may be requested by the Company from time to time during the term of this Agreement:

> a. Advise and assist the Company in its analysis and monitoring of the Company's historical, current and projected financial affairs, including as appropriate without limitation, reviewing: periodic operating reports, analyses of cash receipts and disbursements, analyses of cash flow forecasts, analyses of various asset and liability accounts, and, to the extent applicable, schedules of assets and liabilities and statements of financial affairs, and analyses of potential transactions;

> b. Analyze the Company's business plan and help develop and provide advice with respect to potential restructuring transactions available to the Company;

> c. Analyze monthly monitoring reports provided by the Company to effectively evaluate the Company's performance on an ongoing basis;

> d. Assist and advise the Company in evaluating and analyzing restructuring proposals of the Company;

> e. Assist the Company and its counsel in the negotiation of any and all aspects of any potential restructuring transaction;

f.    Attend Company meetings as may be required in the role of advisors to the Company;

g.    Review and provide analysis of plans of reorganization and disclosure statements relating to the Company, if applicable;

h.    Assist and advise the Company in reviewing and evaluating any court motions filed or to be filed by the Company or any other parties-in-interest, if applicable;

i.    Provide other services that are consistent with the Company's needs, in keeping with the objectives of the Project; and

j.    Participate in meetings and discussions between the Company, on the one hand, and various stakeholder constituencies and their respective professionals, on the other.

3.    MAEVA's services are limited to those provided in this Agreement.

4.    MAEVA will submit its evaluations and analyses pursuant to this engagement in periodic oral and/or written reports at the Company's request, though written reports will be provided only if appropriate in MAEVA's reasonable judgment. No third party (other than, for the avoidance of doubt, your Board of Directors (the *Board*) or any committee thereof) shall be entitled to rely on any opinion or advice issued by MAEVA to the Company.

5.    In order for us to perform our services hereunder, it will be necessary for our personnel to have reasonable access to certain books, records and reports of the Company, and have discussions with its personnel. We understand that we will have reasonable access to the Company's management, records and other data; limited access may restrict our ability to perform our services as described in this Agreement. Accordingly, you agree that your senior management will cooperate with our personnel, and make available your personnel and any books, records and other sources from which data can be obtained, as we may reasonably request.

6.    The purpose of this Engagement is for MAEVA to serve as a financial and strategic advisor to you. In order to provide the appropriate services to you, you will provide such assistance, cooperation and information as MAEVA reasonably requires. Likewise, we agree to make our personnel reasonably available to you and provide such information and status reports as you reasonably request.

7.    You recognize and confirm that MAEVA: (a) will use and rely on information available from generally recognized public sources in performing services without having independently verified the same; (b) does not assume responsibility for the accuracy or completeness of such public information; and (c) will not make an appraisal of any assets or liabilities of the Company or any of its market competitors.

8.    Our reports will encompass only matters that come to our attention in the course of our work that we perceive to be significant in relation to the objectives of this Engagement.

2

Because of any time and scope limitations implicit in this Engagement and the related limitations on the depth of our analysis and the extent of our verification of information, we may not discover all such matters or perceive their significance. Accordingly, we will not provide assurances in our reports concerning the integrity of the information used in our analyses and on which our findings and advice to you may be based. We are neither being requested to perform an audit nor to apply generally accepted auditing standards or procedures. We are entitled, in general, to rely on the accuracy and validity of the data obtained from generally recognized public sources or supplied to us by your employees and representatives. We will not, nor are we under any obligation to update data submitted to us or review information relating to any topics outside the scope of our engagement hereunder unless you specifically request us to do so.

9.  Our work will be performed on a *level-of-effort* basis that may, under the circumstances of this Engagement on the Project, cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations within available time periods. We agree to keep you apprised of any such limitations.

10.  You hereby agree to treat confidentially any proprietary or non-public information received from us in connection with the Project, whether orally or in writing, and, except as provided in this agreement, not to publish, distribute or disclose in any manner any such information (other than to our senior management and the Board) without our prior written approval. Such approval shall not be unreasonably withheld, conditioned or delayed. Our approval shall not be required if (a) the information is required to be disclosed by applicable law, regulation or legal process, the order of a court or administrative agency, or to comply with any lawful discovery rule or requirement, provided, to the extent lawful and practicable, you give us written notice and a reasonable opportunity to obtain confidential treatment thereof, (b) such information is otherwise publicly available through no fault of the Company or its officers, members, managers, employees, contractors, agents, representatives or affiliates (*Related Persons*), or (c) the information is required to be disclosed by you under federal securities laws or regulations; provided however, that you will use reasonable efforts where possible to obtain our reasonable nonbinding comments on prospective public disclosures involving this Engagement. Notwithstanding anything in the foregoing to the contrary, we acknowledge that the existence of this Agreement may be publicly disclosed by you, and that this Agreement may be filed by you with the SEC, which determination shall be made solely by you after consultation with your counsel.

11.  We acknowledge the Confidentiality Agreement, dated April 28, 2016, between MAEVA and the Company (the *Confidentiality Agreement*). We agree to treat confidentially any and all Confidential Information (as defined in the Confidentiality Agreement) received from you or your representatives, in connection with the Project, whether orally or in writing, and, except as provided in the Confidentiality Agreement, not to disclose in any manner any Confidential Information received from you or your representatives in connection with the Project to any party other than our personnel who have a need to know such information in connection with the performance of services under this engagement without your prior written approval, and shall not use any such information for any purpose other than our performance of such services. We and you shall be entitled to enforce the provisions of paragraphs 10 and 11, respectively, by obtaining specific or injunctive relief from a court, without the necessity of

3

posting bond or proving lack of an adequate remedy at law, and without limitation of other remedies that may be available at law or in equity.

12.     If we are subpoenaed as the result of any work performed for you in connection with this Engagement, we will provide you, where practicable and legally permissible, prompt notice of any such request or requirement (written if practical) so that you may seek, at your discretion and sole expense, an appropriate protective order or other assurance to maintain the confidential nature of any information sought by the subpoena. For any claims asserted for a period of two years following the termination or expiration of this Agreement, you will indemnify us for the reasonable actual out-of-pocket expenses incurred in responding to such a subpoena(s) or claim.

13.     The term of this Agreement shall commence on the Effective Date and shall automatically terminate on December 31, 2016 (the *Term*), unless extended by mutual written agreement or unless sooner terminated by you for any reason in your sole discretion upon at least 30 days' prior written notice to us and payment of any unpaid Minimum Retainer Fees and Expenses as described in paragraph 14. For the avoidance of doubt, the expiration date does not supersede or truncate any compensation that may be due as a result of the applicable Tail Period as described in paragraph 14(f).

14.     As sole compensation for the services rendered by MAEVA hereunder, you agree as follows:

   a.     You shall pay MAEVA a monthly retainer fee of $175,000 (the *Retainer Fee*) payable by cash, check (payable to "MAEVA Group, LLC"), electronic transfer, or other instrument in immediately available U.S. funds. The Retainer Fee is payable on the second business day following the Effective Date, and on the first business day of each calendar month thereafter during the Term. The initial installment of the Retainer Fee will be prorated to account for the partial month at the commencement of the Term. Notwithstanding the foregoing, in no event shall the aggregate Retainer Fees payable to us hereunder be less than $500,000 (*Minimum Retainer Fee*), notwithstanding any expiration or termination of this Agreement, unless this Agreement is terminated by you as a result of our fraud, gross negligence, willful misconduct or material breach of the Confidentiality Agreement (such event, a *for cause termination*).

   b.     You shall reimburse us for all reasonable and actual documented out-of-pocket expenses associated with this engagement, including but not limited to any reasonable legal fees and expenses of our attorneys (*Expenses*). We will provide written documentation to you in the form of receipts or other sufficient evidence to substantiate such Expenses no later than fifteen (15) days following the conclusion of the month in which such Expenses were incurred. We shall seek your pre-approval of any expense of ten thousand dollars ($10,000) or more.

4

c.      You agree to maintain a $25,000 deposit (the *Expense Deposit*) with us from which Expenses shall be deducted during the Term of this Agreement. We will provide a written report no later than fifteen (15) days following the conclusion of each calendar month showing (1) the balance of the Expense Deposit as of the first calendar day of each month (2) an itemization of each expense deducted from the Expense Deposit during such month, and (3) the balance of the Expense Deposit as of the last day of such month. In the event the Expense Deposit balance is less than $25,000 at the conclusion of any calendar month following our deduction of Expenses, You shall replenish the Expense Deposit to an amount not less than $25,000. Any unused Expense Deposit will be returned to you within 60 days after the expiration or termination of this Agreement.

d.      We will receive a separate fee (the *Completion Fee*) of $3,250,000 upon the completion of any transaction or series of related transactions resulting from the Project consummated during the Term (collectively, a *Restructuring*). For purposes of this subsection 14(d), a Restructuring shall be deemed to have successfully occurred if the Company enters into one or more transactions, approved by the Company's Board of Directors, relating to the Project. Such Completion Fee shall be payable at the closing of the Restructuring. Except as set forth in subsection 14(f), in the event that this Agreement terminates or expires without the occurrence of a successful Restructuring, no Completion Fee shall be due.

e.      In addition, we are eligible for an additional fee above and beyond the Completion Fee, based on extraordinary performance (*Discretionary Fee*). Whether a Discretionary Fee is paid at all, and, if so, the amount, is solely subject to the discretion of the Board. We acknowledge that we are not guaranteed a Discretionary Fee.

f.      If we provide material services to Company in connection with a Restructuring that (i) is completed within 6 months following the expiration or termination of this Agreement; or (ii) is the subject of a binding restructuring agreement entered into by the Company within 6 months following the expiration or termination of this Agreement, which thereafter closes within 12 months following the expiration or termination of this Agreement (collectively, the *Tail Period*), then Company shall pay to MAEVA (x) a Completion Fee as if such Restructuring occurred during the Term of this Agreement, and (y) any Discretionary Fee. Notwithstanding the foregoing, the Tail Period and any compensation due to MAEVA under this subsection shall not apply in the event of a for cause termination by Company.

