UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 17-47541-659 |
| ARMSTRONG ENERGY, INC., et al., | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | U. S. Bankruptcy Court |
| | ) | Thomas F. Eagleton Courthouse |
| | ) | 111 So. 10th Street, 7th Fl, North Courtroom |
| | ) | St. Louis, Missouri 63102 |
| | ) | |
| | ) | **Hearing Date:** February 2, 2018 |
| | ) | **Hearing Time:** 11:00 a.m. |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' SECOND AMENDED
JOINT CHAPTER 11 PLAN FILED JANUARY 9, 2018**

COMES NOW Daniel J. Casamatta, the Acting United States Trustee for the Eastern District of Missouri (the "U.S. Trustee"), by his attorney Leonora S. Long, and, pursuant to section 1129 of the Bankruptcy Code (the "Code"), 11 U.S.C. § 1129, hereby objects to the Debtors' Second Amended Joint Chapter 11 Plan, Docket No. 384 (the "Plan") filed on behalf of Armstrong Energy, Inc., et al., and its debtor affiliates (the "Debtors" or "Armstrong"). In support thereof, the U.S. Trustee states as follows:

**PRELIMINARY STATEMENT**

1.  The Plan does not satisfy Section 1129's confirmation requirements for two reasons. First, the Plan proposes improper non-consensual third party releases in favor of numerous non-debtor parties. Second, the Plan inappropriately extends exculpation coverage to non-estate fiduciaries.

1

2. Absent additional evidence or amendments sufficient to satisfy this objection, the Court should deny confirmation of the Plan.

## JURISDICTION

3. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the Eastern District of Missouri issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this objection.

4. Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the "U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest).

5. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised in this objection.

## FACTUAL BACKGROUND

6. On November 1, 2017, the Debtors commenced these Chapter 11 cases. On January 9, 2018, the Debtors filed the Second Amended Plan.

7. The Plan defines "Released Parties" as:

"Released parties" means collectively, and in each case in its capacity as such: (a) the Debtors and the Post-Effective Date Debtor; (b) the Debtors' current and former officers and directors; (c) the Committee and the Committee Members; (d) the Supporting Senior Noteholders; €RRPH; (f) the Senior Notes Trustee; (g) Knight Hawk; (h) Thoroughbred; (1) the parties to the Restructuring Support Agreement; (j) NewCo; (k) HoldCo; and (l) with respect to each of the foregoing entities in clauses (s) through (k) such entities'

2

predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, current or former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such entities' respective heirs, executors, estates, servants, and nominees, in each case, solely in their capacity as such.

Plan: Article 1, Section A, 109, page 9.

8.      Holders or claims or interests against the Debtors will give the Released Parties the following releases under the Plan:

*Releases by Holders of Claims and Interests.*

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties in facilitating the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to forever release, waive, and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity, or otherwise, whether for tort, contract, violations of federal or state securities laws or otherwise, including those that any of the Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Estates, the conduct of the Debtors' businesses, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any of the Debtors and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Restructuring Support Agreement, the Transaction Agreement, Plan, the Plan Supplement, the Disclosure Statement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, or occurrence relating to the foregoing taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, the Transaction Agreement, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

3

      Entry of the Confirmation and Sale Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Releasing Parties; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any Claim released by the Third-Party Release against any of the Released Parties.

Plan: Article X, Section D, page 39-40 (the "General Releases").

      9.      In addition to the releases, all Released Parties will also receive exculpation:

      Upon and effective as of the Effective Date, the Debtors and their directors, officers, employees, attorneys, investment bankers, financial advisors, restructuring consultants, and other professional advisors and agents will be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code.

      Except with respect to any acts or omissions expressly set forth in and preserved by the Plan, the Plan Supplement, the Transaction Agreement or related documents, the Exculpated Parties shall neither have nor incur any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or arising from or relating in any way to, the Chapter 11 Cases, including the operation of the Debtors' businesses during the pendency of these Chapter 11 Cases; formulating, negotiating, preparing, disseminating, implementing, and/or effecting the Restructuring Support Agreement, the Transaction Agreement, the Disclosure Statement, and the Plan (including the Plan Supplement and any related contract, instrument, release, or other agreement or document created or entered into in connection therewith); the solicitation of votes for the Plan and the pursuit of Confirmation and Consummation of the Plan; the administration of the Plan and/or the property to be distributed under the Plan; and/or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors. In all respects, each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her, or its respective duties under, pursuant to, or in connection with the Plan.

      Notwithstanding anything herein to the contrary, nothing in the foregoing "Exculpation" shall exculpate any Person or Entity from any liability resulting from any act or omission constituting fraud, willful misconduct, gross negligence, criminal conduct, malpractice, misuse of confidential information that causes damages, or ultra vires acts as determined by a Final Order.