As used in this Agreement, the phrases "termination of this agreement" and "termination of this engagement" are intended to have the same meaning.

15. This Agreement refers to and incorporates the indemnity agreement attached hereto as Schedule A.

16. Neither MAEVA, the Company nor any of their respective assignees or successors shall (a) seek a jury trial in any lawsuit, proceeding, counterclaim or any other action based upon, or arising out of or in connection with the Company's engagement of MAEVA or any services rendered pursuant to this Engagement, or (b) seek to consolidate any such action with any other action in which a jury trial cannot be or has not been waived. The provisions of this paragraph have been fully discussed by you and us and these provisions shall be subject to no exceptions. Neither the Company nor MAEVA has agreed with or represented that the provisions of this section will not be fully enforced in all instances.

17. Each of Company and us hereby irrevocably and unconditionally (a) submits itself and its properties in any legal action or proceedings relating to this Agreement for the Engagement or any services rendered pursuant to this Agreement, to the non-exclusive general jurisdiction of the Courts of the State of New York, the Courts of the United States of America for the Southern District of New York, and appellate courts from any thereof; (b) consents that any such action or proceedings may be brought in such courts and waives any objection that it may now or hereafter have the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same; (c) agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction; (d) waives, to the maximum extent not prohibited by law, any right it may have to claim or recover in any legal action or proceeding referred to in this paragraph any special, exemplary or punitive or consequential damages; and (f) additionally the Company agrees that, except for claims that may be covered by one or more of our liability insurance policies, under no circumstances shall we be liable for any claims or damages that exceed the aggregate amount of fees paid by the Company to MAEVA pursuant to this Engagement, in the absence of our or any of our Related Persons' fraud, gross negligence or willful misconduct or a breach by us of the Confidentiality Agreement.

18. Notwithstanding anything to the contrary contained herein, upon completion and if you make public disclosure of the Project, then we shall have the right to disclose the successful completion of our services on the Project in an advertisement describing our services placed, at our own expense, in financial and other newspapers or otherwise, after review and approval thereof by you, which approval shall not be unreasonably withheld, conditioned or delayed.

19. You and we acknowledge that each had the opportunity to consult with counsel regarding the terms of this Agreement, and neither party to this Agreement stands in a superior position to the other with respect to the services to be provided hereunder or any transactions contemplated by this Agreement.

20. If this Agreement expires or if you terminate this Agreement or our Engagement, you will not be responsible for fees that accrue after the date of termination or expiration, other than any remaining Minimum Retainer Fees or any amount accrued and payable pursuant to paragraph 14(b) (unless you terminated as a result of our fraud, gross negligence or willful

6

misconduct, in which case you will not be responsible for any Minimum Retainer Fees or any amount otherwise payable pursuant to paragraph 14(b)) and Expenses related to any requirement to testify at any administrative or judicial proceeding related to this engagement or the Project.

21.     This Agreement and Schedule A hereto (a) constitute the entire agreement of the parties with respect to the subject matter hereof and supersede any other communications, understandings or agreements (both written and oral) between the parties with respect to the subject matter hereof, and (b) may be modified, amended or supplemented only by written agreement between both parties hereto.   This Agreement does not amend in any way the Confidentiality Agreement, which shall survive the execution and delivery of this Agreement by the parties hereto.

22.     This Agreement may be executed in two or more counterparts, including by electronic means, both of which together shall be considered a single instrument.

23.     In the performance of our services hereunder, we acknowledge that we are an independent contractor and neither we nor our Related Persons shall be deemed employees of the Company.   We acknowledge that we have no authority to enter into any contract on behalf of the Company or otherwise to bind the Company to any obligation and we agree not to hold us out to any person as having any such authority.

24.     MAEVA shall make no public statement about this engagement or any Project (except as specifically permitted in this Agreement) without your prior written consent.

25.     The Company shall have no obligation to negotiate, pursue or complete the Project or execute any transaction or Restructuring.

26.     MAEVA will provide the services in a diligent, trustworthy and businesslike manner and in accordance with all applicable laws and governmental regulations.   Without limiting the generality of the foregoing covenant, we agree to provide services pursuant to this engagement in strict compliance with the Foreign Corrupt Practices Act of 1997, as amended from time to time (the *FCPA*), the Bribery Act 2010 (the *Bribery Act*) and any other law, regulation, order, decree or directive of any jurisdiction relevant to the Company having the force of law and relating to bribery, kick-backs, or similar business practices.   Specifically, we shall not, and shall procure that any person acting on our behalf with respect to the Project does not (i) offer, promise or give any financial or other advantage to any person with the intention of influencing a person (who need not be the recipient of the advantage) to perform his or her function improperly, or where the acceptance of such advantage would itself be, or might be seen to be, improper; or (ii) offer, promise or give any financial or other advantage to a foreign public official (or to any other person at the request of, or with the acquiescence of, a foreign public official) with the intention of influencing that official in the performance of his or her public functions, in either case with a view to obtaining or retaining business or any form of commercial advantage for the Company or any of its affiliates.   For the avoidance of doubt, the prohibitions above apply to the offer, promise or making of any facilitation payments.

7

It is our intention to work closely with you and to discuss our Engagement regularly. This should facilitate our progress and serve to confirm or modify the scope of our Engagement on an ongoing basis.

We look forward to working with you on this matter. Please sign and return a copy of this Agreement signifying your agreement with the terms and provisions herein. If you have any questions, please call Harry Wilson at (914) 219-4660.

Respectfully submitted,

MAEVA Group, LLC

By:_____

Harry J. Wilson
Founder and Chief Executive Officer

Accepted and Agreed

Armstrong Energy, Inc.

By: _____

Martin D. Wilson
President and Chief Executive Officer

8

It is our intention to work closely with you and to discuss our Engagement regularly. This should facilitate our progress and serve to confirm or modify the scope of our Engagement on an ongoing basis.

We look forward to working with you on this matter. Please sign and return a copy of this Agreement signifying your agreement with the terms and provisions herein. If you have any questions, please call Harry Wilson at (914) 219-4660.

Respectfully submitted,

MAEVA Group, LLC

By: _____

Harry J. Wilson
Founder and Chief Executive Officer

Accepted and Agreed

Armstrong Energy, Inc.

By: _____

Martin D. Wilson
President and Chief Executive Officer

## SCHEDULE A

This Schedule is attached to, and constitutes a material part of, that certain agreement (the *Agreement*) dated as of May 3 R & , 2016 between MAEVA Group, LLC (*MAEVA*) and Armstrong Energy, Inc. (the *Company*). Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

As a material part of the consideration for the agreement of MAEVA to furnish its services under the Agreement, the Company agrees (i) to indemnify and hold harmless MAEVA and its affiliates, and their respective past, present and future Related Persons, advisors, subcontractors and controlling persons (each an *Indemnified Party*), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, (A) arising out of or based upon any untrue statement or alleged untrue statement of any material fact contained in the materials or any other information (whether written or oral) supplied to any third party by or on behalf of the Company or the omission or alleged omission to state therein a material fact required to be stated therein or necessary in order to make the statements therein not misleading, or (B) any actions taken or omitted to be taken by the Company or an Indemnified Party with the consent of the Company in connection with the Agreement, or otherwise arising out of or relating to MAEVA's engagement under the Agreement, and (ii) to reimburse each Indemnified Party for all reasonable, out-of-pocket expenses (including without limitation the reasonable fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including without limitation any shareholder or derivative action), arising out of or relating to the Agreement, or such engagement, transaction or actions; provided, however, that the Company shall not be liable for any loss, claim, damage or liability (i) that relates to a dispute solely between or among one or more Indemnified Parties or (ii) which is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the fraud, willful misconduct or gross negligence by or of any Indemnified Party. In the event of such a judicial determination, then MAEVA shall promptly reimburse the Company for any out-of-pocket expenses advanced to MAEVA or any other Indemnified Party pursuant to this paragraph.

The Company may assume the defense of any litigation or proceeding in respect of which an indemnity obligation arises from Company to an Indemnified Party hereunder, including the employment of counsel and experts reasonably satisfactory to MAEVA and the payment of the fees and expenses of such counsel and experts, in which event, except as provided below, the Company shall not be liable for the fees and expenses of any other counsel or expert retained by any Indemnified Party in connection with such litigation or proceeding. In any such litigation or proceeding the defense of which the Company shall have so assumed, any Indemnified Party shall have the right to participate in such litigation or proceeding and to retain its own counsel and experts, but the fees and expenses of such counsel and experts shall be at the expense of such Indemnified Party unless (i) the Company and such Indemnified Party shall have mutually agreed in writing to the retention of such counsel or experts, (ii) the Company shall have failed in a timely manner to assume the defense and employ counsel or experts reasonably satisfactory to MAEVA, in its sole discretion, in such litigation or proceeding, or (iii) the named parties to any such litigation or proceeding (including any impleaded parties) include the Company and such

1

Indemnified Party and representation of the Company and any Indemnified Party by the same counsel or experts would, in the reasonable opinion of MAEVA, be inappropriate due to actual or potential differing interests between the Company and any such Indemnified Party; provided, however, that the Company shall be responsible only for the payment of the reasonable fees and reasonable out-of-pocket expenses of one law firm and one local counsel for all Indemnified Parties. Promptly after receipt by an Indemnified Party of notice of any litigation or proceeding in respect of which indemnity may be sought hereunder, such Indemnified Party shall notify the Company of such litigation or proceeding and the Company shall have 30 days (or such longer period as MAEVA and the Company may agree) to assume the defense thereof.

If for any reason the foregoing indemnification or reimbursement is unavailable to any Indemnified Party or insufficient fully to indemnify any such party or to hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in such indemnification or reimbursement provisions (in each case other than as a result of fraud, willful misconduct or gross negligence by or of such Indemnified Party), then the Company shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received by the Company, on the one hand, and MAEVA, on the other hand, in connection with the matters contemplated by the Agreement. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Company shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Company, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, except as may be covered by one or more of Indemnified Parties' liability insurance policies, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by MAEVA from the Company pursuant to the Agreement. Relative benefits to the Company, on the one hand, and MAEVA, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Company, and its security holders, creditors, and other affiliates, as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by MAEVA under the Agreement. Neither the Company nor MAEVA shall settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification may be sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto), unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to MAEVA (or the Company has acknowledged in writing that all liabilities of MAEVA relating thereto will be indemnified by the Company in accordance with this Schedule) or a release of the Company reasonably satisfactory in form and substance to the Company, as the case may be.