Plan: Article X, Section D, pages 40-41.

## LAW AND ANALYSIS

### A. General Standards

10. In order to obtain confirmation, a plan proponent has the burden to establish compliance with all the requirements of section 1129(a) of the Code. *See* 11 U.S.C. § 1129(a). The plan proponent bears the burden of proof with respect to each and every element of section 1129(a). *See In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001).

### B. The General Releases are overbroad and unlawful

11. The Eighth Circuit has not squarely addressed the issue of whether third-party, or non-debtor, injunctions and releases are permissible as a matter of law. Such releases are altogether forbidden in some jurisdictions. The Ninth and Tenth Circuits categorically prohibit third party releases under any circumstances on the grounds that they violate section 524(e), which states that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401 (9th Cir. 1995); *In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 600 (10th Cir. 1990).

12. But even outside of the jurisdictions with categorical prohibitions, releases given by non-debtors to other non-debtors in a plan are permissible only in rare and exceptional circumstances (such as mass tort cases) in which certain key factors are present.[1] *See, e.g., In re A.H. Robins Co., Inc.*, 880 F.2d 694 (4th Cir. 1989) (upholding non-debtor release that enjoined

---

[1] As a threshold matter, the Debtors must demonstrate that the Court has subject matter jurisdiction, consistent with the Eighth Circuit's decision in *In re McAlpin*, 278 F.3d 866 (8th Cir. 2002), to approve releases that do not affect claims against the bankruptcy estates or affect the estates' *res*. Though *McAlpin* involved a chapter 13 debtor who disputed a creditor claim not addressed by his confirmed plan, the Eighth Circuit found that subject matter jurisdiction did not exist because the disputed claim was not against the estate "and thus did not involve a right created by bankruptcy law or arising only in bankruptcy." *Id*. at 868.

5

certain mass tort plaintiffs' claims against, among others, the debtor's directors, the debtor's attorneys, and the debtor's insurer in exchange for financial contributions); *see also In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000) (rejecting arguments that a permissive view of releases confers "unfettered discretion") (citations omitted).[2]

13. The case of *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136 (2d Cir. 2005), is particularly instructive. In *Metromedia,* the Second Circuit held that non-debtor third-party releases are proper only in "rare cases." *Metromedia,* 416 F.3d at 141. The Second Circuit articulated at least two reasons for its reluctance to approve these releases:

> First, the only explicit authorization in the Code for non-debtor releases is 11 U.S.C. § 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims, [and] …
>
> Second, a non-debtor release is a device that lends itself to abuse. By it, a nondebtor can shield itself from liability to third parties. In form, it is a release; in effect it may operate as a bankruptcy discharge without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity.

*Id.* at 142.

14. The Second Circuit held that "[i]n bankruptcy cases, a Court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the Debtors' reorganization plan." *Id.* at 141 (*quoting SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.*), 960 F.2d 285, 292 (2d Cir. 1992)). The

---

[2] In *Continental Airlines*, the Third Circuit surveyed cases from various circuits as to when, if ever, a non-consensual third party release is permissible. The Third Circuit acknowledged that a number of Circuits do not allow such non-consensual releases under any circumstances. *See id.* at 212. Other Circuits, the Court found, "have adopted a more flexible approach, albeit in the context of extraordinary cases," such as mass tort cases. *See id.* at 212 (citations omitted).

6

appellate court cautioned, however, that a non-debtor third-party release is not considered to be adequately supported by consideration simply because the non-debtor contributed something to the reorganization and the enjoined creditor took something out. *Metromedia*, 416 F.3d at 143. Rather, "[a] non-debtor third-party release should not be approved absent a finding by the court that 'truly unusual circumstances' exist that render the release terms important to the success of the plan." *Id*.

15. Subsequent cases further clarify the *Metromedia* requirements. For example, in *In re DBSD North America, Inc.*, the Court stated:

> As the Second Circuit's decision in *Metromedia* and my earlier decision in *Adelphia* provide, exculpation provisions (and their first cousins, so-called "third party releases") are permissible under some circumstances, but not as a routine matter. They may be used in some cases, including those where the provisions are important to a debtor's plan; the claims are "channeled" to a settlement fund rather than extinguished; the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; the released party provides substantial contribution; and where the plan otherwise provides for full payment of the enjoined claims.