The Company further agrees that neither MAEVA nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Company or any person or entity asserting claims on behalf of or in light of the Company related to or arising out of MAEVA's engagement under the Agreement, any transaction or proposed transaction, or any actions taken or omitted to be taken by an Indemnified Party or the Company

2

in connection with the Agreement, except for losses, claims, damages or liabilities incurred by the Company which are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the fraud, willful misconduct or gross negligence by or of any Indemnified Party. Nothing set forth herein is meant to limit any rights or remedies under the Confidentiality Agreement. The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein (i) shall apply to any services provided by MAEVA in connection with this engagement prior to the date hereof and to any modifications of the Agreement, (ii) shall be in addition to any obligation or liability which the Company may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of the Company or any Indemnified Party or any person controlling any of them, and (iv) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, the Agreement.

# FIRST AMENDMENT TO THE ADVISORY AGREEMENT

This First Amendment to the Advisory Agreement (this "<u>Amendment</u>") is made and entered into as of October 31, 2017 by and among Armstrong Energy, Inc. (together with certain of its subsidiaries, the "<u>Company</u>") and MAEVA Group, LLC ("<u>MAEVA</u>").  The Company and MAEVA are referred to herein as a "<u>Party</u>" and collectively are referred to herein as the "<u>Parties</u>."

WHEREAS, reference is made to that certain Advisory Agreement, made and entered into as of May 3, 2016 by and between the Parties (as amended, modified and supplemented and in effect from time to time, the "<u>Engagement Letter</u>"); and

WHEREAS, the Parties now desire to amend the Engagement Letter;

NOW THEREFORE, the Parties hereby amend the Engagement Letter as follows:

1.      <u>Definitions</u>.  All capitalized terms used, but not otherwise defined, herein, including in the introductory and recital paragraphs above, shall have the meanings assigned thereto in the Engagement Letter.  References in the Engagement Letter (including references in the Engagement Letter as amended hereby) to "this Agreement" (and indirect references such as "hereunder", "hereby", "herein", and "hereof") shall be deemed to be references to the Engagement Letter as amended hereby.

2.      <u>Amendment to Engagement Letter</u>.  Paragraph 14(d) of the Engagement Letter is hereby amended by deleting such section and replacing such section in its entirety with the following:

"We will receive a separate fee (the *Completion Fee*) of $3,250,000 upon the completion of any transaction or series of transactions resulting from the Project consummated during the Term (collectively, a *Restructuring*).  We will provide monthly credits against the Completion Fee, beginning after the first six months of our engagement, at the rate of 50 percent of the Retainer Fee; *provided* that such credits shall not in any circumstances exceed $1,250,000 in the aggregate.  For purposes of this subsection 14(d), a Restructuring shall be deemed to have successfully occurred if the Company enters into one or more transactions, approved by the Company's Board of Directors, relating to the Project, so long as such transaction or series of transactions results in at least a substantial portion of the Company's business continuing as a going concern whether through one or more sale transactions or through confirmation of a chapter 11 plan or otherwise, and regardless of whether such transaction or series of transactions is followed by a wind down or liquidation process, and shall not, for the avoidance of doubt, include a wholesale or piecemeal liquidation of the Company's assets in which all or substantially all of the assets are not operated as going concerns.  Such Completion Fee shall be payable at the closing of the Restructuring.  Except as set forth in subsection 14(f), in the event that this Agreement terminates or expires without the occurrence of a successful Restructuring, no Completion Fee shall be due."

3.　　Effectiveness.　This Amendment shall become effective on and as of the first date on which executed counterparts of this Amendment shall have been delivered to each Party hereto, which for the avoidance of doubt, such effective date is October 31, 2017.

4.　　Miscellaneous.　The amendment provided in Section 2 hereof shall be applicable solely with respect to those matters expressly provided therein and no other amendments may be construed or implied.　Except as expressly provided herein, the Engagement Letter is and shall remain unchanged and nothing contained in this Amendment shall abrogate, prejudice, diminish or otherwise affect any powers, right, remedies or obligations of any Person arising before the date of this Amendment.

5.　　Governing Law.　THIS AMENDMENT SHALL BE GOVERNED BY AND CONSTRUED, ENFORCED AND PERFORMED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW.

6.　　Counterparts.　This Agreement may be signed in one or more counterparts (including by means of facsimile or PDF signature pages), each of which need not contain the signature of all Parties hereto, and all of such counterparts taken together shall constitute a single agreement.

[*Signature pages follow*]

IN WITNESS WHEREOF, the Company has executed this Amendment as of the date and year first set forth above.

ARMSTRONG ENERGY, INC.

By: _____

Name: J. Hord Armstrong, III

Title:  Executive Chairman

ACKNOWLEDGED AND AGREED:

MAEVA Group, LLC

By:_____
     Name: Harry J. Wilson
     Title:  President and Chief Executive Officer

## EXHIBIT B

## Wilson Declaration

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 17-47541-659 |
|  | ) | CHAPTER 11 |
| ARMSTRONG ENERGY, INC., *et al.*,[1] | ) |  |
|  | ) | (Joint Administration Requested) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

## DECLARATION OF HARRY J. WILSON IN
## SUPPORT OF THE DEBTORS' APPLICATION FOR
## ENTRY OF AN ORDER (I) AUTHORIZING THE EMPLOYMENT AND
## RETENTION OF MAEVA GROUP, LLC AS FINANCIAL ADVISOR FOR
## THE DEBTORS AND DEBTORS IN POSSESSION, *NUNC PRO TUNC*
## TO THE PETITION DATE, (II) WAIVING CERTAIN INFORMATION
## DISCLOSURE REQUIREMENTS, AND (III) GRANTING RELATED RELIEF

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Harry J. Wilson declares as follows:

1.    I am the Chief Executive Officer of MAEVA Group, LLC ("MAEVA"), which has its principal office at 7 Renaissance Square, 3rd Floor, White Plains, NY 10601.  I am authorized to execute this declaration on behalf of MAEVA.  Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein.[2]

2.    This declaration is being submitted in connection with the proposed employment and retention of MAEVA as financial advisor to the above-captioned debtors and debtors in

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Armstrong Energy, Inc. (5664); Armstrong Air, LLC (2017); Armstrong Coal Company, Inc. (0349); Armstrong Coal Sales, LLC (4058); Armstrong Energy Holdings, Inc. (5664); Armstrong Logistics Services, LLC (0392); Thoroughfare Mining, LLC (7890); Western Diamond LLC (9356); Western Land Company, LLC (9821).  The location of the Debtors' service address is:  7733 Forsyth Boulevard, Suite 1625, St. Louis, Missouri 63105.

[2] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at MAEVA and are based on information provided by them.

possession (collectively, the "<u>Debtors</u>") to perform services as set forth in the *Debtors'*
*Application For Entry of an Order (I) Authorizing The Employment And Retention Of MAEVA*
*Group, LLC As Financial Advisor For The Debtors And Debtors In Possession, Nunc Pro Tunc*
*To The Petition Date, (II) Waiving Certain Information Disclosure Requirements, and*
*(III) Granting Related Relief* (the "<u>Application</u>").[3]  I submit this Declaration in compliance with
sections 105, 327, 328 and 1107(a) of the Bankruptcy Code and to provide the disclosure
required under Rule 2014(a), 2016 and 5002 of the Bankruptcy Rules and Rules 2014 and 2016
of the Local Bankruptcy Rules.

**<u>MAEVA's Qualifications</u>**

3.      MAEVA has extensive experience and an excellent reputation in providing high-
quality advisory services to companies and key stakeholders in companies undergoing
restructurings.  In addition, MAEVA has a substantial understanding of the Debtors' business
from having advised the Debtors since May 3, 2016 on strategic alternatives.

4.      MAEVA specializes in turnaround consulting and debtor advisory services and
they regularly assist in the development of operational and strategic plans for distressed
companies.  MAEVA's debtor advisory services have included a wide range of activities targeted
at improving the financial positions of companies, including developing strategic, tactical and
operational initiatives to maximize enterprise value.  I have spent most of the past twenty-four
years investing in or advising financially and/or operationally distressed companies and, among
other notable roles, served as one of the leaders of the Auto Task Force, which was responsible
for the United States Department of the Treasury's role in the restructuring of General Motors

---

[3] Any initially capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in,
as applicable, the Application or the Engagement Letter.

and Chrysler.  MAEVA has extensive experience in advising management teams and key stakeholders in several recent bankruptcies and out of court restructurings, including YRC Worldwide, Inc., True Religion Apparel, Inc., Hostess Brands, Inc., RadioShack Corporation and Global Aviation Holdings Inc.

5.      In light of the size and complexity of these chapter 11 cases, the capabilities and experience of MAEVA in advising the Debtors are crucial to the success of the Debtors' chapter 11 strategies.  An experienced financial advisor, such as MAEVA, fulfills a critical need that complements the services offered by the Debtors' other professionals.

6.      During the term of MAEVA's prepetition engagement, their work focused primarily on: (a) exploring a broad range of capital structure alternatives; (b) assisting management with the preparation of a substantially revised operating and business plan, including extensive due diligence and support for both management and Knight Hawk Holdings, LLC ("Knight Hawk"); assisting the Debtors' in preparing their chapter 11 plan; (d) working with senior management to prepare hundreds of financial, legal and operational documents to be placed in the Debtors' data room; (e) analyzing the Debtors' liquidity and cash flow projections and identifying opportunities for improvement; (f) initiating and leading a wide range of potential strategic alternatives, including negotiations with several potential strategic partners; (g) working with the Debtors' secured noteholders, the Debtors' primary equity holder, Knight Hawk, and Thoroughbred Resources, L.P. (on behalf of itself and its affiliates, "Thoroughbred") in negotiating the terms of the transaction that serves as the foundation for the Debtors' restructuring, including negotiating all material terms related to the amended mineral right agreement with Thoroughbred; and (h) working with the Debtors, Debtors' counsel, and the noteholders and their advisors in the extensive preparations for the chapter 11 cases.