*In re DBSD N. Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) (emphasis in original) (footnotes omitted); *In re Motors Liquidation Co.*, 477 B.R. 198, 220 (Bankr. S.D.N.Y. 2011) ("Although (since the Code is silent on the matter) third-party releases aren't 'inconsistent with the applicable provisions of this title,' the Second Circuit has ruled that they're permissible only in rare cases, *with appropriate consent or under circumstances that can be regarded as unique*, some of which the Circuit listed [emphasis added]. But, where those circumstances haven't been shown, third-party releases can't be found to be appropriate."). See also *In re SunEdison, Inc., 576 B.R. 453 (Bankr. S.D. N. Y. 2017),* wherein the court determined the debtors failed to meet their burden of showing the court should approve the release as

7

appropriate based upon unique circumstances of the case.

16. The Court should reject all third party non-consensual releases here. The releases in this case are exceedingly broad and are completely non-consensual. The only way one can opt out of the release is to file an objection to the Plan. Requiring creditors to hire an attorney and navigate the challenging process of objecting to a plan is far beyond what this court should allow in a case. Through this broad and general release with no redress other than objecting to the plan, creditors are in essence giving up their rights to object to a settlement and their treatment in the Plan is imposed with undue burden.[3] Despite the fact that this is referred to as a large case, this is not a rare mass tort case, or a case of similar nature, where the plan channels tort claims to a settlement trust funded by insurance proceeds. And even if the Court considers non-consensual releases outside of the mass tort context, there is no specific evidence that each and every release beneficiary will provide a substantial contribution to the plan. In particular, extending coverage to the Debtors' officers and directors is particularly inappropriate because those parties are not making any monetary contributions to the Plan. *See In re Washington Mut., Inc.*, 442 B.R. 314, 349-350 (Bankr. D. Del. 2011) (finding "that there is no basis whatsoever for the Debtors to grant a release to directors and officers or any professionals of the Debtors, current or former" and that "there has been no evidence presented of any 'substantial contribution' made to the case by the directors, officers, or professionals, justifying releases")) (*citing In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994)).

C. **Exculpation Provided to Improper Parties**

---

[3] Debtors appear to be attempting to incorporate rule 9019 settlement approval authority into the plan confirmation process. This Court should not approve a settlement to which one party has not been given the opportunity to consent. The agreement of the debtor and the committee to extinguish the right of a third party against another third party certainly should not bind the so-called releasing party.

17. As stated by the Court in *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011), an "exculpation clause must be limited to the *fiduciaries* who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers." *Id.* at 350-51 (emphasis added). Other courts have agreed. *See In re Tribune Company,* 464 B.R. 126 (Bankr. D. Del. 2011).

18. These conclusions are consistent with *In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000). The issue in *PWS* was whether an official committee of unsecured creditors could receive exculpation. As described by Judge Shannon in *In re PTL Holdings LLC*, 2011 Bankr. LEXIS 4436 (Bankr. D. Del. Nov. 10, 2011)*:*

> In reaching its conclusion, the *PWS* court examined § 1103(c) and noted that the section "has been interpreted to imply both a fiduciary duty to committee constituents and a limited grant of immunity to committee members." "This immunity," the court found, "covers committee members for actions within the scope of their duties." The *PWS* court's reasoning thus implies that a party's exculpation is based upon its role or status as a fiduciary. That is why, as the *Washington Mutual* court pointed out, courts have permitted exculpation clauses insofar as they "merely state[] the standard to which ... estate fiduciaries [a]re held in a chapter 11 case." That fiduciary standard, however, applies only to estate fiduciaries, "no one else." *PTL Holdings* at * 37-38 (citations omitted).

19. Many of the covered parties in the Exculpatory clause of the Plan are not fiduciaries if their connection to the estate is directly through any source other than the Debtors or the official creditor committees. Unless the Exculpation Provision is amended to remove all non-estate fiduciaries, the Plan should not be confirmed.

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court sustain his objection, issue an order denying confirmation of the Plan consistent with this objection,

9

and/or granting such other relief as this Court deems appropriate, fair and just.

Respectfully submitted,

DANIEL J. CASAMATTA
ACTING UNITED STATES TRUSTEE

PAUL A. RANDOLPH
ASSISTANT UNITED STATES TRUSTEE

By:     /s/ Leonora S. Long
Leonora S. Long, Trial Attorney
Missouri Bar #31655, Federal ID #3697
Office of United States Trustee
111 S. 10th Street, Room 6353
St. Louis, MO 63102
(314) 539-2980 Phone
(314) 539-2990 Fax
Leonora.Long@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was electronically mailed by the U. S. Bankruptcy Court, Eastern District of Missouri, to those names listed on the courts electronic list of those to receive service this 24th day of January, 2018 to:

    /s/ Margaret Slaughter
Margaret Slaughter, Paralegal Specialist