7.     In providing these and other prepetition professional services to the Debtors, MAEVA has acquired significant knowledge of the Debtors and their businesses and is intimately familiar with the Debtors' financial affairs, debt structure, business operations, key stakeholders, financing documents and other related material information.  In providing prepetition services to the Debtors, MAEVA has worked closely with the Debtors' senior management and their other advisors and has familiarity with the other major stakeholders that will be involved in these chapter 11 cases.  Accordingly, MAEVA is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

8.     All of the services that MAEVA has provided and will provide to the Debtors will be undertaken at the request of the Debtors and will be appropriately directed by the Debtors so as to avoid any duplication of services that other professionals will be providing to the Debtors in these chapter 11 cases.  Specifically, MAEVA will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

## Professional Compensation and Fee Applications

9.     In consideration of the services to be provided by MAEVA, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to pay MAEVA the proposed compensation set forth in the Engagement Letter (the "Fee and Expense Structure"):[4]

---

[4] This summary is presented for convenience purposes only.  The terms set forth in the Engagement Letter are controlling in all respects.  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Engagement Letter.

a. *Retainer Fee:* The Debtors shall pay MAEVA a monthly retainer of $175,000 (the "<u>Retainer Fee</u>") payable by cash, check, electronic transfer, or other instrument in immediately available U.S. funds. The Retainer Fee is payable on the second business day following the Effective Date, on on the first business day of each calendar month thereafter during the term of MAEVA's engagement. In no event shall the aggregate Retainer Fees payable to MAEVA pursuant to the Engagement Letter be less than $500,000 (the "<u>Minimum Retainer Fee</u>"), notwithstanding ay expiration or termination of the Engagement Letter, unless the Engagement Letter is terminated by the Debtors as a result of MAEVA's fraud, gross negligence, willful misconduct or material breach of the confidentiality agreement entered into by MAEVA and the Debtors.

b. *Completion Fee*: The Debtors shall pay MAEVA a separate fee (the "<u>Completion Fee</u>") upon completion of any transaction or series of transactions resulting from the Project consummated during the Term (collectively, a "<u>Restructuring</u>"), in an amount in cash equal to $3,250,000. MAEVA will provide credits against its completion fee, beginning after the first six months of its engagement, at the rate of 50 percent of its Retainer Fee. These credits will be capped at $1,250,000.

c. *Discretionary Fee*: MAEVA is eligible for an additional fee above and beyond the Completion Fee, based on extraordinary performance (the "<u>Discretionary Fee</u>"). Whether a Discretionary Fee is paid at all, and, if so, the amount, is solely subject to the discretion of the board of directors of the Debtors. MAEVA is not guaranteed a Discretionary Fee.

d. *Expenses*: The Debtors shall reimburse MAEVA for all reasonable and actual documented out-of-pocket expenses associated with the engagement. The Debtors shall maintain a $25,000 deposit (the "<u>Expense Deposit</u>") with MAEVA to cover any unpaid expenses.

10. MAEVA believes that the Fee and Expense Structure is both reasonable and market-based. To induce MAEVA to do business with the Debtors, the Fee and Expense Structure was established to reflect the difficulty of the extensive assignments MAEVA has undertaken and expects to undertake and to account for the potential for an unfavorable outcome resulting from factors outside of MAEVA's control.

11. The Fee and Expense Structure is comparable to compensation generally charged by financial advisors and investment bankers of similar stature to MAEVA for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed,

monthly fee and a contingency amount, which are tied to the consummation and closing of the transactions and services contemplated by the Debtors and MAEVA in the Engagement Letter.

12.     The Fee and Expense Structure is consistent with MAEVA's normal and customary billing practices for comparably sized and complex cases and transactions, both in- and out-of-court, involving the services to be provided in connection with these chapter 11 cases. Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by MAEVA and other financial advisors and investment banks in connection with the rendering of comparable services to clients such as the Debtors.

13.     In addition, the Fee and Expense Structure was agreed upon by the parties on an arm's-length basis in anticipation that a substantial commitment of professional time and effort would be required of MAEVA and its professionals hereunder, that such commitment may foreclose other opportunities for MAEVA, and that the actual time and commitment required of MAEVA and its professionals to perform its services hereunder may vary substantially from week to week and month to month.

14.     Accordingly, if the Application is granted, MAEVA requests to file interim applications for the allowance of compensation for services rendered and to receive monthly payment from Debtors for reimbursement of fees and expenses incurred in accordance with Local Rule 2016-2(B) and any other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable orders of this Court.

15.     In light of the foregoing, and given the numerous issues that MAEVA may be required to address in the performance of its services hereunder, MAEVA's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for MAEVA's services for engagements of this nature both out-of-court and in a chapter 11

context, MAEVA believes that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth by the Bankruptcy Code.

16.     MAEVA has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

## Record Keeping and Applications for Compensation

17.     It is not the general practice of MAEVA to keep detailed time records similar to those customarily kept by attorneys.   Because MAEVA does not ordinarily maintain contemporaneous time records in one-tenth hour (0.10) increments or provide or conform to a schedule of hourly rates for its professionals, MAEVA is seeking a waiver, pursuant to Local Bankruptcy Rule 2016-2(h), to be excused from compliance with such requirements.

18.     MAEVA will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.   MAEVA's applications for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Letter, in accordance with Local Bankruptcy Rule 2016 and any procedures established by the Court.

## Payments to MAEVA Prior to the Petition Date

19.     During the one-year period prior to the commencement of these chapter 11 cases, MAEVA has received $2,100,000.00 from the Debtors for professional fees and an additional $12,495.33 in expense reimbursements incurred prior to the Petition Date.   During the 90 days immediately preceding the Petition Date (dating back to August 1 2017), MAEVA received fee payments totaling $525,000.00 and an additional $4,515.88 in expense reimbursements, and continues to hold a $350,000.00 retainer for the payment of its fee for the months of November

and December 2017. Other than as set forth herein, MAEVA did not receive any payments from the Debtors during the 90 days immediately preceding the Petition Date.

20. The unapplied Expense Deposit, which is estimated to total approximately $25,000.00, will not be segregated by MAEVA in a separate account, and will be held until the end of these chapter 11 cases and applied to any unpaid expenses at the conclusion of these proceedings.

21. As of the Petition Date, the Debtors do not owe MAEVA for any fees or expenses incurred prior to the Petition Date.

## **Indemnification**

22. The Debtors have agreed to the Indemnification Provisions, as modified by the Order requested by this Application. The Indemnification Provisions reflected in the Engagement Letter are customary and reasonable terms of consideration of financial advisors such as MAEVA for proceedings both out-of-court and in chapter 11. The terms of the Engagement Letter, including the Indemnification Provisions, were fully negotiated between the Debtors and MAEVA at arm's-length. MAEVA respectfully submits that the Indemnification Provisions, as modified by the Order requested by the Application, are reasonable.

## **MAEVA's Disinterestedness**

23. In connection with its proposed retention by the Debtors in these chapter 11 cases, MAEVA undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Specifically, MAEVA obtained from the Debtors and/or their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases ("Potential Parties in Interest"), and such parties are listed on **Exhibit 1** attached hereto.

24.     To the best of my knowledge and belief, MAEVA has not represented any Potential Parties in Interest in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships to, the Debtors in matters relating to these chapter 11 cases except as set forth herein and in **Exhibit 2** attached hereto.

25.     To the best of my knowledge, no individual assignment described in **Exhibit 2** accounts for more than 2 percent of MAEVA's gross annual revenue.

26.     MAEVA provides financial advisory services to an array of clients in the areas of restructuring and distressed debt. As a result, MAEVA has represented, and may in the future represent, certain Potential Parties in Interest in matters unrelated to these chapter 11 cases, either individually or as part of representation of a committee of creditors or interest holders. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, none of these representations are adverse to the Debtors' interests.

27.     To the best of my knowledge and belief, neither MAEVA nor I, nor any other employee of MAEVA that will work on the Debtors' engagement, has any connection with or holds any interest adverse to the Debtors, their estates or the Potential Parties in Interest, except (i) as set forth in **Exhibit 2** and (ii) as otherwise set forth below:

> (a)     Before the commencement of these cases, MAEVA rendered prepetition services to the Debtors. As noted above, although MAEVA's records indicate that it is not owed any amounts in respect of prepetition services provided to the Debtors, it is possible that certain expenses that were incurred by MAEVA, and that are reimbursable under the terms of the Engagement Letter, were not yet reflected on MAEVA's books and records as of the Petition Date. Upon entry of the Order approving the Application, MAEVA will waive any claim for such unreimbursed expenses in excess of amounts paid to MAEVA pre-petition.
>
> (b)     MAEVA may have provided services unrelated to the Debtors for companies and individuals that have conducted business in the past and/or currently conduct business with the Debtors, and who may be creditors of

the Debtors.  To the best of my knowledge, information and belief, MAEVA's services to these parties were and are wholly unrelated to the Debtors, their estates or these chapter 11 cases.

(c)     As part of its practice, MAEVA may appear in numerous cases, proceedings and transactions involving many different professionals, some of which may represent claimants and parties in interest in the Debtors' chapter 11 cases.  Furthermore, MAEVA has in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to these cases.  Based on my current knowledge of the professionals involved, and to the best of my knowledge and information, none of these business relationships represents an interest materially adverse to the Debtors herein in matters upon which MAEVA is to be engaged.

28.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, MAEVA has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these chapter 11 cases. MAEVA will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or interested parties in these chapter 11 cases; *provided* that such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

29.     I am not related or connected to and, to the best of my knowledge, no other professional of MAEVA who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the Eastern District of Missouri or any employee in the Office of the United States Trustee for the Eastern District of Missouri.

30.     To the best of my knowledge, MAEVA has no agreement with any other entity to share with such entity any compensation received by MAEVA in connection with the Debtors' bankruptcy cases.

31.     Accordingly, except as otherwise set forth herein, insofar as I have been able to determine, none of MAEVA, I, nor any employee of MAEVA who will work on the engagement

holds or represents any interest adverse to the Debtors or their estates, and MAEVA is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by section 1107(b), in that MAEVA, and its professionals and employees who will work on the engagement:

    (a) are not creditors, equity security holders, or insiders of the Debtors;

    (b) were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer or employee of the Debtors; and

    (c) do not have an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

32.    If MAEVA discovers additional information that requires disclosure, MAEVA promptly will file a supplemental disclosure with the Court as required by Bankruptcy Rule 2014.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 1, 2017                    By: _/s/ Harry J. Wilson_____
.                                                 Harry J. Wilson
                                                  Founder and CEO
                                                  MAEVA Group, LLC
                                                  7 Renaissance Square
                                                  White Plains, NY 10601

# EXHIBIT 1

## Potential Parties in Interest

| Exhibit | Category |
|---------|----------|
| 1(a) | Current and Recent Former Entities Affiliated with the Debtors |
| 1(b) | Current and Recent Former Directors and Officers |
| 1(c) | Bondholders |
| 1(d) | Counterparties to Significant Executory Contracts |
| 1(e) | Counterparties to Significant Leases |
| 1(f) | Current and Potential Litigation Counterparties |
| 1(g) | Indenture Trustee |
| 1(h) | Insurers |
| 1(i) | Landlords |
| 1(j) | Largest Customers |
| 1(k) | Potential Lien Claimants |
| 1(l) | Professionals |
| 1(m) | Regulatory Authorities |
| 1(n) | Royalty Payment Recipients |
| 1(o) | Shareholders |
| 1(p) | Taxing Authorities |
| 1(q) | U.S. Trustee, Judges, and Court Contacts for the Eastern District of Missouri (and key staff members) |
| 1(r) | Utilities |
| 1(s) | Vendors |

# EXHIBIT 1(a)

## Current and Recent Former Entities Affiliated with the Debtors

Armstrong Air, LLC
Armstrong Coal Company, Inc.
Armstrong Coal Sales, LLC
Armstrong Energy Holdings, Inc.
Armstrong Fabricators, Inc.
Armstrong Logistics Services, LLC
Ceralvo Holdings, LLC
Elk Creek GP, LLC
Elk Creek Operating GP, LLC
Elk Creek Operating, LP
MG Midstreaming, LLC
Ram Terminals, LLC
Terminal Holdings, LLC
Thoroughbred Resources, LP
Thoroughfare Mining, LLC
Western Diamond LLC
Western Land Company, LLC
Western Mineral Development, LLC

# EXHIBIT 1(b)

## Current and Recent Former Directors and Officers

Anderson, Adam D.
Armstrong, J. Hord, III
Craig, Richard L.
Crain, James C.
Harris, David L.
Keenan, W. Howard
Lawrence, Bryan R.
Stopper, Joseph M.
Susman, Louis B.
Walker, Greg A.
Waller, Eric R.
Wilson, Martin D.
Winnick, Jeffrey F.

# EXHIBIT 1(c)

## **Bondholders**

Anson
Bank of Nova Scotia
Blue Mountain
Caspian
Cedarview
First Western
Goldentree
Guardian Capital Group
Legg Mason Inc.
Marathon
Marathon CLO Ltd.
New Generation
Nuveen
Panning
Phoenix
Telemetry
TIAA
TIAA-CREF
Wamco

# EXHIBIT 1(d)

## Counterparties to Significant Executory Contracts

Aero Charter Inc.
Atlas Copco Customer Finance USA LLC
Banc of America Leasing & Capital LLC
Bank of America Leasing & Capital LLC
Brandeis Machinery & Supply Co.
Caterpillar Financial Services Corp.
Deutsche Leasing USA Inc.
Edmonson Fuels LLC
General Electric Capital Corp.
Joy Global Underground Mining LLC
Kentucky Utilities Co.
Komatsu Financial LP
Louisville Gas & Electric Co.
Macquarie Corporate & Asset Funding Inc.
Sumner, Douglas P.
UGM ADDCAR Systems LLC
Workiva Inc.

# EXHIBIT 1(e)

## Counterparties to Significant Leases

Banc of America Leasing & Capital LLC
KBS II Pierre Laclede Center LLC
Mueller Prost LC
Norton Lilly International Inc.

# EXHIBIT 1(f)

## Current and Potential Litigation Counterparties

Anderson, Tommy
Arnold, Dwight
Baize, Rickey
Ball, Barry
Ball, Bruce
Barber, Eddie
Baxter, Barry
Baxter, Barry D.
Bearden, Jeremy
Billy Jernigan
Bivins, Terry
Bratcher, Aaron D.
Bratcher, Jenny
Bratcher, Roy Daniel
Brothers, Richard
Brown, Brandon
Brown, Randy
Bush, Charles
Campbell, Steven A.
Carter Smith, Sharon K.
Carter, Carol B.
Carter, Charles Edward
Carter, Debra H.
Carter, Jenscinna A.
Carter, William D.
Coals, Delta
Cobb, David
Coomer, Leslie R.
Coomer, Stephen L.
Couch, Lonnie
Crook, Bobby
Demond, Erik
Dinsmore, Ronnie
Doss, Gordon Wayne
Drake, Lamont
Duff, Charles
Fooks, David M.
Franklin, James
Gibson, Thomas
Goff, Danny
Grubb, Joseph
Henderson, Gilbert, Jr.

Hoskins, Tony
Ipox, Earl Ray
Jarvis, Mitchell Ray
Jernigan, Billy
King, Donald
Kirk, Andrea
Lear, Jamie
Lee, Lawrence
Lewis, George W.
Lewis, Ruth Jean
Lewis, Shannon
Loney, Neely E.
Martin, William Ray
Mason, Mark
Matheny, William
Messamore, Gregory
Mine Safety & Health Administration
Mitchell, Everett W., Jr.
Mitchell, Marvin
Morgan, Donald
Morgan, Donnie
Oller, Phillip
Peveler, Troy
Piper, Brian
Pressley, Danny
Qualls, Terri
Rich, Tate
Richard Brothers
Riley, Daniel
Robinson, John
Robinson, Richard
Robison, Barbara
Robison, Robert
Roop, Dennis
Sailing, Jackie Glenn
Sexton, Bobby
Shemwell, Brandon
Shemwell, Reuben Wayne
Simpson, Michael
Skinner, Willie
Smiley, David A.
Smith, Mark

Smith, Sharon K. Carter
United States, Government of the, Department of Labor, Mine Safety & Health Administration
Virgin, Eric
Vncent, Richard
Wallace, Jeffrey
Western Leasing Inc.
Wilson, Larry
Wilson, Michael
Wilson, Pamela

# EXHIBIT 1(g)

## **Indenture Trustee**

Wells Fargo Bank NA

# EXHIBIT 1(h)

## Insurers

American Guarantee & Liability Insurance Co.
American Zurich Insurance Co.
National Union Fire Insurance Co. of Pittsburgh PA
Old Republic Insurance Co.
QBE Insurance Corp.
Starr Indemnity & Liability Co.
Travelers Property & Casualty Co. of America

# EXHIBIT 1(i)

## **Landlords**

7733 Forsyth Boulevard, Clayton, Missouri 63105

# EXHIBIT 1(j)

## **<u>Largest Customers</u>**

Armstrong Resources Management Corp.
Duke Energy Carolinas LLC
Duke Energy Kentucky Inc.
Louisville Gas & Electric Co.
Owensboro Municipal Utilities
Tampa Electric Co.
United States, Government of the, Tennessee Valley Authority

# EXHIBIT 1(k)

## Potential Lien Claimants

Alliance Exchange Group Inc.
Atlas Copco Construction Mining
    Technique USA
Atlas Copco Customer Finance USA LLC
Bank of America Leasing & Capital LLC
Brandeis Machinery & Supply Co.
Bratcher, Aaron D.
Bratcher, Jenny
Bratcher, Roy Daniel
Carter, Carol B.
Carter, Charles Edward
Carter, Debra H.
Carter, Jenscinna A.
Carter, William D.
Caterpillar Financial Services Corp.
Coomer, Christopher A.
Coomer, Leslie R.
Coomer, Stephen L.
Deere Credit Inc.
Deutsche Leasing USA Inc.
GE Capital Commercial Inc.
General Electric Capital Corp.
General Electric Credit Corp. of Tennessee
Joy Global Underground Mining LLC
Joy Technologies LLC
Komatsu Financial LP
Lewis, Cynthia M.
Lewis, George W.
Lewis, Rachel L.
Lewis, Ruth Jean
Lewis, Shannon Lee
Macquarie Corporate & Asset Funding Inc.
Mining Rock Excavation & Construction
    LLC
Narco
People's Capital & Leasing Corp.
PNC Bank NA
Robison, Barbara
Robison, Robert W.
Rudd Equipment Co.
Signature Financial LLC
Smith, Mark

Smith, Sharon K. Carter
Summit Funding Group Inc.
United States, Government of the,
    Department of the Treasury, Internal
    Revenue Service
VPS US LLC
WebBank
Wells Fargo Bank NA
Wells Fargo Equipment Finance Inc.
Whayne Supply Co.

# EXHIBIT 1(l)

## Professionals

ADP LLC
Advanced Investigative Solutions Inc.
Anthem BlueCross BlueShield
Armstrong Teasdale LLP
Associated Engineers Inc.
Assured Partners of Missouri LLC
AT&T Business Services
AT&T Global Network Services
BDO
Bingham Greenebaum Doll LLP
Buchanan Ingersoll & Rooney PC
Butler Snow LLP
Clay Mason & Associates LLC
Cox & Mazzoli PLLC
Dathorne & Butler LLC
Donlin Recano & Co. Inc.
Dressman Benzinger LaVelle PSC
Drinker Biddle & Reath LLP
Edward D. Jones & Co. LP
Ernst & Young LLP
Furman & Nilsen PLLC
Gordon Law Offices PSC
Hunton & Williams LLP
Illumiti Corp.
Jackson Kelly PLLC
Kaplan & Partners LLP
Lockton Cos. Inc.
Lowenbaum Law
Massachusetts Mutual Life Insurance Co.
McGriff Seibels & Williams Inc.
Miller & Wells PLLC
Nash Marshall PLLC
Netelligent Corp.
OnX Managed Services
Protiviti
Rajkovich Williams Kilpatrick & True PLLC
Steptoe & Johnson PLLC
Stites & Harbison PLLC
Stoll Keenon Ogden PLLC

# EXHIBIT 1(m)

## Regulatory Authorities

Clayton, City of (MO)
Delaware, State of, Secretary of State, Division of Corporations
Hopkins, County of (KY), Clerk
Kentucky, Commonwealth of, Commission on Human Rights
Kentucky, Commonwealth of, Department of Environmental Protection, Division of Water
Kentucky, Commonwealth of, Department of Natural Resources, Division of Mine Reclamation and Enforcement
Kentucky, Commonwealth of, Department of Revenue
Kentucky, Commonwealth of, Division for Air Quality
Kentucky, Commonwealth of, Division of Mine Reclamation & Enforcement
Kentucky, Commonwealth of, Energy & Environment Cabinet, Department of Natural Resources, Division of Mine Permits
Kentucky, Commonwealth of, Energy & Environment Cabinet, Department of Natural Resources, Division of Mine Safety
Kentucky, Commonwealth of, Labor Cabinet, Department of Workers' Claims
Kentucky, Commonwealth of, State Treasurer
Kentucky, Commonwealth of, Transportation Cabinet
Kentucky, Commonwealth of, Worker's Comp Funding Commission
Missouri, State of, Secretary of State
Muhlenberg, County of (KY), Court Clerk
Ohio, County of (KY), Clerk
United States, Government of the, Department of Defense, Army Corps of Engineers
United States, Government of the, Department of Labor, Mine Safety & Health Administration (MSHA)
United States, Government of the, Department of Labor, MSHA - District 10
United States, Government of the, Department of the Interior, Office of Surface Mining Reclamation & Enforcement
United States, Government of the, Employment Opportunity Commission
United States, Government of the, Environmental Protection Agency – Region IV
United States, Government of the, Securities & Exchange Commission

# EXHIBIT 1(n)

## Royalty Payment Recipients

Abel, Allyson S.
Addington, Carl
Addington, Ella Louise
Alcoa Fuels Inc.
Allen Gray LP II
Allen Gray LP III
Allen, Kenneth E.
Anne F. Rogers Family LLC
Armstrong, Elaine
Armstrong, Glenn
Barnard, Joe Michale
Barnes, Joyce M.
Barnes, Kateria C.
Barnes, Lyman P.
Beard, Margret Joyce
Birchwell, Hazel
Bishop, Jerry Carson
Bishop, Zexia Barnes
Bordley Church of Christ
Brantley, Heather
Brantley, Lance W.
Brown, Damien
Brown, Deborah
Brown, James M.
Brown, Ronald C.
Carrier, Richard I.
Carter, Carol B.
Carter, Megan Guard
Carter, Melinda T.
Casebier, Charlotte Ann
Casebier, John B.
Casebier, John T.
Casebier, Nazanin
Casebier, Nola
Casebier, William W., Jr.
Cavendar, Noel Douglas
Cavendar, Rhonda
Central States Coal Reserves of Kentucky
Cobb, David
Cole, Carol Ann
Cole, Heike
Cole, James Vernon, LTC

Cole, William Leon, IV
Collins, Brenda
Craig, Betty
Craig, David C.
Cyprus Creek Land Co.
Cyprus Creek Land Resources LLC
Danks, Clyde Richard
Danks, Glenn W.
Danks, Kelly Richard
Danks, Michael Edgar
Danks, Phillip Andrew
Danks, Ronald A.
Daugherty, Ruby
Daugherty, Stephen N.
Diamond Mineral Group Inc.
Duncan Family Mineral LLC
Elder, Connie
Elder, Kevin
Ellis, Glendle G.
Ellis, Jennie L.
Farris, Dennis Ray
Farthing, Nell Gregory
Fledbusch, Rita
Fowler, Pamela Gabrielle
Fulkerson, Geneva
Fulkerson, Lonnie
Girder, Joe Brent
Gish, Carolyn Gentry
Goodman, Cora L.
Graham, Peggy
Gregory, David
Gregory, Harold
Gregory, James
Gregory, Terry
Grider, Bertha S.
Grider, Dennie Lee
Grider, Joe Brent, Jr.
Grider, John M.
Grider, Shelia
Grinder, Kaitlin M.
Gwenlyn, Jessica
Hageman, Ronica D.

Hartke, Rustin D.
Hartke, Ryan W.
Hartkee, Rhett A.
Heritage Coal Co. LLC
Hocker, Janet
Hocker, John W.
Hocker, Richard L.
Holladay, William A.
Hughes, Felicia Leigh-Ann
JL Rogers Family LLC
Johnson, Barbara A.
Johnson, Stan W.
Johnson, Sue Rogers
Jones, Angela Danielle
Jones, David C.
Jones, James
Jones, Lola
Kelley, Darron
Kelley, Mandy B.
Kelley, Martha J.
Kelley, Morris D., Jr.
King, Karren Sue
Lacefield, Ann Cheryl
Lacefield, Garry Dale
Lewis, George W.
Lewis, Shannon
Lista, Lynn M.
Lista, William W.
Little, Janis
Little, Mark
Luppino, Bradford
Luppino, Miranda
Maddox, Carolyn
Maddox, Jim V.
Martin, Emogene S.
McCrocklin, Judith
McCrocklin, Thomas, Jr.
McVay, Billy
McVay, Brenda Gail
McVay, Brenda Lee
McVay, James
Midwest Coal Reserves of Kentucky LLC
Miller, Bill
Miller, Sue
Moore, Bruce
Moore, Gladys

Neeley, Jimmy
Neeley, Peggy
Paul, William Todd
Peacock, Gary
Peacock, Patty
Pearce, Ann
Pearce, David L.
Pearce, Laurie
Pearce, Walter U.
Photopulos, Katherine Felice
Photopulos, Todd
Potts, Lillian
Potts, Norman Ray
Proctor, Charles W.
Proctor, Kathy
Queen, Micheline L.
Ralph, Joseph L.
Ralph, Rose A.
Richardson, Pamela Gabrielle
Rochefort, Gene
Roe, Joseph Michael
Roe, Josephine
Roe, Sara Kelly
Roe, Warren C.
Rogers, James L., III
Rogers, Mary M.
Russell, Dorothy
Sandberg, Melissa Ann Danks
Scroggins, Daisy Curtis
Simpson, Eddie
Simpson, Patricia
Snodgrass, Betty
Snodgrass, Charles
Snodgrass, Janette
Snodgrass, Larry
Snodgrass, Mary
Snodgrass, Tommy
Speaks, Albert
Speaks, Anna
Staude, Virginia L.
Stenberg, Mary
Stenberg, Timothy
Syzmanski, Conrad
Szymanski, Ruth Ann Hocker
Talmar LLC
Talmar of FL LLC

Taylor, Feb I.
Taylor, Sherry Ann
Terrell, Dianna
Terrell, Lonnie
Thompson, Marjorie
Vardell, Jenna Carter
Westerfield, Amanda
Western Kentucky Royalty Trust
White, Andrea
White, Brooke
White, Janet
White, John
White, Marie
White, Mary Nell
White, Richard
White, Robert
White, Walter
Wilhite, James Louis
Wilhite, Marjorie Pearce
Willett, Dorothy F.
Willett, Thomas Allen
Woods, Brenda
Woods, Dennis
Yarber, Donald L.
Yarber, Shirley J.
Young Manufacturing Co. Inc.

# EXHIBIT 1(o)

## Shareholders

Rhino Resource Partners Holdings LLC
Yorktown Partners LLC

# EXHIBIT 1(p)

## Taxing Authorities

Delaware, State of, Division of Corporations
Hopkins, County of (KY), Sheriff
Kentucky, Commonwealth of, Department for Environmental Protection
Kentucky, Commonwealth of, Department for Natural Resources
Kentucky, Commonwealth of, Department of Revenue
Kentucky, Commonwealth of, Office of the Reclamation Guaranty Fund
Kentucky, Commonwealth of, Workers' Compensation Funding Commission
Missouri, State of, Department of Revenue
Ohio, County of (KY), Sheriff
St. Louis, County of (MO)
Union, County of (KY), Sheriff
United States, Government of the, Department of Labor
United States, Government of the, Internal Revenue Service
United States, Government of the, Office of Surface Mining
Webster, County of (MS), Sheriff

# EXHIBIT 1(q)

## U.S. Trustee, Judges, and Court Contacts for the Eastern District of Missouri (and key staff members)

Randolph, Paul
Rendlen, Charles E., III
Schermer, Barry S.
Surratt-States, Kathy

# EXHIBIT 1(r)

## <u>Utilities</u>

AT&T
AT&T IP Flexible Reach
AT&T Mobility
Atmos Energy Corp.
Centertown, City of (KY)
Charter Communications Inc.
Coleman Brothers Inc.
Employee Expense Reports
Kenergy Corp.
KU
Madisonville, City of (KY), Municipal Utilities
Muhlenberg County Water District (KY)
Union County Water District (KY)

# EXHIBIT 1(s)

## <u>Vendors</u>

A.L. Lee Corp.
Abel, Allyson S.
ABL Services Inc.
Abney Auto Glass
Adams, Tara
ADP Inc.
Advance Feeding Systems Inc.
Advanced Solutions
AERO Charter Inc.
aFORDable Signs
AgriGro Farm Center Inc.
Airgas Mid America
Airgas USA LLC
All Source Industrial Supply Inc.
Allen Gray Ltd. Ptr. III
Allen, Kenneth E.
Allen, Tyler
Amazon.com LLC
Amercable Inc.
American Coal Council
American Electric Equipment Inc.
American Express Co.
American Heritage Life Insurance Co.
American Hydraulics & Rebuild
American Land Holdings of KY LLC
American Printing Co.
American Safety & Health Institute
Anchor Hydraulics
Anderson, Adam
Anixter Inc.
Ann, Charlotte
Ann, William W., Jr.
Anne F. Rogers Family LLC
Anthem
Anthem Life Insurance Co.
Appalachian Citizens Law Center
Applied Industrial Technologies Inc.
Armstrong Coal Co. - Kronos
Armstrong Coal Co. Inc.
Armstrong Coal PAC
Armstrong Resource Management Corp.
Armstrong Teasdale LLP

Armstrong, Elaine
Armstrong, Glenn
Armstrong, J. Hord, III
Ashby, Timothy
Associated Engineers Inc.
Associated Pallets Inc.
Associated Railroad Contractors Inc.
AssuredPartners of Missouri LLC
AT&T
AT&T Business Services
AT&T Global Network Services LLC
AT&T IP Flexible Reach
AT&T Mobility
AT&T TeleConference Services
Atlas Copco Customer Finance USA
Atmos Energy
Auto Electric Repair
Auxier Welding Inc.
Baird, Sonnie
Ball, Bruce L.
Banc of America Leasing
BankDirect Capital Finance
Baptist Health Occupational Med
Barber, Eddie
Barnard, Kristina
Barnes, Joe
Barton Machine Inc.
Baumgart Bit Supply
Bay, Tim
BDO
Beard, Anson
Bearing Headquarters
Beaver Dam Building Supply
Beaver Dam Volunteer Fire Department
Belt Tech Industrial Inc.
Beltramea, Stan
Bennett, James
BF Evans Ford
Big Brothers Big Sisters
Big Red Supply Co. Inc.
Big River Rubber & Gasket Co. Inc.
Bingham Greenebaum Doll LLP

Bishops Grocery
Bivins, Terry
Black Equipment Co. Inc.
Blair Tire Sales
Blue Ribbon Courier Inc.
Blue Ribbon Inc.
Bluegrass Materials Co. LLC
Bluegrass Mine Tool Inc.
BMC Group VDR LLC
Bomgar Corp.
Booth Fire & Safety Inc.
Bowman, Cecil
Boyd & Sons Machinery LLC
Bradford Supply Co.
Brake Supply Co. Inc.
Brandeis Machinery & Supply Co.
Branson, Brittany
Bratcher, Aaron D.
Bratcher, Roy Daniel
Brenntag Midsouth Inc.
Brewer, Seth C.
Brian's Battery LLC
Briles, Darrel E.
Brooks, Chris
Brown's Ramsey Creek Farm
Bruce, John
Buchanan Pump Service & Supply Inc.
Bundy, Jan Douglas
Bundy, Terri G.
Burton, Russell
Bush, Charles
Butler Snow LLP
Butler's True Value
Byler Lumber LLC
C.E. Martin Heirs LLC
Campbell, Steven
Captiva Marketing
Carlson Software Inc.
Carroll Engineering Co.
Carroll, Donald L.
Carter Plumbing & Heating Inc.
Carter, Carol B.
Carter, Megan Guard
Carter, Melinda T.
Carter, William D.
Carter-Smith, Sharon K.

Cartwright, Weston Thad
Casebier, John B.
Casebier, Nola
Catering & Creations
Caterpillar Financial Services
Cayce Mill Supply Co. Inc.
CCH
CDW Direct LLC
Centertown, City of (KY)
Central City Country Club Inc.
Central Maine Diesel IS Inc.
Central Screen Printing Inc.
Centrifugal & Mechanical Industries
Centrifugal Services Inc LLC
Charter Communications
Chase Pump & Equipment Co. Inc.
Cincinnati Mine Machinery Co.
Cintas Corp
Clark, Shane
Clay Machine Works Inc.
Clayton Plaza Hotel
Clayton, City of (MO)
Clayton, Danny F.
Clean Green Porta Potties LLC
Coakley, Mike
Coal Age Inc.
Coal Miners' Respiratory Clinic
Cobb, David
Coleman Brothers Inc
Coles Office Outfitters Inc.
Compton, Gary
Conn-Weld Industries Inc
Consolidated Electrical Distributors Inc.
Construction Machinery Co. LLC
Coomer, Christopher A.
Coomer, Stephen L.
Councill, Bess
Country Cupboard
Cox & Mazzoli PLLC
Craig, Richard L.
Crain, James C.
Crop Production Services Inc. #3
Crowley, Justin
CSE Corp.
CT Corp.
Cuda Tools Inc.

Cummins Crosspoint LLC
Custom Engineering Inc.
D.B. Contracting LLC
D-A Lubricant Co.
DAPCO Inc.
Date Mining Services LLC
Dathorne & Butler LLC
Daugherty Fowler Peregrin Haught
Daugherty, Charles E.
Dean Dorton Allen Ford PLLC
Delaware, State of, Secretary of State
Dell Marketing LP
Delta Dental of Kentucky Inc.
DeShazo Crane Co.
Deutsche Leasing USA Inc.
Diamond Mineral Group LLC
Dingess, Dave
Dortch, Scott
Downey Professional Construction
Doyle Trading Consultants LLC
Dressman Benzinger Lavelle PSC
Drinker Biddle & Reath LLP
Drives & Controls Services Inc.
Duff & Phelps LLC
Dunlap, Matthew
Durall, Wandeta F.
Durham, Jaycee
Dynamic Fabrication Inc.
East, Greg
EBN BV
Edmonson, Larry
Edwards, Cory
EIC Technologies Inc.
Elpers Truck Equipment
Embry, Lawrence E.
EnerSys Delaware Inc.
Enterprise Waste Oil Co. Inc.
ERB Equipment Co. Inc.
Eriez Manufacturing Co. Inc.
Ernst & Young
Estevez, Anthony
EVAPAR
Everly, Jarrod
Faco LLC
Fairmont Supply Co.
Farm Plan Corp.

Farris, Dennis Ray
Farris, Jarrod
FedEx Corp.
Fenner Dunlop
Fiber Instrument Sales Inc.
Fields Custom Embroidery
Fields, Jerry
First Choice Courier
First United Bank
First-Line Fire Extinguisher Co
Fitzhugh, Mickey
Flanders Electric Motor Service Inc.
FLSmidth Krebs Inc.
FLSmidth Salt Lake City Inc.
Fluid Power Services Inc.
Fluid Systems Inc.
Ford, Richard F.
Forestry Suppliers Inc.
Foundation Fighting Blindness
Fox, Barry
Fuchs Lubricants Co.
Fulkerson, Andy
Fulkerson, Danny
Furman & Nilsen PLLC
Furniture Discount Warehouse
G.A. Helfrich
Gauley-Robertson Co.
GCR Tire Centers
GE Transportation Parts LLC
GE-Fairchild LLC
General Mine Contracting Inc.
Getman Corp.
GM Telcom Inc.
GMS Mine Repair Midwest
Gordon Law Offices PSC
Gould Electric Motor
Grace Equipment LLC
Grainger Industrial Supply Co. Inc.
Grant Thornton LLP
Greater Muhlenberg Chamber of
    Commerce, The
Green River Safety Council
Green, David
Greenville Quarries & Qual Blacktop
Greenwell, Justin Neal
Greer, Arian

Grider, Dennie L.
Grider, Joe Brent, Jr.
Grider, Joe Brent, Sr.
Griffin, Randy
Gwenlyn, Jessica
H&G Limestone Products
Hageman, Ronica D.
Hall, Kenneth
Hampton Inn & Suites Madisonville
Hannan Supply Co.
Harris, David L., Jr.
Harris, Doug
Hart Equipment Co. Inc.
Hartford Building & Supply
Hartke, Rhett A.
Hartke, Rustin D.
Hartke, Ryan W.
Haselman, Joanna
Haulers Supply Inc.
Hayes Instrument Co. Inc.
Hearld, Jeff
Heintzmann Corp.
Henderson, Charles F.
Henry's Plumbing Inc.
Heritage Petroleum LLC
Hezel, Julie
Hibbs Electromechanical Inc.
Hicks, Richard
Hill, Janice
Hillyard Inc.
Hilti Inc.
Hoard Custom Signs LLC
Hocker, Janet
Hocker, John W.
Hocker, Richard L.
Hollis, Elissa Sue
Home City Ice Co. Inc.
Home Oil & Gas Co. Inc.
Hopcroft Electric Inc.
Hope, Ron
Hopkins County Heating Air & Electrical
Hopkins, County of (KY), Clerk
Houlihan Lokey Capital Inc.
Howe, Justin
Hughes, Felicia Leigh-Ann
Hunton & Williams LLP

Illumiti Corp.
IMPCO Inc.
Indoff Inc.
Industrial Machine Services Inc.
Industrial Service & Electronics Inc.
Intermountain Electronics Inc.
International Driller's Supply Co.
Iron Mountain Inc.
Irwin Mine & Tunneling Supply
J.L. Rogers Family LLC
JABO Supply Corp.
Jackson Kelly PLLC
Jarvis, Ryan R.
JEM Sales & Service Inc.
Jennchem LLC
Jennmar Corp.
Jenny Bratcher Trust
Jernigan, Billy
Jim David Meats
Jim Whitaker Trucking Inc.
JMS Russell Metal Corp.
Joe Leasure & Sons Inc.
Johnston, Buddy
Jones Septic Service
Jones Septic Service LLC
Jones, Angela D.
Jones, David C.
Jones, Lola
Joy Global Mining LLC
Joy Global Underground Mining LLC
Judge, Joshua
K&E Technical Inc.
K&R Rebuild LLC
K&S Automotive Repair LLC
Kanawha Manufacturing Co.
Kanawha Scales & Systems Inc.
Kane, Stephen
Kaplan & Partners LLP
Karen's Cleaning Services
KBS II Pierre Laclede Center LLC
KCTCS Foundation Inc.
Kenergy
Kennametal Inc. Mining & Construction
Kentucky Athletics
Kentucky Utilities

Kentucky, Commonwealth of, Department of Revenue
Kentucky, Commonwealth of, Treasurer
Kentucky, Commonwealth of, Workers' Compensation Funding Commission
Kerco Inc.
Kerlick, Kathryn
King, Donald G.
Kings Great Buys Plus
Kirkland & Ellis LLP
Kitchen, Shawn
Kleinschmidt Inc.
KM Specialty Pumps & Systems Inc.
Knight, Mary Lee
Komatsu Financial Ltd.
Lamb, Justin
LanceCo. Inc.
Leader-News
Lee, D. David
Lewis, George W., Jr.
Lewis, Shannon L.
Lexington Coal Exchange
Likens & Sons Plumbing Supply
Lil Stevie's Pizza
Lindsey, Terry E.
Line Power Mfg. Corp.
Locke, Freddie
Logan Corp.
Logsdon, Joseph
Lovan, Jeffrey
Lovelace Farms Inc.
Lowenbaum Partnership LLC, The
Lowther, Richard
M&B Auto Parts
Macquarie Corporate & Asset Funding
Madisonville Auto Parts
Madisonville Community College
Madisonville Garage Door Inc.
Madisonville Supply Inc.
Madisonville Tire & Retreading Inc.
Madisonville, County of (KY), Municipal Utilities
Madisonville-Hopkins County Chamber of Commerce (KY)
MAEVA Group LLC
Magnum Drilling Services Inc.

Marlin Daugherty Steam Cleaning
Martin Engineering
Mason, Cameron B.
Mass Mutual Financial Group
Massoth, Dennis
Matheny, William D.
Mayo Manufacturing Co. Inc.
McCoy & McCoy Laboratories Inc.
McCrocklin, Judith
McCrocklin, Thomas, Jr.
McGehee, William M.
McKinney, David
McLanahan Corp.
McLean, County of (IN), Sheriff
McMaster-Carr
Melendez, Tony
Mercer
Mercer, James
Messenger, The
Metcalfe Landscaping & Garden
Meyer Printing
Michael, Joe
Midwest Battery & Supply Inc.
Midwestern Machine & Hydraulics
Miller & Wells PLLC
Miller Building Supply Inc.
Miller, Anthony
Miller, Brian
Miller, Jonathan
Mine Equipment & Mill Supply
Mine Power Systems Inc.
Mine Site Technologies USA Inc.
Minesafe Electronics Inc.
Mississippi Lime Co.
Modern Welding
Moody's Investors Service
Motion Industries
Muhlenberg County Water District (KY)
Muhlenberg, County of (KY), Court Clerk
Muhlenberg, County of (KY), Sheriff
Multivu
Myers, Debby
N&H Steaming LLC
Nalco Co.
Nash Marshall PLLC
National Armature & Machine

Neely, Frank H., Jr.
Netelligent Corp.
New Pig Corp.
New York Coal Trade Association
Nichols Electric Supply
Noel Properties LLC
Oakley Steel Products Co.
OAS Inc.
OB Moore
Ohio County Farm & Garden Center
Ohio County Hospital Corp.
Ohio County Motors LLC
Ohio County Times News
Ohio, County of (KY), Chamber of
    Commerce
Ohio, County of (KY), Clerk
Ohio, County of (KY), Sheriff
Oldham, Bobby
Oldham, Johnathan
One Health @ Work Madisonville
O'Neal Steel Inc.
OnX Managed Services Inc.
Onyett Fabricators Inc.
Oppegard, Tony
Overland Conveying Systems
Paducah & Louisville Railway
Paducah Blueprint & Supply Co.
Parrent, Darrin
Patterson, Richard
Paul Weiss Rifkind Wharton
Paul's Repair Shop Inc.
Pearce, Ann
Pearce, David L.
Pearce, Laurie
Pearce, Walter U.
Penrod, Bobby
Pentecost, Cary
Peterson Truck Center
Peveler, Terry
Peyton, William
Phelps, Bobby J.
Phelps, H. Brent
Phelps, Mark Anthony
Phillips, Gary
Pierce, Nancy
Pike, Christy

Pillar Innovations LLC
Pioneer Conveyor LLC
Pioneer Supply
Pitney Bowes Global Financial Service
Plunkett, John
Pollard & Sons Excavating LLC
Polydeck Screen Corp.
Power Technologies LLC
PowerPlan
PR Newswire
PR Newswire Association LLC
Preiser Scientific Inc.
Premier Scales & Systems
Propane 1 One Inc. of KY
Protiviti
Prudential Life Insurance Co.
Purchase Power
Purdy, David J.
Putman, Michael
Pyle, Ronnie
Quality Magnetite LLC
Quest Diagnostics Inc.
Quest Software Inc.
R.F. Roberts Construction Co. Inc.
Rajkovich Williams Kilpatrick
Ralph, Joseph L.
Ralph, Rose A.
Ramsey, Oscar
Ray Jones Trucking Inc
Ream, Patty
Reddy, Jason
Republic Services Inc.
Retarus Inc.
Rexel Inc.
Rhew, Walter
Richardson, Pamela Gabrielle
Richey, Curtis
Richwood Industries Inc.
Rickard, Marilyn
Ricoh USA Inc.
Rite-Crete Concrete Products
Roberts, Frank
Robison, Barbara
Roe, Joseph M.
Roe, Josephine
Roe, Sara K.

Rogers Group Inc.
Rogers, James L., III
Rogers, Mary M.
Rogers, Terry
Royal Brass & Hose
Ruby Concrete Co.
Rudd Equipment Co.
Rushing, Charles W., Jr.
Russell, Malcolm Steven
S&L Industries LLC
S&S Urethane Inc.
Sabia Inc.
Saint Louis Coal Club
Sansone Group
SAP America Inc.
Schalco Construction & Garage Doors
Schauenburg Flexadux Corp.
Scott Equipment Co. LLC
Service Radiator Inc.
SGS North America Inc.
Shanks, Jeff
Sharp, Ron
Shaw Heavy Equipment Repair Inc.
Sherwin-Williams
SHI International Corp.
Shred-It USA
Simmons Equipment Co.
Simpson, Aaron
Skyline Credit Ride Inc.
Slongs Industries LLC
Smith Fertilizer & Grain Co. Inc.
Smith, Roger
Smith-Manus
Sneed, Travis K.
Southard, Jerry
Special Mine Services
Spectrum Business
Sprint Print Inc.
St. Louis Parking Co.
Stafford Services
Standard & Poor's
Standard Laboratories Inc.
Staples Advantage
Star Industrial Supply Inc.
Star Mine Services Inc.
Star Rebuilders LLC

Staude, Virginia
Stenberg, Timothy L.
Steptoe & Johnson PLLC
Stites & Harbison PLLC
STM Associates
Stoll Keenon Ogden PLLC
Strata Equipment LLC
Strata Products USA LLC
Strata Safety Products LLC
Stratton, Sherry R.
Stringer, Denise
Sue Rogers Johnson Living Trust
Sumner, Douglas
Sunrise Coal LLC
Superior Metal Works Machine
Susman, Louis B.
Szymanski, Conrad
Szymanski, Ruth
T.H.E. Engineers Inc.
Tallman, Coy
Talmar LLC
Taylor, Charles
Tazz Conveyor Corp.
Terminix International
Thermo Environmental Inst. LLC
Thompson International Inc.
Thompson, Gordon L.
Thoroughbred Resources LP
Thoroughfare Mining - Survant
Tichenor, James R.
Time Warner Cable
Times-Argus, The
TorcUp Inc.
Total Compliance LLC
Trey K Mining & Electric Inc.
Tri-State Bearing Co. Inc.
Trivaco
Truck N Spring Repair
Trustmark Voluntary Benefit Solutions
Tungco Inc.
Twin Supply Inc.
Tyco Fire & Security (US) Management
UGM Addcar Systems LLC
Ultron Inc.
UniFirst Corp.
UniMeasure Inc.

Union County Water District (KY)
Union, County of (KY), Sheriff
United Central Industrial Supply Co.
United States, Government of the, Department of Labor, Mine Safety & Health Administration (MSHA)
United States, Government of the, Division of Enforcement
United States, Government of the, Internal Revenue Service
United States, Government of the, Louisville District Corps of Engineers
United States, Government of the, Office of Surface Mining Reclamation & Enforcement
United Way of the Coalfield
United Way of the Ohio Valley
Universal Protection Service LP
UPS
US Bank
US Bank Equipment Finance
Vardell, Jenna Carter
Varel International Inc.
VC's Pick-up & Delivery
Verizon Wireless
Vernon Corp., The
Veyance Industrial Services Inc.
Viewpoint Construction Software
Vigo Machine
Vincent, Richard
Wabash Marine Inc.
Walker, Greg A.
Wallace Auto Parts & Service Inc.
Wallace Electrical Systems LLC
Waller, Eric
Wal-Mart Business
WC Hydraulics LLC
Webster County Water District (KY)
Weikel, Leonard
Weir International Inc.
Wells Fargo Bank
Wells Fargo Equipment Finance
Wells Fargo Vendor Financial
Wells, Freddie K.
Wescott Steel Inc.
West Kentucky Pipe & Valve Inc.

West Kentucky Steel
West River Conveyors & Machinery
Westerfield, Amanda
Western Crane Service Inc.
Western Kentucky Mining Institute
Western Kentucky Royalty Trust
Whayne Supply Co.
Wheatley Scale Service Inc.
Whitco Enterprises Inc.
White, Donald R.
White, Mitchell
Whitehouse, Keith
Wiles, Jim
Wilhite, Marjorie Pearce
Williams, Cory
Williams, Tommy
Wilson, Chesley
Wilson, Larry G.
Wilson, Martin D.
Winnick, Jeffrey
Winton, Grady Lee, Jr.
Witherspoon, David
Witt's Heating & Cooling
WM E. Groves Construction Inc.
Woodruff Supply Co. Inc.
Woolen, Nick
Wynn-Jones Mining Tools LLC
XPO Logistics Freight Inc.
Xylem Dewatering Solutions Inc.
Yager Materials LLC
Yates, Anthony
Young, Nadean
Younker, Forrest A.
Zackery, Edward

## EXHIBIT 2

### Relationships with Potential Parties in Interest

Ernst & Young LLP: Ernst & Young LLP is the independent accounting firm for Visteon Corporation.  Mr. Wilson serves on the board of directors for Visteon, though not on the audit committee.

Kirkland & Ellis LLP: MAEVA worked with Kirkland in their representation of YRC Worldwide, Inc. in matters related to its financial restructuring and recapitalization in 2013-2014.